UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------------------------X

JACOB SCHONBERG, BINYOMIN SCHONBERG, BINYOMIN HALPERN AND RAPHAEL BAROUCH ELKAIM, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BUSHWICK OPERATIONS LLC, KINGSTON OPERATIONS LLC, JEFFERSON OPERATIONS LLC, 369 GATES OPERATIONS LLC, 1078 DEKALB OPERATIONS LLC, 618 LAFAYETTE OPERATIONS LLC, 74 VAN BUREN OPERATIONS LLC, 760 WILLOUGHBY OPERATIONS LLC, 454 CENTRAL AVENUE OPERATIONS LLC, 855 DEKALB AVENUE OPERATIONS LLC, 720 LIVONIA OPERATIONS LLC, SLOPE EQUITIES OPERATIONS LLC, WILLOUGHBY ESTATES OPERATIONS LLC, 73 EMPIRE DEVELOPMENT OPERATIONS LLC, 980 ATLANTIC HOLDINGS OPERATIONS LLC, 325 FRANKLIN OPERATIONS LLC, 8 MAPLE AVENUE OPERATIONS LLC 853 LEXINGTON OPERATIONS LLC, 348 ST. NICHOLAS OPERATIONS LLC, 1301 PUTNAM OPERATIONS LLC AND 945 PARK PLACE OPERATIONS LLC,

|   |
|---|
| Case No. 17-cv-2161 (CBA)(RML) |
| **AMENDED COMPLAINT** |

Plaintiffs,

v.

YECHEZKEL STRULOVICH a/k/a CHASKIEL STRULOVITCH, YECHIEL OBERLANDER a/k/a MICI OBERLANDER a/k/a MIHAY OBERLANDER, CSRE LLC, CS CONSTRUCTION GROUP LLC, GOOD LIVING MANAGEMENT LLC, 908 BERGEN STREET LLC, 901 BUSHWICK AVENUE LLC, 106 KINGSTON LLC, 1213 JEFFERSON LLC, GATES EQUITY HOLDINGS LLC, 1078 DEKALB LLC, 618 LAFAYETTE LLC, 74 VAN BUREN LLC, 762 WILLOUGHBY LLC, 454 CENTRAL AVENUE LLC, 855 DEKALB AVENUE LLC, 720 LIVONIA DEVELOPMENT LLC, 853 LEXINGTON LLC, 657-665 5th AVENUE LLC, WILLOUGHBY ESTATES LLC, 73 EMPIRE DEVELOPMENT LLC, 980 ATLANTIC HOLDINGS LLC, 325 FRANKLIN LLC, 945 PARK PL LLC, 1301 PUTNAM LLC, 348 ST. NICHOLAS LLC, APC HOLDING 1 LLC, CSY HOLDINGS LLC, FIRST AVENUE REALTY HOLDINGS L.P., 53 STANHOPE LLC, 1125-1133 GREENE AVE LLC, 834 METROPOLITAN AVENUE LLC, 92 SOUTH 4TH STREET, LLC, THE HOWARD DAY HOUSE LLC, 55 STANHOPE LLC, 599-601 WILLOUGHBY LLC, 1217 BEDFORD LLC, 1266 PACIFIC LLC, CSN PARTNERS L.P., 196 ALBANY HOLDINGS L.P, FULTON STREET HOLDNGS LLC, 100 JEFFERSON REALTY LLC, 167 HART LLC, 741 LEXINGTON LLC, 296 COOPER LLC, 400 SOUTH 2ND STREET HOLDINGS L P., 41-49 SPENCER LLC, CS YH CONDOS LLC, GOLD CLIFF LLC, MYRTLINO HOLDINGS, LLC, WILLTROUT REALTY LLC, SLOPE OFFICES LLC, STAGG STUDIOS LLC, AND JOHN DOES 1-10 AND XYZ CORPS. 1-10 SUCH INDIVIDUALS OR ENTITIES BEING UNKNOWN ENTITIES PRESENTLY IN CONTRACT TO ACQUIRE THE PARCELS OF REAL PROPERTY LOCATED AT 618 LAFAYETTE AVENUE, 1018 DEKALB AVENUE, 853 LEXINGTON AVENUE AND 657-665A FIFTH AVENUE,

Defendants.

-----------------------------------------------------------------------------------------------X

## INTRODUCTION

1.      The defendants, Yechezkel Strulovich and Yechiel Oberlander (the "Individual Defendants"), engaged in a massive scheme to defraud Plaintiffs out of over $20,000,000 through the promotion of so-called investments in New York real estate.

2.      The Individual Defendants misrepresented to Plaintiffs that the money they would be investing with the Individual Defendants would go toward the purchase of various specific properties located primarily in Kings County, New York (the "**Investment Properties**"), which properties the Individual Defendants would purchase develop, and rent-out to commercial and residential tenants for profits that would be generated solely as a result of the efforts of the Individual Defendants.

3.      In exchange for Plaintiffs' investments, the Individual Defendants represented that these investors would receive the return of their investment in a relatively short period of time, usually between six (6) and seven (7) months, and that thereafter 45% of the profits derived from the Investment Properties would be paid.

4.      In furtherance of this scheme, Defendants generated and distributed fraudulent prospectuses for each of the Investment Properties to be purchased and developed with the investors' money (the "**Prospectuses**").   Defendants also distributed fraudulent updates and assurances as to the status of the investments and their rate of progress, to avoid the arousal of any suspicion.   Defendants used the mail, wire service, fax and internet to accomplish the transmission of the false information and to effect the transfer of the funds between Plaintiffs and Defendants.

5.      The entire process was nothing more than an elaborate fraud to personally enrich the Individual Defendants and their wholly owned entities, such as CSRE LLC, at Plaintiffs' expense, which enrichment to date totals more than $90,000,000 in cash and equity in properties

purchased and developed by the Individual Defendants using these fraudulently procured funds.

6.     The Prospectuses sent to the Individual Plaintiffs by the Individual Defendants grossly inflated the price and value of the Investment Properties in order to induce investors to invest significantly more than what was required to complete the purchase of the Investment Properties and misrepresented that the Individual Defendants intended to develop them within a specifically represented time frame and that they intended to distribute any profit.

7.     Then, instead of using these excess investment funds solely to acquire and develop the Investment Properties, the Individual Defendants secretly diverted these funds for their exclusive benefit, including to purchase and develop different properties (the "**Secret Properties**"), for the Individual Defendants' personal enrichment to the total exclusion of the investors whose money was misused to purchase them.

8.     With respect to the vast majority of the Investment Properties that the Individual Defendants purchased on behalf of Plaintiffs, these Investment Properties have been left to languish, undeveloped and dilapidated, accruing millions of dollars in interest, falling into breach of mortgages and other defaults.

9.     Further exacerbating the harm to Plaintiffs is that the continuing deterioration of these Investment Properties is making their renovation more difficult and more expensive to accomplish, leaving no realistic prospect of generating a return for the investors, leading to devastating losses to Plaintiffs.

10.     Based on Defendants' fraudulent conduct, detailed more fully here, Plaintiffs assert claims for: (1) violations of the Securities Exchange Act of 1934; (2) a judgment under RPAPL Article 15; (3) fraud; (4) breach of fiduciary duty; (5) a constructive trust over the

Properties that Defendants' with Plaintiffs' fraudulently diverted funds; (6) unjust enrichment; and (7) accounting.

## JURISDICTION & VENUE

11.     This action arises out of, *inter alia*, violations of §10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 enacted there under [17 C.F.R. 240.10b-5]. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

12.     The Court has supplemental jurisdiction over the state law claims for relief pursuant to 28 U.S.C. § 1367(a), because these claims arise from a common nucleus of operative facts and are so intertwined with the federal claims for relief as to make an exercise of the Court's jurisdiction appropriate.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one of the Individual Defendants is a resident of this District, the properties that are the subject of this action are situated in this District, and a substantial part of the acts or omissions giving rise to this action occurred here in this District.

## THE PARTIES

14.     Plaintiffs Jacob Schonberg, Binyomin Schonberg, Binyomin Halpern, and Raphael Barouch Elkaim (the "**Individual Plaintiffs**") are natural persons residing in the State of Israel.

15.     Plaintiffs Bushwick Operations LLC, Kingston Operations LLC, Jefferson Operations LLC, 369 Gates Operations LLC, 1078 Dekalb Operations LLC, 618 Lafayette Operations LLC, 74 Van Buren Operations LLC, 760 Willoughby Operations LLC,  454 Central

Avenue Operations LLC, 855 Dekalb Avenue Operations LLC, 720 Livonia Operations LLC, Slope Equities Operations LLC, Willoughby Estates Operations LLC, 73 Empire Development Operations LLC, 980 Atlantic Holdings Operations LLC, 325 Franklin Operations LLC, 853 Lexington Operations LLC, 8 Maple Avenue Operations LLC, 348 St. Nicholas Operations LLC, 1301 Putnam Operations LLC and 945 Park Place Operations LLC are each New York limited liability companies, with a principal place of business in Brooklyn, New York.

16.     Defendants 908 Bushwick Avenue LLC, 901 Bushwick Avenue LLC, 106 Kingston LLC, 1213 Jefferson LLC, Gates Equity Holdings LLC, 1078 Dekalb LLC, 618 Lafayette LLC, 74 Van Buren LLC, 762 Willoughby LLC, 454 Central Avenue LLC, 855 Dekalb Avenue LLC, 720 Livonia Development LLC, 853 Lexington LLC, 657-665 Fifth Avenue LLC, Willoughby Estates LLC, 73 Empire Development LLC, 980 Atlantic Holdings LLC, 325 Franklin LLC, 945 Park PL LLC, 348 St. Nicholas LLC, 1301 Putnam LLC and CSY Holdings LLC (the "**Holding Company Defendants**") are each New York limited liability companies, with a principal place of business in Brooklyn, New York.

17.     The Individual Plaintiffs are named in this action in their individual capacities and in their capacities as members of the LLC Plaintiffs.

18.     Each of the LLC Plaintiffs has a membership interest in one or more of the Holding Company Defendants and holds all of the Individual Plaintiffs' interests in the Investment Properties.

19.     Each of the Holding Company Defendants holds title to one of the Investment Properties, all of which are located in Brooklyn, New York, except for 8 Maple Avenue, which is located in Bay Shore, New York in Suffolk County and 348 St. Nicholas Avenue, which is

located in New York, New York.

20.     Each of the Investment Properties, the respective Holding Company Defendant holding title to it, and the LLC Plaintiff that holds the Individual Plaintiffs' interest in the Holding Company Defendants are forth in **Schedule A**, attached to the Complaint.

21.     The Individual Defendants are natural persons.

22.     Strulovitch resides in Brooklyn, New York and Oberlander is a United States citizen residing in the State of Israel.

23.     The Individual Defendants are the Managers of both the LLC Plaintiffs and the Holding Company Defendants.

24.     CSRE LLC, CS Construction Group LLC, and Good Living Management LLC are New York limited liability companies owned and controlled by the Individual Defendants.

25.     Defendants APC Holding 1 LLC, First Avenue Realty Holdings L.P., 53 Stanhope LLC, 1125-1133 Greene Ave LLC, 834 Metropolitan Avenue LLC, 92 South 4th Street, LLC,  The Howard Day House LLC, 55 Stanhope LLC, 599-601 Willoughby LLC, 1217 Bedford LLC, 1266 Pacific LLC, CSN Partners L.P., 196 Albany Holdings L.P.,  Fulton Street Holdings LLC, 100 Jefferson Realty LLC, 167 Hart LLC, 741 Lexington LLC, 296 Cooper LLC, 400 South 2nd Street Holdings L.P., Gold Cliff LLC and CS YH Condos LLC the ("**Secret LLC Defendants**"), are each New York limited liability companies or New York limited partnerships, with a principal place of business in Brooklyn, New York.

26.     Each of the Secret LLC Defendants is owned and controlled by the Individual Defendants.

27.     Each of the Secret LLC Defendants holds title to one of the Secret Properties, as

set forth in **Schedule B** to this Complaint, each of which are located in Brooklyn, New York, except for 940 First Avenue, which is located in New York, New York.

28.     Defendants Myrtlino Holdings, LLC, Willtrout Realty LLC, Stagg Studios LLC, 41-49 Spencer LLC, and Slope Offices LLC (the "Additional Secret LLC Defendants") are each New York limited liability companies with a principal place of business in Brooklyn, New York.

29.     Each of the Additional Secret LLC Defendants is owned and controlled by the Individual Defendants.

**FACTS COMMON TO ALL CAUSES OF ACTION**

30.     In or about early 2012, Oberlander, who is a member of a tight-knit group of Orthodox Jewish people living in Israel, approached the Individual Plaintiffs to invest money with him and Strulovich in connection with a real estate project located at 908 Bergen Street, Brooklyn, New York.

31.     According to Oberlander, the real estate for the project was to be acquired and developed by his long-time business associate and real estate developer, Strulovitch.

32.     From prior business dealings, Oberlander knew that the Individual Plaintiffs were well-respected and trusted members of their community and, thus, enlisting them in his real estate projects would influence others in their community to do the same.

33.     Oberlander also targeted the Individual Plaintiffs for his elaborate scheme to defraud because he knew that they were not United States citizens or residents, knew they were unfamiliar with the complexities of New York real estate and construction, knew they were not represented by counsel in these matters, and knew that they would trust him completely to represent their best interests and arrange all of the complex legal and logistical matters that came

up throughout these deals, with which matters they were thoroughly unfamiliar.

A.    **The Misrepresentations Contained in the Prospectuses**

34.    Between February 6, 2012 and September 14, 2014, the Individual Defendants transmitted Prospectuses to the Individual Plaintiffs containing representations and business plans designed to induce the Individual Plaintiffs to invest in approximately 20 specifically identified parcels of real estate for the purposes of renovating commercial and residential units, developing existing buildings to add additional residential units, and in some instances, constructing new buildings on empty parcels of real estate for the purpose of renting the newly developed and renovated commercial and residential units thereon.

35.    Each of the Prospectuses represented to the Individual Plaintiffs both (i) the purchase price of the property or properties, including closing costs, and (ii) the amount of the original bank loan that the Individual Defendants would obtain to finance the remainder of the project.

36.    Additionally, in each Prospectus, the Individual Defendants represented to the Individual Plaintiffs that (i) construction would be completed and (ii) investors would receive the return of their original investment in a relatively short period through a refinancing of the original bank loan, which would take place at a specified time period after the closing on the Property, and that, thereafter, they would receive 45% of the profits.

37.    Additionally, in each Prospectus the Individual Defendants specifically represented to the Individual Plaintiffs that the profits from the Individual Plaintiffs' investment would depend solely on the efforts of the Individual Defendants, stating that the Individual Defendants would "attend to, manage, and worry for the project in its formation, continuation,

rental, and sale all attention necessary for the success of the business."

38.     On or about February 6, 2012, the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $250,000 for the purchase and development of 908 Bergen Street.

39.     The Prospectus misrepresented that the purchase price of this property, including closing costs, was going to be $425,000.

40.     But contrary to this misrepresentation, the actual price they paid for the property was only $200,000.

41.     On or about July 16, 2012, the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $650,000 for the purchase and development of 853 Lexington Avenue.

42.     The Prospectus misrepresented that the purchase price of this property, including closing costs, was going to be $1,485,000.

43.     But contrary to this misrepresentation, the actual price they paid for the property was only $965,000.[1]

44.     On November 4, 2012, the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $120,000 for the purchase and development of 74 Van Buren Street.

45.     The Prospectus misrepresented that the purchase price of these property,

---

[1] The misrepresentations in the Prospectuses were not the only ones in connection with the Property at 853 Lexington.  In May 2013, the Individual Defendants transmitted reports by electronic mail that they had received approval to expand the project at 853 Lexington Avenue and required an immediate cash investment of $800,000. Despite receiving those funds from the members of the LLC Plaintiff owning an interest in 853 Lexington, renovations did not progress.

including closing costs was going to be $475,000.

46.     But contrary to this misrepresentation, the actual price they paid for 74 Van Buren was only $315,000.

47.     In yet another fraudulent misrepresentation, on or about December 19, 2012, the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $520,000 for the purchase and development of 762 Willoughby Avenue.

48.     The Prospectus misrepresented that the purchase price of this property, including closing costs, which they purchased two days later, was going to be $1,295,000.

49.     But contrary to this misrepresentation, the actual price they paid for the property was only $995,000, for which he had already secured financing of $1.1 million.

50.     Likewise, on or about May 16, 2013, the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $1,290,000 for the purchase and development of 454 Central Avenue and 855 Dekalb Avenue.

51.     The Prospectus misrepresented that the purchase price of the 454 Central Avenue, including closing costs, was going to be $550,000, and the purchase price of 855 Dekalb Avenue was going to be $1,800,000.

52.     But contrary to this misrepresentation, the actual price they paid for 454 Central was only $420,000.

53.     Worse still is that the Individual Defendants failed to disclose that they had already purchased 855 Dekalb over a year before they solicited the Individual Plaintiffs for money to allegedly be used to "acquire" the property, and that the actual purchase price was only

*Page 9*

$825,000.

54.     Similarly, on or about October 29, 2013 the Individual Defendants transmitted to the Individual Plaintiffs a Prospectus to induce them to invest $400,000 for the purchase and development of 525 Willoughby Avenue.

55.     The Prospectus misrepresented that the purchase price of this property, including closing costs, was going to be $750,000.

56.     But contrary to this misrepresentation, the actual price they paid for the property was only $600,000.

57.     Additionally, on October 15, 2013 and March 19, 2014, respectively, the Individual Defendants transmitted Prospectuses for the purchase of ground leases and the development of buildings located on 73 Empire Boulevard and 980 Atlantic Avenue to induce the Individual Plaintiffs to invest.

58.     The Prospectuses for these projects misrepresented that the purchase price of these ground leases, including closing costs, was going to be $1,000,000 and $1,250,000 respectively.

59.     But contrary to these misrepresentations, and without disclosing any additional facts to the Individual Plaintiffs, the Individual Defendants acquired these ground leases on 73 Empire Boulevard and 980 Atlantic Avenue for either no upfront fees whatsoever or nominal fees.

60.     In addition to misrepresenting the actual purchase prices for the Investment Properties, and as such, the true projected cost for these projects, the Individual Defendants further maximized the cash that they could access and divert to themselves by inflating the

projected costs of construction in the Prospectuses in order to justify taking excessive loans and fully leveraging these Investment Properties on the day that they purchased them.

61.     Often, in fact, the Individual Defendants took out loans on the day the Investment Properties were purchased in the name of the Holding Company Defendants, which were secured by mortgages on the Investment Properties in amounts far exceeding the price paid for the Investment Properties.

**B.      The Individual Defendants Secure
         $20,000,000 in Investments by Perpetuating the Scheme**

62.     In total, relying upon the misrepresentations of the Individual Defendants in the Prospectuses, the Individual Plaintiffs and the other members of the LLC Plaintiffs transferred to the Individual Defendants more than $20 million.

63.     Combining all of the money from the members of the LLC Plaintiffs with tens of millions of dollars in bank loans that the Individual Defendants took out in the names of the Holding Companies and which were secured by mortgages on the Investment Properties, each of the Holding Company Defendants should have been flush with more than sufficient cash to complete or at least substantially complete construction on all of these Investment Properties within the represented time frames.

64.     In order to deceive the Individual Plaintiffs and other members of the LLC Plaintiffs to continue investing with the Individual Defendants, the Individual Defendants employed numerous scam tactics in the style of Bernie Madoff.

65.     The first such tactic was to perform the light construction necessary to renovate some of the smaller Investment Properties, refinance the original bank loans for these properties, and refund the principal of the Individual Plaintiffs' investment, so that the Individual Plaintiffs

and the other members of the LLC Plaintiffs who had invested in those projects would be lulled into a false sense of security and the misimpression that the Individual Defendants would return to them the principal of the larger investments they were seeking or which they planned to seek.

66.     For example, albeit after what seemed to be relatively minor construction delays, and for what the Individual Plaintiffs would later discover were far lower construction costs than represented, the Individual Defendants refinanced loans and returned the vast majority of the investment funds made on 6 of the 19 Investment Properties such as 908 Bergen Street, 106 Kingston Avenue, 1213 Jefferson Avenue, 618 Lafayette Avenue, 1078 Dekalb Avenue, and 325 Franklin Avenue.

67.     Also in the style of Bernie Madoff, the Individual Defendants provided hundreds of fraudulent, inaccurate and deceptive updates purporting to: (i) communicate the progress that had allegedly been made on construction of the Investment Properties, which included photographs of individuals purportedly performing construction work; and (ii) explain away delays in finishing renovations, construction, refinancing, returning the Individual Defendants' initial investment, and for not yet realizing any rental income.

**C.      The Individual Defendants' Looting of Plaintiffs' Money
        <u>And The Devastating Damages Caused to Plaintiffs and the Investment Properties</u>**

68.     Instead of using (i) the funds invested by the Individual Plaintiffs and the other members of the LLC Plaintiffs and (ii) the mortgage proceeds derived from loans secured by the Investment Properties solely in connection with these Investment Properties, the Individual Defendants diverted the funds belonging to the Investment Properties for their own personal enrichment and engaged in other misconduct to further their scheme to defraud Plaintiffs and enrich themselves.

69. For example, the Individual Defendants, directly, and through their wholly owned companies, CS Construction Group LLC, Good Living Management LLC, and the Additional Secret LLC Defendants used significant sums of the money invested by the Individual Plaintiffs and the other members of the LLC Plaintiffs to (i) pay themselves cash to support their own lavish lifestyles; (ii) pay their own personal and professional debts; (iii) purchase and develop the Secret Properties for their own personal enrichment, whose value is at least in the tens, if not hundreds of millions of dollars; and (iv) purchase, develop, or otherwise acquire interests in other properties that were held by the Individual Defendants, or for their benefit, in the name of the Additional Secret Defendants, and thereafter selling those properties and/or their interests therein and diverted the proceeds therefrom solely for their own benefit and to the exclusion of Plaintiffs.[2]

70. Additionally, without disclosing anything to Plaintiffs, the Individual Defendants improperly used the Investment Properties as collateral to secure loans that were given to the Secret LLC Defendants or to obtain money to purchase property on behalf of their behalves.

71. Further, for more than half of the Investment Properties, Defendant Strulovitch personally executed mortgages, bank documents, and deeds, in which he held himself out to be the sole member of the LLC Defendant that purchased the Investment Properties in order to position himself to both secretly divert loan proceeds to himself and Oberlander and to repudiate the rights of the Individual Plaintiffs in the event that they were ever to discover and resist his self-dealing. One example of this is the Individual Defendants' current attempt to sell 853 Lexington Avenue without the consent of the Individual Plaintiffs, discussed *infra*.

---

[2] Discovery is expected to show that the Individual Defendants' relatives such as Strulovich's son Moses, and an

72.     One egregious con artist tactic involved the real estate project located at 720 Livonia Avenue, one of the final projects in which the Individual Plaintiffs invested in before discovering evidence of the Individual Defendants' fraud.

73.     In August 2014, the Individual Defendants offered the Individual Plaintiffs the opportunity to invest in a project at 1173 Bergen Street.

74.     The Prospectus represented that the cost of acquiring the parcel of property at 1173 Bergen would be $4.7 million.

75.     The Individual Defendants proceeded to immediately collect approximately $2,500,000 in equity from the Individual Plaintiffs for that investment.

76.     In or about October 2014, the Individual Defendants misrepresented to the Individual Plaintiffs that: (i) the opportunity to purchase 1173 Bergen Street had fallen through and (ii) instead of refunding the $2.5 million, induced the Individual Plaintiffs and others who had earmarked funds for the project at 1173 Bergen Street to invest their $2.5 million and another $900,000 in connection with the acquisition and development of a project on 720 Livonia Avenue.

77.     But this was a lie, as the deal to purchase 1173 Bergen had not fallen through.  In fact, the Individual Defendants had actually assembled a three-building package from the same sellers to purchase the Secret Property located at 1173 Bergen Street, 196 Albany Avenue and the Investment Property located on 720 Livonia Avenue.

78.     Specifically, the Individual Defendants failed to disclose that since June 25, 2014 they had been in contract to purchase two Secret Properties from the same sellers: 1173 Bergen

---

individual named Imre Oberlander actively participated and benefitted from this fraudulent scheme.

Street, as well as another Secret Property located at 196 Albany Avenue.

79.     Then, in August 2014, the Individual Defendants contracted with the same seller to purchase 720 Livonia as part of this discounted three-building package.

80.     Further, despite the Individual Defendants misrepresentation that they had repurposed investors' money earmarked for 1173 Bergen for the purpose of acquiring and developing 720 Livonia, the Individual Defendants used these funds, as well as other funds collected directly for the 720 Livonia Avenue investment, to cover a cash shortfall which was necessary for them to close on 196 Albany Avenue on November 25, 2014.

81.     Naturally, contrary to their misrepresentation, the Individual Defendants also closed on 1173 Bergen Avenue on November 25, 2014 for a purchase price of $2,500,000, more than $2.2 million less than represented in the Prospectus transmitted to the Individual Plaintiffs.

82.     Even worse, 196 Albany Ave is a $10,000,000 renovated building with an already existing rent roll, which the Individual Defendants kept for themselves to the exclusion of the Individual Plaintiffs' whose money they had used to acquire it and 1173 Bergen Ave is a lucrative property the Individual Defendants are actively developing without delay.

83.     The Individual Defendants further misrepresented that the Individual Defendants had closed on 720 Livonia Avenue in January 2015, when in fact, they had not, but were forced to do so much later because they had used the funds supplied by investors to acquire 720 Livonia Avenue for other purposes.

84.     The Individual Defendants have also received mortgage proceeds from loans securing the Investment Property at 720 Livonia Avenue in the amount of $3.4 million, which they have diverted for their exclusive personal enrichment rather than use in connection with the

project at 720 Livonia.

85.    Meanwhile, this Investment Property is still languishing, unoccupied and unrenovated, and the more that it deteriorates the more expensive and unprofitable it will be to properly perform the renovations necessary for it to be fit for being occupied by tenants.

86.    This is one example of the scheme to defraud and how it was executed, but the same conduct can be found with respect to all of the other Investment Properties.  While renovations and rental proceeds on the Secret Properties, like 196 Albany Avenue, are flourishing and all of those profits and other monies have been and are being diverted for the Individual Defendants' benefit, the neglect and looting of funds from the Investment Properties and the Holding Company Defendants by the Individual Defendants have caused, and continue to cause irreparable and pecuniary harm to Plaintiffs and the Investment Properties.

87.    By way of some other examples and without limitation:

- The vast majority of the Investment Properties remain in disrepair, depressing their value, making them structurally unsafe and driving away potential tenants (for example, the building at 73 Empire Blvd, which was represented to have been leased to Dollar Tree at a lucrative rate, was lost because he had not performed any of the necessary improvements or renovations and permitted 73 Empire Boulevard to remain in such disrepair that it has actual trees growing inside of the property that compromise the integrity of the building);

- The Investment Properties have paid and are unnecessarily accruing millions of dollars in compounding interest on loans secured by them, at interest rates of 12-13% per annum.  This is largely because the Individual Defendants looted the Companies and raided 100% of the proceeds of construction loans for their own personal enrichment to pay for their personal and business obligations by immediately, upon executing loan documents, instead of waiting to withdraw those funds incrementally as the construction on the projects progressed so that the Plaintiffs would not suffer additional damages while construction was not being performed;

- Investment Properties face foreclosure as a result of breached mortgages such as the Investment Property located at 657-665 Fifth Avenue;

- Almost all of the Investment Properties are plagued with stop work orders, building code violations, and municipal fines;

- The Individual Defendants are diverting rent from the renovated and refinanced Investment Properties and, in at least one instance, have taken out an additional $250,000 loan secured by a mortgage on 618 Lafayette Avenue without disclosing this loan to Plaintiffs, seeking their consent, or distributing 45% of the proceeds to the LLC Plaintiff with an interest in 618 Lafayette Avenue.

**D.     The Secret and Unauthorized Attempt to Imminently
         Sell at Least Four Investment Properties**

88.     The Individual Plaintiffs became suspicious of wrongdoing by the Individual Defendants in the late spring of 2016 when their larger, multi-million dollar investments in properties such as 657 Fifth Avenue, 73 Empire Boulevard, and 980 Atlantic Avenue had not progressed at all, and the Individual Defendants had reported that they took additional undisclosed mortgages on certain properties because the projects were broke.

89.     Additionally, this was after a lucrative long-term lease for 980 Atlantic Avenue was to be signed, at which time the Individual Plaintiffs began to receive communications from Defendant Oberlander purporting to attempt to convey anonymous offers to purchase, at a significant profit, the interests held by the Individual Plaintiffs, along with instructions to communicate any similar kinds of offers directly through him.

90.     When approached by the Individual Plaintiffs with questions and when it became clear to the Individual Defendants that the Individual Plaintiffs were investigating why their investments had stalled and the projects were allegedly broke, the Individual Defendants began to take secret steps to drain the Investment Properties of more equity and to secretly sell certain Investment Properties without the knowledge or consent of Plaintiffs.

91.     Most egregiously, in or about February 2017, the Individual Plaintiffs learned that

the Individual Defendants were in negotiations with undisclosed third parties to enter into a real estate contract to sell 853 Lexington Avenue.

92. After the Individual Plaintiffs confronted the Individual Defendants, the Individual Defendants misrepresented that they ceased negotiations.

93. On April 5, 2017, Plaintiffs learned that a closing is imminently scheduled to occur, and that the Individual Defendants have misrepresented to all parties involved that they have obtained the consent of Plaintiffs for the sale.

94. Likewise, in April 2017, Plaintiffs learned for the first time that the Individual Defendants also contracted to sell the Investment Property at 657-665 Fifth Avenue ("657 Fifth Avenue") to a developer without their knowledge or consent and shortly thereafter learned that the Investment Properties located at 618 Lafayette Avenue and 1078 Dekalb Avenue were also in contract to be sold without the knowledge or consent of Plaintiffs.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

95. The Individual Plaintiffs bring this current action derivatively in the right and for the benefit of the LLC Plaintiffs to redress injuries suffered, and that continue to be suffered, by the LLC Plaintiffs, as a direct result of the breaches of fiduciary duties owed by the Individual Defendants.

96. The Individual Plaintiffs will adequately and fairly represent the interests of the LLC Plaintiffs in enforcing and prosecuting their rights.

97. The Individual Plaintiffs are the owners of membership interests in the LLC Plaintiffs at all times of their existence, including the time relevant to Individual Defendants' wrongful course of conduct alleged herein.

98.     In as much as the Individual Defendants have total operational control over the LLC Plaintiffs and each has a financial interest in the transactions set forth above, any demand upon the LLC Plaintiffs to sue Individual Defendants for the breaches of fiduciary duty set forth herein would be futile.

### THE FIRST CAUSE OF ACTION
**(Violations of Section 10(b)(5) the Securities Exchange Act of 1934)**

99.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

100.    Based upon the allegations set forth above, membership interests in the Holding Company Defendants are "securities" within the meaning of the Securities Exchange Act of 1934, 15 U.S.C. § 78c (the "34 Act").

101.    Under Section 10 of the 34 Act, it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of mails . . . [t]o use or employ, in connection with the purchase [of any security,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations of the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest for the protection of investors." 15. U.S.C. § 78j(b).

102.    Under SEC rule 10b-5, it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of mails . . .

(a)     To employ any devise, scheme, or artifice to defraud,

(b)     To make any untrue statement of material fact or to omit to state a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were

made, not misleading; or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.  17 C.F.R. §240.10b-5.

103.    Under SEC rule 10b-5, the "manipulative and deceptive devices" prohibited by Section 10(b) of the 34 Act and Rule 10b-5 include, *inter alia*, the purchase of a security "on the basis of material non-public information about that security or [its] issuer, in breach of a duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security or the shareholder of that issuer . . ." 17 C.F.R. § 240.10b5-1(a).

104.    Through their conduct alleged herein, the Individual Defendants have violated Section 10 of the 34 Act and Rules 10b-5 and 10b5-1.

105.    As alleged more fully above, the Individual Defendants engaged in a course of conduct that operated as a fraud or deceit upon Plaintiffs in violation of Rule 10b-5(c).

106.    The Individual Defendants engaged in the course of conduct and made the statements and omissions alleged herein with scienter.  Specifically, The Individual Defendants' intention was induce the Individual Plaintiffs to invest far more than was required to purchase the Properties so that he could use the excess proceeds to purchase and/or develop entirely different properties, to the total exclusion of Plaintiffs and for his their own personal enrichment, and to leave the Investment Properties to languish and remain unprofitable.

107.    The Individual Defendants knew their statements were false when made.

108.    But for these misrepresentations, the Plaintiffs would not have purchased the aforementioned securities.

109.    Based on the foregoing, in addition to any and all remedies Plaintiffs are entitled to under any theory of liability, including the ones pleaded in the other causes of action in this Complaint, Plaintiffs are entitled to the return of all funds invested into the Individual Defendants' fraudulent scheme, and all other damages recoverable under the 34 Act, together with interest, costs, expenses, and attorneys fees, but in no event less than $30,000,000.

**THE SECOND CAUSE OF ACTION**
**(Cancellation of Real Estate Contract for 853 Lexington, 657 Fifth Avenue**
**618 Lafayette Avenue, and 1078 Dekalb Avenue)**

110.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

111.    On information and belief, the Individual Defendants, purporting to act with the authority of the Defendant 853 Lexington LLC and 657-665 5th Avenue LLC, 618 Lafayette Avenue LLC, and 1078 Dekalb Avenue LLC, have executed one or more real estate contracts for the sale and or transfer of the properties known as 853 Lexington Avenue, Brooklyn, New York ("853 Lexington"), 657 Fifth Avenue, 618 Lafayette Avenue, and 1078 Dekalb Avenue to John Does 1-10 and/or XYZ Corps. 1-10, the identity of whom and/or which cannot presently be sufficiently identified without further discovery and/or investigation.

112.    These contracts were signed by one or more of the Individual Defendants without the authority or approval of Plaintiffs.

113.    These real estate contracts are thus void under, *inter alia,* New York General Obligations Law § 5-703.

114.     On information and belief, the Individual Defendants have not informed the John Does 1-10 and/or XYZ Corps. 1-10 that they did not and do not have authority to sign this real estate contract (or contracts) to sell or otherwise convey these Investment Properties.

115.     Individual Defendants have also concealed the identity of John Does 1-10 and/or XYZ Corps. 1-10, and as a result, the Plaintiffs cannot inform them that these contracts were executed without authority of Holding Company Defendants 853 Lexington LLC, 657-665 5th Avenue LLC, 1078 Dekalb LLC, and 618 Lafayette LLC.  If Plaintiffs knew the identity of John Does 1-10 and/or XYZ Corps. 1-10, Plaintiffs would rescind and cancel this contract (or contracts) and identify them by name.

116.     Those affected by this cause of action are not believed to be infants, mentally retarded, mentally ill, or alcohol or drug abusers.

117.     Any judgment granted herein will not affect any person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the aforesaid premises. In addition, every person in being who would have been entitled to such estate or interest, if such event had happened immediately before the commencement of the action, is named as a party to this action.

118.     As a result of the foregoing, the Plaintiffs are entitled to a judgment canceling and rescinding this real estate contract (or contracts).

119.     In addition, insofar as John Does 1-10 and/or XYZ Corps. 1-10 may claim to have some estate or interest in 853 Lexington, 618 Lafayette Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, Plaintiffs are entitled to a (i) judgment under Article 15 of the NY RPAPL,

declaring John Does 1-10 and/or XYZ Corps. 1-10 and all persons claiming under them or under any of them be barred from all claim to an estate or interest of 853 Lexington, 618 Lafayette Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, (ii) finally determining that 853 Lexington LLC, 657-665 5th Avenue LLC, 618 Lafayette LLC, and 1078 Dekalb LLC are the lawful owners and are vested with an absolute and unencumbered title in fee to each of these respective properties, and (iii) declaring that the sole and complete possession of the Investment Property at (a) 853 Lexington shall be retained by 853 Lexington LLC; (b) 657 Fifth Avenue shall be retained by 657-665 5th Avenue LLC; (c) 618 Lafayette Ave shall be retained by 618 Lafayette LLC; and (d) 1078 Dekalb Avenue shall be retained by 1078 Dekalb LLC.

**THE THIRD CAUSE OF ACTION**
**(Fraud)**

120.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

121.     Prior to Plaintiffs' investment in the Investment Properties, the Individual Defendants  made the aforementioned material misrepresentations and omissions.

122.     Said misrepresentations and omissions were made by the Individual Defendants to induce the Individual Plaintiffs to invest in the Investment Properties and the Individual Defendants' fraudulent scheme.

123.     The Individual Plaintiffs reasonably relied on these misrepresentations and omissions in electing to forego other investment opportunities and invest with the Individual Defendants.

124.     But for these misrepresentations and omissions, the Individual Plaintiffs would not have invested any money with the Individual Defendants.

125. As a result of these representations and omissions, Defendant has incurred significant damages.

126. Based on the foregoing, Plaintiffs are entitled to damages and the disgorgement of profits in an amount to be determined at trial, and the return of all funds invested into the Individual Defendants' fraudulent scheme, together with interest, costs, expenses, and attorneys' fees, but in no event less than $30 million.

### THE FOURTH CAUSE OF ACTION
**(Constructive Trust Over the Secret Properties)**

127. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

128. As set forth in detail above, the Individual Defendants engaged in a scheme to defraud the Individual Plaintiffs, whereby Individual Defendants procured significant investments of money from Plaintiffs into the Holding Company Defendants based on the misrepresentation that such investments would go exclusively toward the purchase and development of the Investment Properties.

129. As set forth in detail above, after the Individual Defendants procured these significant investments, the Individual Defendants fraudulently removed and diverted these moneys from the Holding Company Defendants and utilized same to purchase and develop the Secret Properties.

130. Insofar as the Secret Properties were procured with the proceeds of Individual Defendants' fraudulent scheme against the Individual Plaintiffs, the Plaintiffs demand that the Secret Properties be conveyed to Plaintiffs, together with any profits that the Individual Defendants obtained from the Secret Properties.

131.   Based on the foregoing, Plaintiffs are entitled to the imposition of a constructive trust over the Secret Properties and a judgment: (i) declaring that such properties be re-conveyed to Plaintiffs pursuant thereto; and (ii) compelling the Individual Defendants to do so or, in the alternative a judgment pursuant to Fed. R. Civ. P. 70, divesting the Secret LLCs of title to the Secret Properties and vesting title to it in others.

## THE FIFTH CAUSE OF ACTION
### (Derivative Cause of Action by the LLC Plaintiffs Against the Individual Defendants, CSRE LLC and the Holding Company Defendants for Breach of Fiduciary Duty)

132.   Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

133.   The Individual Defendants are the Managers of both the LLC Plaintiffs and the Holding Company Defendants.

134.   As such, the Individual Defendants owe to the LLC Plaintiffs and the Individual Plaintiffs fiduciary duties of *inter alia*, loyalty, care, and disclosure.

135.   CSRE LLC is a co-member with each of the LLC Plaintiffs, in at least one of the Holding Company Defendants.

136.   By virtue of these fiduciary relationships with the LLC Plaintiffs, the Individual Defendants and CSRE LLC owe all Plaintiffs the highest obligation of good faith, fair dealing, loyalty, and due care.

137.   The Individual Defendants breached their fiduciary duty by way of the conduct set forth more fully above.

138.   The Individual Defendants' breaches of fiduciary duty were wanton, willful, and malicious, in that they were purposefully designed to injure and exploit the LLC Plaintiffs to

enrich themselves and the Secret LLC Defendants.

139.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, the LLC Plaintiffs have incurred and continue to incur significant irreparable damage.

140.    The LLC Plaintiffs are therefore are entitled to: (i) compensatory and punitive damages and the disgorgement of profits in an amount to be determined at trial but no less than $90,000,000; (ii) a permanent injunction removing the Individual Defendants from any roles as managers and/or managing members of the LLC Plaintiffs and the Holding Company Defendants; and (iii) a judgment declaring that all direct and indirect interest in and to the Investment Properties and the Holding Company LLCs be vested solely in the appropriate LLC Plaintiff.

## THE SIXTH CAUSE OF ACTION
### (Direct Claims for Breach of Fiduciary Duty
By the Individual Plaintiffs Against the Individual Defendants)

141.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

142.    The Individual Defendants owed and continue to owe the Individual Plaintiffs fiduciary duties.

143.    By virtue of the Individual Defendants' fiduciary relationship with the Individual Plaintiffs, the Individual Defendants owe the Individual Plaintiffs the highest obligation of good faith, fair dealing, loyalty, and due care.

144.    The Individual Defendants breached their fiduciary duty by way of the conduct set forth more fully above.

145.    The Individual Defendants' breaches of fiduciary duty were wanton, willful, and malicious, in that they were purposefully designed to injure and exploit the Individual Plaintiffs to enrich themselves and the Holding Company Defendants.

146.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, the Individual Plaintiffs have incurred and continue to incur significant irreparable damage.

147.    The LLC Plaintiffs are therefore entitled to compensatory and punitive damages and the disgorgement of profits in an amount to be determined at trial, but at a minimum no less than $90,000,000.

**THE SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

148.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

149.    Defendants have enriched themselves at Plaintiffs expensive by, *inter alia*, siphoning money from the LLC's to purchase and develop the Secret Properties, to the exclusion of the Plaintiffs.

150.    Defendants are wrongfully in possession of these monies and have received substantial benefits from the wrongful possession thereof.

151.    Equity and good conscience require that Defendants return the value of these monies to Plaintiff and the Companies.

152.     Defendants have unfairly and improperly obtained, and continue to unfairly and improperly obtain, substantial benefits at the expense of Plaintiffs

153.     As a result of the foregoing, Defendants have caused and continue to cause damage to Plaintiff and the Companies, in an amount to be proven at the trial.

## THE EIGHTH CAUSE OF ACTION
### (Accounting)

154.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

155.     The fraud and breaches of fiduciary duty set forth above have damaged the Plaintiffs.

156.     Despite due demand, the Individual Defendants have refused to provide a just and fair accounting to Plaintiffs.

157.     Plaintiffs are therefore entitled to an accounting of all of the books, records and transactions of the LLC Plaintiffs and the Holding Company Defendants, and for the recovery of any funds that have been improperly taken therefrom.

## THE NINTH CAUSE OF ACTION
### (Constructive Trust Over Proceeds Derived From Properties Held for the Benefit of the Individual Defendants By the Additional Secret LLC Defendants)

158.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

159.     The Individual Defendants engaged in a scheme to defraud the Individual Plaintiffs, whereby Individual Defendants procured significant investments of money from Plaintiffs into the Holding Company Defendants based on the misrepresentation that such

investments would go exclusively toward the purchase and development of the Investment Properties.

160.    After the Individual Defendants procured these significant investments, the Individual Defendants fraudulently removed and diverted these moneys from the Holding Company Defendants and utilized same to purchase, develop or otherwise acquire interests in other properties that were held by the Individual Defendants, or for their benefit, in the name of the Additional Secret LLC Defendants, and thereafter the Individual Defendants sold these properties and/or their interests therein and diverted the proceeds therefrom solely for their own benefit and to the exclusion of Plaintiffs.

161.    Insofar as the proceeds derived from the properties owned by these Additional Secret Defendants were procured with the proceeds of Individual Defendants' fraudulent scheme against the Individual Plaintiffs, Plaintiffs are entitled to a constructive trust over all such proceeds.

**WHEREFORE**, Plaintiffs hereby request that the Court grant the following relief:

(i)     On the First Cause of Action, a money judgment in favor of the Individual Plaintiffs and the LLC Plaintiffs jointly and severally against the Individual Defendants in an amount no less than $30,000,000, jointly and severally together with interest, costs, expenses, and attorneys' fees;

(ii)    On the Second Cause of Action, a judgment against 853 Lexington Avenue LLC and 657-665 5th Avenue LLC and John Does 1-10 and/or XYZ Corps. 1-10: (i) canceling and rescinding any real estate contracts for the purchase of 853 Lexington, 657 Fifth Avenue, 618 Lafayette Avenue, and 1078 Dekalb Avenue (ii) judgment under Article 15 of the NY RPAPL, declaring John Does 1-10 and/or XYZ Corps. 1-10 and all persons claiming under them or under any of them be barred from all claim to an estate or interest of 853 Lexington, 618 Lafayette Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, (iii) finally determining that 853 Lexington LLC, 657-665 5th Avenue LLC, 618 Lafayette LLC, and 1078 Dekalb LLC are the lawful owners and are vested with an absolute and unencumbered title in fee to each of these respective properties, and

(iv) declaring that the sole and complete possession of the Investment Property at (a) 853 Lexington shall be retained by 853 Lexington LLC; (b) 657 Fifth Avenue shall be retained by 657-665 5th Avenue LLC; (c) 618 Lafayette Ave shall be retained by 618 Lafayette LLC; and (d) 1078 Dekalb Avenue shall be retained by 1078 Dekalb LLC;

(iii)   On the Third Cause of Action a money judgment in favor of the Individual Plaintiffs and the LLC Plaintiffs, jointly and severally, against the Individual Defendants in an amount no less than $30,000,000, jointly and severally together with interest, costs, expenses, and attorneys' fees;

(iv)   On the Fourth Cause Action, the imposition of a constructive trust on the Secret Properties in favor of the Plaintiffs and a judgment (i) declaring that such properties be re-conveyed to Plaintiffs pursuant thereto; and (ii) compelling the Individual Defendants to do so or, in the alternative, a judgment pursuant to Fed. R. Civ. P. 70, divesting the Secret LLCs of title to the Secret Properties and vesting title to it in others;

(v)   On the Fifth Cause of Action, (i) a money judgment in favor of the LLC Plaintiffs and against the Holding Company Defendants for compensatory and punitive damages, including but not limited to the disgorgement of any ill-gotten proceeds of their misconduct, in an amount to be determined at trial but in an amount no less than $90 million; (ii) a judgment permanently enjoining and restraining the Individual Defendants from managing the LLC Plaintiffs and the Holding Company Defendants; and (iii) a judgment declaring that all direct and indirect interest in and to the Investment Properties and the Holding Company LLCs be vested solely in the appropriate LLC Plaintiff;

(vi)   On the Sixth Cause of Action, a money judgment in favor of the LLC Plaintiffs and against Defendants, jointly and severally, for compensatory and punitive damages, including but not limited to the disgorgement of any ill-gotten proceeds of misconduct, in an amount to be determined at trial but no less than $90 million;

(vii)   On the Seventh Cause of Action, a money judgment in favor of the Plaintiffs and against Defendants in an amount to be determined at trial;

(viii)   On the Eighth Cause of Action, a full accounting in favor of the Plaintiffs and against Defendants compelling Defendants to fully disclose to Plaintiffs the Holding Company Defendants and LLC Plaintiffs' books, records and transactions of in an amount to be determined at trial;

(ix)    On the Ninth Cause of Action, the imposition of a constructive trust on all proceeds derived by Defendants in connection with the properties acquired in the name of the Additional Secret LLC Defendants;

(x)    Plaintiffs' costs and disbursements incurred in this suit, including Plaintiffs' attorneys' fees to the full extent permitted by law;

(xi)    Pre and Post judgment interest; and

(xii)    Such other and further relief as the Court may deem just and proper.

Dated: April 24, 2017
       New York, New York

Respectfully Submitted,

OVED & OVED LLP

By:  /s/ Darren Oved
       Darren Oved, Esq.
       Edward C. Wipper, Esq.
       Andrew J. Urgenson, Esq.
       *Attorneys for Plaintiffs*
       401 Greenwich Street
       New York, New York 10013
       Tel: 212.226.2376

# SCHEDULE A

| Investment Property | Holding LLC That Owns/Owned the Investment Property | LLC Plaintiff With Interest in Holding LLC |
|---|---|---|
| 901 Bushwick Avenue, Brooklyn, NY 11221 | 901 Bushwick Avenue LLC | Bushwick Operations LLC |
| 106 Kingston Avenue, Brooklyn, NY 11213 | 106 Kingston LLC | Kingston Operations LLC |
| 1213 Jefferson Avenue, Brooklyn, NY11221 | 1213 Jefferson LLC | Jefferson Operations LLC |
| 369 Gates Avenue, Brooklyn, NY 11216 | Gates Equity Holdings LLC | 369 Gates Operations LLC |
| 853 Lexington Avenue, Brooklyn, NY 11221 | 853 Lexington LLC | 853 Lexington Operations LLC |
| 945 Park Place, Brooklyn, NY 11213 | 945 Park Pl LLC | 945 Park Place Operations LLC |
| 1078 Dekalb Avenue, Brooklyn, NY 11221 | 1078 Dekalb LLC | 1078 Dekalb Operations LLC |
| 618 Lafayette Avenue, Brooklyn, NY, 11216 | 618 Lafayette LLC | 618 Lafayette Operations LLC |
| 74 Van Buren Street, Brooklyn, NY 11221 | 74 Van Buren LLC | 74 Van Buren Operations LLC |
| 325 Franklin Avenue, Brooklyn, NY 11238 | 325 Franklin LLC | 325 Franklin Operations LLC |
| 760-762 Willoughby Avenue, Brooklyn, NY 11206 | 762 Willoughby LLC | 760 Willoughby Operations LLC |
| 657-665A 5th Avenue, Brooklyn, NY 11215 | 657-665 5th Avenue LLC | Slope Equities Operations LLC |
| 454 Central Avenue, Brooklyn, NY 11205 | 454 Central Avenue LLC | 454 Central Avenue Operations LLC |
| 855 Dekalb Avenue, Brooklyn, NY 11211 | 855 Dekalb Avenue LLC | 855 Dekalb Avenue Operations LLC |
| 525 Willoughby Ave Brooklyn, NY 11206 | Willoughby Estates LLC | Willoughby Estates Operations LLC |
| 73 Empire Boulevard, Brooklyn, NY 11225 | 73 Empire Development LLC | 73 Empire Development Operations LLC |
| 980 Atlantic Avenue,  Brooklyn, NY 11238 | 980 Atlantic Holdings LLC | 980 Atlantic Holdings Operations LLC |
| 720 Livonia Avenue, Brooklyn, NY 11210 | 720 Livonia Development LLC | 720 Livonia Operations LLC |
| 8 Maple Avenue, Bay Shore, NY 11706 | CSY Holdings LLC | 8 Maple Avenue Operations LLC |
| 348 St. Nicholas Avenue, New  York NY 10027 | 348 St. Nicholas LLC | 348 St. Nicholas Operations LLC |
| 1301 Putnam Avenue, Brooklyn, NY 11221 | 1301 Putnam LLC | 1301 Putnam Operations LLC |

# <u>SCHEDULE B</u>

(Secret Properties and Secret LLC Defendants' Membership Interests)

| <u>Secret Property</u> | <u>Secret LLC Defendant</u> |
|---|---|
| 568 Willoughby Avenue, Brooklyn, NY, | APC Holding 1 LLC |
| 940 1st Avenue, New York, NY | First Avenue Realty Holdings L.P. |
| 53 Stanhope Street, Brooklyn, NY | 53 Stanhope LLC |
| 1125-1133 Greene Avenue, Brooklyn, NY | 1125-1133 Greene Ave LLC |
| 834 Metropolitan Avenue, Brooklyn, NY | 834 Metropolitan Avenue LLC |
| 92 South 4th Street, Brooklyn, NY | 92 South 4th Street LLC |
| 16 Howard Avenue, Brooklyn, NY | The Howard Day House LLC |
| 55 Stanhope Street, Brooklyn, NY | 55 Stanhope LLC |
| 599-601 Willoughby Avenue, Brooklyn, NY | 599-601 Willoughby LLC |
| 1217 Bedford Avenue, Brooklyn, NY | 1217 Bedford LLC |
| 1266 Pacific Street, Brooklyn, NY | 1266 Pacific LLC |
| 1173 Bergen Street, Brooklyn, NY | CSN Partners L.P. |
| 196 Albany Avenue, Brooklyn, NY | 196 Albany Holdings LP |
| 1426-1436 Fulton Street, Brooklyn, NY | Fulton Street Holdings LLC |
| 98, 100, 102, 104 Jefferson Street, Brooklyn, NY | 100 Jefferson Realty LLC |
| 167 Hart Street, Brooklyn, NY | 167 Hart LLC |
| 741 Lexington Avenue, Brooklyn, NY | 741 Lexington LLC |
| 296 Cooper Street, Brooklyn, NY | 296 Cooper LLC |
| 396 South 2nd Street, Brooklyn, NY | 400 South 2nd Street Holdings L.P. |
| 113 and 115-123 Clifton Place, Brooklyn, NY | Gold Cliff, LLC |
| 219 and 221 Rutledge Avenue, Brooklyn, NY | CS YH Condos LLC |