UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

JACOB   SCHONBERG,   BINYOMIN   SCHONBERG,
BINYOMIN HALPERN, RAPHAEL BAROUCH ELKAIM,
BUSHWICK OPERATIONS LLC, KINGSTON OPERATIONS
LLC,  JEFFERSON  OPERATIONS  LLC,  369  GATES
OPERATIONS LLC, 1078 DEKALB OPERATIONS LLC, 618
LAFAYETTE  OPERATIONS  LLC,  74  VAN  BUREN
OPERATIONS  LLC,  760  WILLOUGHBY  OPERATIONS
LLC,  454  CENTRAL  AVENUE  OPERATIONS  LLC,  855
DEKALB  AVENUE  OPERATIONS  LLC,  720  LIVONIA
OPERATIONS LLC, SLOPE EQUITIES OPERATIONS LLC,
WILLOUGHBY ESTATES OPERATIONS LLC, 73 EMPIRE
DEVELOPMENT  OPERATIONS  LLC,  980  ATLANTIC
HOLDINGS   OPERATIONS   LLC,   325   FRANKLIN
OPERATIONS LLC, 8 MAPLE AVENUE OPERATIONS LLC
853 LEXINGTON OPERATIONS LLC, 348 ST. NICHOLAS
OPERATIONS LLC, 1301 PUTNAM OPERATIONS LLC, 945
PARK  PLACE  OPERATIONS  LLC,  BERTHA  SARA
SCHONBERG, SHIMON ASULIN, YECHIEL BEN-DAVID,
YAAKOV   BEN-SHIMON,   AVRAHAM   BEN-ZIMRA,
RACHEL BEN-ZIMRA, NETANEL COHEN-ARAZI, ISAAC
ELKAIM,  JAKOB  ELKAIM,  DAVID  DOV  ERNSTER,
SHMUEL GABAI, MIKE GENUTH, MIRIAM GENUTH,
RACHEL GOLOMBACK, PINCHAS GROSKOPF, NATHAN
GROSS,   CLARA   GROSSMAN,   IRVING   GROSSMAN,
ABRAHAM  JOSHUA  GROSSNASS,  FRIEDA  KARMEL,
MORRIS KARMEL, MIRIAM CHAYA LEV (BEN-SIMON),
AVRAHAM  YESHAYAHU  LEV,  OVED  LEVI,  YAAKOV
LEVIN, SIMHA MAIMON, YOSEF MAIMON, MORDECHAI
YAAKOV  MEYER,  SARA  MEYER,  MICHAEL  MULLER,
PINHAS DOV NEUFELD, ABRAHAM PASKAS, DAVID
SCHONFELD, PNINA SCHONFELD, ITAMAR SHAYA,
SHIMON    SHENKER,  YOSSEF  SHTERN,  ZEVULUN
VEICHELDER,  ABRAHAM  VINBERG,  ELYASHIV
MENAHEM WEIL, YAAKOV WIZMAN, AVRAHAM
ZAKUTA, AND CHAJA CHAVA ZWIEBEL,

**Case No.:**
**17-cv-2161 (CBA)(RML)**

**SECOND AMENDED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

*Plaintiffs*,

v.

YECHEZKEL    STRULOVICH    a/k/a    CHASKIEL
STRULOVITCH,  YECHIEL  OBERLANDER  a/k/a  MICI
OBERLANDER a/k/a MIHAY OBERLANDER, CSRE LLC,
------------------------------------------------------------------------------X

*- caption continued on next page -*

-----------------------------------------------------------------------------X

CS CONSTRUCTION GROUP LLC, GOOD LIVING MANAGEMENT LLC, 908 BERGEN STREET LLC, 901 BUSHWICK AVENUE LLC, 106 KINGSTON LLC, 1213 JEFFERSON LLC, GATES EQUITY HOLDINGS LLC, 1078 DEKALB LLC, 618 LAFAYETTE LLC, 74 VAN BUREN LLC, 762 WILLOUGHBY LLC, 454 CENTRAL AVENUE LLC, 855 DEKALB AVENUE LLC, 720 LIVONIA DEVELOPMENT LLC, 853 LEXINGTON LLC, 657-665 5th AVENUE LLC, WILLOUGHBY ESTATES LLC, 73 EMPIRE DEVELOPMENT LLC, 980 ATLANTIC HOLDINGS LLC, 325 FRANKLIN LLC, 945 PARK PL LLC, 1301 PUTNAM LLC, 348 ST. NICHOLAS LLC, APC HOLDING 1 LLC, CSY HOLDINGS LLC, 53 STANHOPE LLC, 1125-1133 GREENE AVE LLC, 834 METROPOLITAN AVENUE LLC, 92 SOUTH 4TH STREET, LLC,  THE HOWARD DAY HOUSE LLC, 55 STANHOPE LLC, 599-601 WILLOUGHBY LLC, 1217 BEDFORD LLC, 1266 PACIFIC LLC, CSN PARTNERS L.P., 196 ALBANY HOLDINGS L.P, FULTON STREET HOLDNGS LLC, 100 JEFFERSON REALTY LLC, 167 HART LLC, 741 LEXINGTON LLC, 296 COOPER LLC, 41-49 SPENCER LLC, CS YH CONDOS LLC, GOLD CLIFF LLC, MYRTLINO HOLDINGS, LLC, WILLTROUT REALTY LLC, SLOPE OFFICES LLC, STAGG STUDIOS LLC, AND JOHN DOES 1-10 AND XYZ CORPS. 1-10 SUCH INDIVIDUALS OR ENTITIES BEING UNKNOWN ENTITIES PRESENTLY IN CONTRACT TO ACQUIRE THE PARCELS OF REAL PROPERTY LOCATED AT 618 LAFAYETTE AVENUE, 1018 DEKALB AVENUE, 853 LEXINGTON AVENUE AND 657-665A FIFTH AVENUE,

**Case No.:**
**17-cv-2161 (CBA)(RML)**


**SECOND AMENDED**
**COMPLAINT**


**JURY TRIAL**
**DEMANDED**

                              *Defendants.*

-----------------------------------------------------------------------------X

                *- caption continued from first page -*

## INTRODUCTION

1.     The defendants, Yechezkel Strulovich ("**Strulovich**") and Yechiel Oberlander ("Oberlander") (collectively, the "**Individual Defendants**"), engaged in a massive scheme to defraud over 180 people out of more than $20,000,000 through the promotion of so-called "investments" in New York real estate.

2.     The Individual Defendants misrepresented to Jacob Schonberg ("**Jacob**"), Binyomin Schonberg ("**Schonberg**"), Binyomin Halpern ("**Halpern**"), and Raphael Barouch Elkaim ("**Elkaim**") (collectively, the "**Original Plaintiffs**") and the other Individual Plaintiffs (defined *infra*) (collectively, the "**Investors**"), who are the members of the LLC Plaintiffs (defined *infra*), that the money they would be investing with the Individual Defendants would be used to purchase 22 specific properties located primarily in Kings County, New York (the "**Investment Properties**"), which would each be owned by separate limited liability companies (the "**Holding Company Defendants**") which would have the following membership interests: (i) Fifty-Five Percent (55%) by the Individual Defendants' wholly owned entity, Defendant CSRE LLC ("CSRE"); and (ii) Forty-Five Percent (45%) by an operating entity named after each property  (the "**Operating Entities**") that would be owned by the Original Plaintiffs and various other Investors.

3.     The Individual Defendants further represented that they would then develop the Investment Properties and rent them out to commercial and residential tenants for profits that would be generated solely as a result of the efforts of the Individual Defendants.

4.     In exchange for the Investors' capital contributions, the Individual Defendants represented to the Investors that they would, among other things, receive the return of their investment in a set, relatively short, period of time, usually between six (6) and seven (7)

months, and that thereafter 45% of the profits derived from the Investment Properties would be paid to the Operating Entities, and thus to the Investors investing in that particular property.

5.       In furtherance of this scheme, Defendants generated and distributed to the Investors fraudulent prospectuses for each of the 22 Investment Properties to be purchased and developed with the Plaintiffs' money (the "**Fraudulent Prospectuses**").

6.       Once Defendants received the Investors' funds, Defendants distributed to Plaintiffs fraudulent updates and assurances as to the status of the Investment Properties and Defendants' rate of progress, in order to avoid the arousal of any suspicion.  Defendants used the mail, wire service, fax and internet to accomplish the transmission of the Fraudulent Prospectuses, and other false information, and to effect the transfer of the funds between Plaintiffs and Defendants.

7.       The entire process was nothing more than an elaborate fraud to personally enrich the Individual Defendants and their wholly owned entities, such as CSRE, at Plaintiffs' expense, which enrichment to date totals more than $90,000,000 in cash and equity in properties purchased and developed by the Individual Defendants using the funds fraudulently procured from the Investors and through bank fraud.

8.       The Fraudulent Prospectuses sent to the Investors by the Individual Defendants grossly inflated the price and value of the Investment Properties in order to induce investors to invest significantly more than what was required for the Individual Defendants to purchase and develop the Investment Properties and misrepresented that the Individual Defendants intended to develop those properties within a specifically represented time frame—or develop them at all— and that the Individual Defendants intended to distribute any profits to the Investors.

9.       Then, instead of using these excess investment funds provided by the Investors

solely to acquire and develop the Investment Properties, the Individual Defendants secretly diverted the excess funds for their exclusive benefit, including to purchase and develop different properties (the "**Secret Properties**"), for the Individual Defendants' personal enrichment to the total exclusion of the Investors, whose money was misused to purchase them.

10.     With respect to the vast majority of the Investment Properties that the Individual Defendants purchased on behalf of the Investors, rather than developing these Investment Properties, the Individual Defendants have left them to languish, undeveloped and dilapidated, accruing millions of dollars in interest, falling into breach of mortgages and other defaults.

11.     Further exacerbating the harm to Plaintiffs is that the continuing deterioration of these Investment Properties is making their renovation more difficult and more expensive to accomplish, leaving no realistic prospect of generating a return for the Investors, resulting in devastating losses to Plaintiffs.

## JURISDICTION & VENUE

12.     This action arises out of, *inter alia*, violations of §10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 enacted there under [17 C.F.R. 240.10b-5].  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

13.     The Court has supplemental jurisdiction over the state law claims for relief pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common nucleus of operative facts and are so intertwined with the federal claims for relief as to make an exercise of the Court's jurisdiction appropriate.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one of the Individual Defendants is a resident of this District, the properties that are the subject of this

action are situated in this District, and a substantial part of the acts or omissions giving rise to this action occurred here in this District.

## **THE PARTIES**

15.     The Original Plaintiffs, Plaintiffs Jacob, Schonberg, Halpern, and Elkaim are natural persons residing in the State of Israel, and the newly joined Plaintiffs Bertha Sara Schonberg, Shimon Asulin, Yechiel Ben-David, Yaakov Ben-Shimon, Avraham Ben-Zimra, Rachel Ben-Zimra, Netanel Cohen-Arazi, Isaac Elkaim, Jakob Elkaim, David Dov Ernster, Shmuel Gabai, Mike Genuth, Miriam Genuth, Rachel Golomback, Pinchas Groskopf, Nathan Gross, Clara Grossman, Irving Grossman, Abraham Joshua Grossnass, Frieda Karmel, Morris Karmel, Miriam Chaya Lev (Ben-Simon), Avraham Yeshayahu Lev, Oved Levi, Yaakov Levin, Simha Maimon, Yosef Maimon, Mordechai Yaakov Meyer, Sara Meyer, Michael Muller, Pinhas Dov Neufeld, Abraham Paskas, David Schonfeld, Pnina Schonfeld, Itamar Shaya, Shimon Shenker, Yossef Shtern, Zevulun Veichelder, Abraham Vinberg, Elyashiv Menahem Weil, Yaakov Wizman, Avraham Zakuta, and Chaja Chava Zwiebel, (as discussed *supra*, these individuals, together with the Original Plaintiffs, are collectively referred to as the "**Investors**") are natural persons residing in the state of Israel.   For nearly all of the Investors, English is not their first language.

16.     Plaintiffs 908 Bergen Operations LLC, Bushwick Operations LLC, Kingston Operations LLC, Jefferson Operations LLC, 369 Gates Operations LLC, 1078 Dekalb Operations LLC, 618 Lafayette Operations LLC, 74 Van Buren Operations LLC, 760 Willoughby Operations LLC,   454 Central Avenue Operations LLC, 855 Dekalb Avenue Operations LLC, 720 Livonia Operations LLC, Slope Equities Operations LLC, Willoughby Estates Operations LLC, 73 Empire Development Operations LLC, 980 Atlantic Holdings

Operations LLC, 325 Franklin Operations LLC, 853 Lexington Operations LLC, 8 Maple Avenue Operations LLC, 348 St. Nicholas Operations LLC, 1301 Putnam Operations LLC and 945 Park Place Operations LLC (collectively, the "**LLC Plaintiffs**") are each New York limited liability companies with a principal place of business in Brooklyn, New York.

17.     The LLC Plaintiffs have resolved to interpose direct claims in this action against all of the Defendants herein.

18.     Defendants 908 Bushwick Avenue LLC, 901 Bushwick Avenue LLC, 106 Kingston LLC, 1213 Jefferson LLC, Gates Equity Holdings LLC, 1078 Dekalb LLC, 618 Lafayette LLC, 74 Van Buren LLC, 762 Willoughby LLC, 454 Central Avenue LLC, 855 Dekalb Avenue LLC, 720 Livonia Development LLC, 853 Lexington LLC, 657-665 Fifth Avenue LLC, Willoughby Estates LLC, 73 Empire Development LLC, 980 Atlantic Holdings LLC, 325 Franklin LLC, 945 Park PL LLC, 348 St. Nicholas LLC, 1301 Putnam LLC and CSY Holdings LLC (collectively, defined *supra* as the "**Holding Company Defendants**") are each New York limited liability companies, with a principal place of business in Brooklyn, New York.

19.     The Investors are named in this action in their individual capacities and in their capacities as members of the LLC Plaintiffs.

20.     Each of the Holding Company Defendants, the respective LLC Plaintiffs having a Forty-Five Percent (45%) interest therein, and the individual Investors who are members of those LLC Plaintiffs are set forth in **Schedule A**, annexed to this Second Amended Complaint (the "**Complaint**") and made a material part hereof.

21.     Each of the LLC Plaintiffs has a membership interest in one of the Holding Company Defendants and holds all of the Investor Plaintiffs' interests in the Investment

Properties.

22.     Each of the Holding Company Defendants holds title to one of the Investment Properties.

23.     All of the Investment Properties are located in Brooklyn, New York, except for (i) 8 Maple Avenue, which is located in Bay Shore, New York in Suffolk County; and (ii) 348 St. Nicholas Avenue, which is located in New York, New York.

24.     There are over 180 separate Investors in the Investment Properties who are members of their respective LLC Plaintiffs.

25.     Strulovich resides in Brooklyn, New York and Oberlander is a United States citizen presently residing in the State of Israel and frequently comes to New York for "business."

26.     The Individual Defendants are the managers of the Holding Company Defendants.

27.     The Individual Defendants also convinced the Investors to make the Individual Defendants managers of the LLC Plaintiffs so that the Individual Defendants could ensure the Investors did not receive accurate financial information and so the Individual Defendants could maintain full control over the distributions made thereunder.

28.     CSRE, CS Construction LLC, and Goodliving Management LLC are New York limited liability companies owned and controlled by the Individual Defendants (collectively, the "**Construction Management Defendants**").

29.     Defendants APC Holding 1 LLC, 53 Stanhope LLC, 1125-1133 Greene Ave LLC, 834 Metropolitan Avenue LLC, 92 South 4th Street, LLC,  The Howard Day House LLC, 55 Stanhope LLC, 599-601 Willoughby LLC, 1217 Bedford LLC, 1266 Pacific LLC, CSN Partners L.P., 196 Albany Holdings L.P.,  Fulton Street Holdings LLC, 100 Jefferson

Realty LLC, 167 Hart LLC, 741 Lexington LLC, 296 Cooper LLC, Gold Cliff LLC and CS YH Condos LLC (the "**Secret LLC Defendants**"), are each New York limited liability companies or New York limited partnerships, with a principal place of business in Brooklyn, New York.

30.     Each of the Secret LLC Defendants is owned and controlled by the Individual Defendants.

31.     As set forth in **Schedule B** to this Complaint, each of the Secret LLC Defendants holds title to one of the Secret Properties, each of which are located in Brooklyn, New York.

32.     Defendants Myrtlino Holdings, LLC, Willtrout Realtry LLC, Stagg Studios LLC, 41-49 Spencer LLC, and Slope Offices LLC (the "**Additional Secret LLC Defendants**") are each New York limited liability companies with a principal place of business in Brooklyn, New York.

33.     Each of the Additional Secret LLC Defendants is owned and controlled by the Individual Defendants.

34.     John Does 1-10 and/or XYZ Corps. 1-10, the identity of whom and/or which cannot presently be sufficiently identified without further discovery and/or investigation, are the names of the individual and/or entities to which certain Investment Properties are in improperly in contract to be sold.

## FACTS COMMON TO ALL CAUSES OF ACTION

35.     In or about early 2012, Oberlander, who is a member of a tight-knit group of Orthodox Jewish people living in Israel, initially approached the Original Plaintiffs, to invest money with Oberlander and his longtime business partner, Strulovich, in connection with a real estate project located at 908 Bergen Street, Brooklyn, New York.

36.     Oberlander represented to the Original Plaintiffs that the real estate for this project

was to be acquired and developed by Strulovich—a well-known and sophisticated New York City real estate developer with over a decade of experience navigating the complexities of the New York City real estate market.

37.    Oberlander knew that the Original Plaintiffs were well-respected and trusted members of their community and, thus, enlisting them in his real estate projects would legitimize those projects and influence others in their community to do the same, thereby allowing Oberlander to effectuate a carefully calculated scheme to defraud hundreds of investors over the course of several years.

38.    Oberlander also targeted the Original Plaintiffs and the numerous other foreign overseas Investors for his elaborate fraudulent scheme because he knew that they (i) were not United States citizens or residents and thus would not likely be able to visibly inspect the Investment Properties; (ii) were unfamiliar with the complexities of New York real estate and construction; (iii) were not represented by counsel in these matters; and (iv) would trust him completely to represent their best interests and arrange all of the complex legal and logistical matters that came up throughout these deals, with which they were thoroughly unfamiliar.

39.    In addition to foreign overseas Investors, Strulovich and Oberlander targeted certain American and Canadian investors because he knew that (i) they were similarly unfamiliar with the complexities of New York real estate and construction; (ii) they were not represented by counsel in these matters; and (iii) they would trust them completely to represent their best interests and arrange all of the complex legal and logistical matters that came up throughout these deals, with which they were thoroughly unfamiliar.

40.    Oberlander and Strulovich advised the Investors that Oberlander and Strulovich would own their 55 percent interest in the Investment Properties through their holding company

CSRE, and that they would manage the company through same, in accordance with the Prospectuses.

41.     At the time that each and every one of the 180 Investors transferred money for each of the 22 Investment Properties, no operating agreement was presented to the members of the LLC Plaintiffs for review or signature, nor was the execution of any operating agreement made a condition of making the investment, becoming a member in any of the LLC Plaintiffs, or otherwise acquiring an interest in any of the LLC Plaintiffs, and thus an interest in the Investment Properties.

**A.**     **The Misrepresentations Contained in the Prospectuses**

42.     Between February 6, 2012 and September 14, 2014, the Individual Defendants transmitted Prospectuses to the Investors for each of the 22 Investment Properties containing certain representations and business plans designed to induce the Investors to invest in approximately 22 specifically identified parcels of real estate for the purposes of renovating commercial and residential units, developing existing buildings to add additional residential units, and in some instances, constructing new buildings on empty parcels of real estate for the purpose of renting the newly developed and renovated commercial and residential units thereon.

43.     Each of the Fraudulent Prospectuses represented to the Investors: (i) the purchase price of the property or properties, including closing costs, (ii) the amount of the original bank loan that the Individual Defendants would obtain to finance the remainder of the project; (iii) a date certain by which construction would be completed; and that (iv) Investors would receive the return of their original investment in a relatively short period through a refinancing of the original bank loan, which would take place at a specified time period after the closing on the Property, and that, thereafter, the Investors would receive 45% of the profits.

44.     None of the Fraudulent Prospectuses contained arbitration provisions or any disclaimers as to fraud, liability or otherwise.

45.     The Fraudulent Prospectuses also set forth the following "obligations" of the Individual Defendants for each of the 22 Investment Properties: (i) to acquire the property through an LLC (the Defendant Holding Companies)  in which the Investors (through the LLC Plaintiffs) would own a 45 percent interest; (ii) to return the equity investment of the Investors prior to the division of profits as set forth above; (iii) to organize the bank loans described in the Fraudulent Prospectuses; (iv) to develop the Investment Properties in accordance with the descriptions set forth in the Fraudulent Prospectuses; (v) to deal with the rentals of the apartments and or commercial spaces; (vi) to complete the projects within a specified time period following closing; (vii) to deal with all tax reporting and governmental related matters and comply with laws; and (viii) to handle, manage and take care of the project under construction and further the rental and sale to further the success of the business.

46.     Additionally, in each Fraudulent Prospectus the Individual Defendants specifically represented to the Investors that the profits from their investments would depend solely on the efforts of the Individual Defendants, stating that the Individual Defendants would "attend to, manage, and worry for the project in its formation, continuation, rental, and sale all attention necessary for the success of the business."

## SPECIFIC MISREPRESENTATIONS IN THE FRAUDULENT PROSPECTUSES

### 908 Bergen Street

47.     On or about February 6, 2012, the Individual Defendants transmitted to the Original Plaintiffs and the other members of 908 Bergen Operations LLC a Fraudulent Prospectus to induce them to invest $250,000 for the purchase and development of 908 Bergen

Street.

48.     The Fraudulent Prospectus misrepresented, *inter alia,* that the purchase price of this property, including closing costs, was going to be $425,000.

49.     But contrary to this misrepresentation, the Individual Defendants knew that actual price that the Strulovich Defendants would pay for the property was only $200,000.

## 853 Lexington Avenue

50.     On or about July 16, 2012, the Individual Defendants transmitted to the members of 853 Lexington Operations LLC a Fraudulent Prospectus to induce them to invest $650,000 for the purchase and development of 853 Lexington Avenue.

51.     The Fraudulent Prospectus misrepresented, *inter alia,* that the purchase price of this property, including closing costs, was going to be $1,485,000.

52.     But contrary to this misrepresentation, the Individual Defendants knew that the actual price that they would pay for the property was only $965,000.[1]

## 74 Van Buren Street

53.     On November 4, 2012, the Individual Defendants transmitted to the members of 74 Van Buren Operations LLC a Fraudulent Prospectus to induce them to invest $120,000 for the purchase and development of 74 Van Buren Street.

54.     The Fraudulent Prospectus misrepresented, *inter alia,* that the purchase price of these property, including closing costs, was going to be $475,000.

55.     But contrary to this misrepresentation, the Individual Defendants knew that they would only pay $315,000 for the purchase of this Investment Property.

---

[1] The misrepresentations in the Fraudulent Prospectuses were not the only ones made in connection with the Property at 853 Lexington. In May 2013, the Individual Defendants transmitted reports to the Investors of this project, by electronic mail, that the Individual Defendants had received approval to expand the project at 853 Lexington Avenue and required an immediate additional cash investment of $800,000. Despite receiving those funds from the members of the LLC Plaintiff owning an interest in 853 Lexington, renovations did not progress.

**762 Willoughby Avenue**

56.     In yet another fraudulent misrepresentation, on or about December 19, 2012, the Individual Defendants transmitted to the Original Plaintiffs, a Fraudulent Prospectus to induce them to invest $520,000 for the purchase and development of 762 Willoughby Avenue.

57.     The Fraudulent Prospectus misrepresented, *inter alia*, that the purchase price of this property, including closing costs, which they purchased two days later, was going to be $1,295,000.

58.     But contrary to this misrepresentation, the Individual Defendants knew that the actual price that they would pay for the property was only $995,000, for which the Individual Defendants had already secured financing of $1.1 million.

**454 Central Avenue and 855 Dekalb Avenue**

59.     Likewise, on or about May 16, 2013, the Individual Defendants transmitted to the members of 454 Central Avenue Operations LLC and 855 Dekalb Avenue Operations LLC a Fraudulent Prospectus to induce them to invest $1,290,000 for the purchase and development of 454 Central Avenue and 855 Dekalb Avenue.

60.     The Prospectuses misrepresented, *inter alia,* that the purchase price of the 454 Central Avenue, including closing costs, was going to be $550,000, and the purchase price of 855 Dekalb Avenue was going to be $1,800,000.

61.     But contrary to this misrepresentation, the Individual Defendants knew that the actual price they would pay for 454 Central was only $420,000.

62.     Worse still <u>is that the Individual Defendants failed to disclose that they had</u> <u>already *purchased* 855 Dekalb over a year before they solicited the members of 855 Dekalb</u> <u>Avenue Operations LLC  for money to allegedly be used to "acquire" the property, and that the</u>

Individual Defendants <u>knew that the actual purchase price they paid was only $825,000</u>.

## 525 Willoughby Avenue

63.     Similarly, on or about October 29, 2013 the Individual Defendants transmitted to the members of Willoughby Estates Operations LLC a Fraudulent Prospectus to induce them to invest $400,000 for the purchase and development of 525 Willoughby Avenue.

64.     The Fraudulent Prospectus misrepresented, *inter alia*, that the purchase price of this property, including closing costs, was going to be $750,000.

65.     But contrary to this misrepresentation, the actual price the Individual Defendants knew they would pay for the property was only $600,000.

## 8 Maple Avenue

66.     Additionally, on or about March 2014, the Individual Defendants transmitted a Fraudulent Prospectuses for the purchase of a fully renovated and operational medical office at 8 Maple Avenue, in Bay Shore New York, in order to induce the members of 8 Maple Avenue Operations LLC to invest.

67.     The Fraudulent Prospectus for this property stated that it was a 1) fully functioning medical office, 2) had a monthly rent roll of $30,000, and 3) that the Individual Defendants had hired accountants to review the books and records provided by the sellers in order to confirm the viability of the project.

68.     However, contrary to the representations in the Fraudulent Prospectus, the Individual Defendants concealed, that (i) there were no permits in place to operate the project in accordance with the Fraudulent Prospectus; (ii) the medical business that was represented to be a tenant had already gone out of business; and (iii) the Individual Defendants had not, in fact, hired any accountants to review the books and records at all.

69.     Further still, the Individual Defendants failed to disclose that, as a result of the shortfall created by the failed medical business at 8 Maple, they were already soliciting additional investors for the project and would use the funds from these other investors to cover the shortfall and as a result, would dilute the Investors who had already invested in this project.

### 73 Empire Boulevard and 980 Atlantic Avenue

70.     Additionally, on October 15, 2013 and March 19, 2014, respectively, the Individual Defendants transmitted Fraudulent Prospectuses for the purchase of ground leases and the development of buildings located on 73 Empire Boulevard and 980 Atlantic Avenue to induce the Investors to invest in (i) 73 Empire Development Operations LLC, for 73 Empire Boulevard; and (ii) 980 Atlantic Holdings Operations LLC, for 980 Atlantic.

71.     The Fraudulent Prospectuses for these projects misrepresented, *inter alia,* that the purchase prices of these ground leases, including closing costs, were going to be $1,000,000 and $1,250,000 respectively.

72.     But contrary to these misrepresentations, and without disclosing any additional facts to the Investors, the Individual Defendants acquired these ground leases on 73 Empire Boulevard and 980 Atlantic Avenue for either no upfront fees whatsoever or nominal fees.

### 657-665 5th Avenue

73.     Next, in or about June 2013, the Individual Defendants transmitted a Fraudulent Prospectus to the members of Slope Equities Operations LLC, to induce them to invest $3,940,000, and then an additional $709,200, for a total of $4,649,200, in 657-665 5th Avenue.

74.     The Individual Defendants, through the Fraudulent Prospectus, represented, *inter alia*, that the building had: (i) 39 empty apartments; (ii) 3 occupied apartments that would be vacated shortly in order to allow renovations to proceed; (iii) the project would be renovated to

completion within 7 months; and (iv) that when completed, the project would have 42 apartments.

75.     Contrary to these representations, which the Individual Defendants knew were false when they were made, (i) the building did not have 39 empty residential apartments; (ii) the building was not even zoned for a 42 apartment building and; (iii) the Individual Defendants had spoken with an attorney who advised them that it would not be possible to evict the three tenants within the time frame they represented, if at all.  Further, given the conditions in the community, the Individual Defendants knew or should have known that they would not get approval from the necessary city and local administrative agencies that were necessary in order to make the renovations and additions that they represented were not only possible, but would be completed, within 7 months of closing.

## 720 Livonia Avenue

76.     Next, in or about October November 2014 the Individual Defendants transmitted a Fraudulent Prospectus to the Investors to induce them to invest $3,300,000 in order to purchase the Investment Property located at 720 Livonia Avenue.

77.     As in the other Fraudulent Prospectuses, this property would be owned 55% by CSRE and 45% by an LLC Plaintiff (*i.e.,* 720 Livonia Operations LLC) and in exchange for their investment, the Investors would receive an interest in the LLC Plaintiff for this property (720 Livonia Operations LLC).

78.     However, the Individual Defendants intentionally omitted from the Fraudulent Prospectus for this Investment Property that they *had already sold* to an individual named Chaim Landau the right to own a direct ownership interest in this Investment Property once the Individual Defendants purchased it.

79.     There is presently pending in the New York State Supreme Court, County of Kings, an action entitled *Chaim Landau v. Chaskiel Strulovitch et al.*, in which the Plaintiff has sued Strulovich and 720 Livonia Development LLC and placed a Notice of Pendency on this Investment Property in order to enforce his rights to own a portion of this Investment Property.

**Additional Representations That Permeated**
**All 22 Fraudulent Prospectuses for Each of the 22 Investment Properties**

80.     In addition to foregoing misrepresentations regarding, *inter alia*, the actual purchase prices for the Investment Properties, and as such, the true projected cost for these projects, the Individual Defendants further maximized the cash that they could access and divert to themselves by inflating the projected costs of construction in the Fraudulent Prospectuses in order to justify taking excessive loans and fully leveraging these Investment Properties on the day that they purchased them.

81.     Often, in fact, the Individual Defendants took out loans on the day the Investment Properties were purchased in the name of the Holding Company Defendants, which were secured by mortgages on the Investment Properties in amounts far exceeding the price paid for the Investment Properties.

**B.     The Individual Defendants Secure**
**$20,000,000 in Investments by Perpetuating the Scheme**

82.     In total, relying upon the Individual Defendants' misrepresentations in the Fraudulent Prospectuses, the 180 Investors who make up all of the members of the of the LLC Plaintiffs transferred to the Individual Defendants more than $20 million shortly after receiving the Prospectuses.

83.     Combining the $20 million received from the Investors with over $35 million in bank loans that the Individual Defendants took out in the names of the Holding Companies, and

which were secured by mortgages on the Investment Properties, each of the Holding Company Defendants should have been flush with more than sufficient cash to complete, or at least substantially complete, construction on all of these Investment Properties within the represented time frames.

84.     In order to deceive the Investors to continue investing with the Individual Defendants, the Individual Defendants employed numerous scam tactics in the style of Bernie Madoff.

85.     The first such tactic was to perform light construction to superficially renovate some of the smaller Investment Properties, refinance the original bank loans for these properties, and utilize those mortgage proceeds to refund the principal of the Investors' investment, so that the Investors would be lulled into a false sense of security and the misimpression that the Individual Defendants would return to them the principal of the larger investments the Individual Defendants were seeking or which they planned to seek.

86.     For example, albeit after what seemed at the time to be relatively minor construction delays, and for what the Investors would later discover were far lower construction costs than represented by the Individual Defendants, the Individual Defendants refinanced loans and returned some of the investment funds made on 6 of the 22 Investment Properties: 908 Bergen Street, 106 Kingston Avenue, 1213 Jefferson Avenue, 618 Lafayette Avenue, 1078 Dekalb Avenue, and 325 Franklin Avenue.

87.     Also in the style of Bernie Madoff, the Individual Defendants provided hundreds of fraudulent, inaccurate and deceptive updates purporting to: (i) communicate the progress that had allegedly been made on construction of the Investment Properties, which included photographs of individuals purportedly performing construction work; and (ii) explain away

delays in finishing renovations, construction, refinancing, returning the Investors' initial investment, and for not yet realizing any rental income.

**C.     The Individual Defendants' Looting of Plaintiffs' Money
       And the Devastating Damages Caused to Plaintiffs and the Investment Properties**

88.     Instead of using (i) the funds invested by the Investors and (ii) the mortgage proceeds derived from loans secured by the Investment Properties solely in connection with these Investment Properties, the Individual Defendants diverted the funds belonging to the Investment Properties for their own personal enrichment and engaged in other misconduct to further their scheme to defraud Plaintiffs and enrich themselves.

89.     For example, the Individual Defendants, directly, and through their wholly owned companies, CS Construction LLC, Goodliving Management LLC, and the Additional Secret LLC Defendants, used significant sums of the money invested by the Investors to (i) pay themselves cash to support their own lavish lifestyles; (ii) pay their own personal and professional debts; (iii) purchase and develop the Secret Properties for their own personal enrichment, whose value is at least in the tens, if not hundreds, of millions of dollars; and (iv) purchase, develop, or otherwise acquire interests in, other properties that were held by the Individual Defendants, or for their benefit, in the name of the Additional Secret Defendants, and thereafter sell those properties and/or their interests therein and divert the proceeds therefrom solely for their own benefit and to the exclusion of Plaintiffs.[2]

90.     In fact, Strulovich's own records demonstrate that he and Oberlander strategically solicited funds from the Plaintiffs at times when the Individual Defendants needed monies to close on the Secret Properties.

91.     Additionally, without disclosing anything to Plaintiffs, the Individual Defendants

---

[2] Discovery is expected to show that the Individual Defendants' relatives such as Moses Strulovich, and an individual named Imre Oberlander actively participated and benefitted from this fraudulent scheme.

improperly used the Investment Properties as collateral to secure loans that were given to the Secret LLC Defendants or to obtain money to purchase property on behalf of the Individual Defendants or their affiliated entities.

92.     Further, for more than half of the Investment Properties, Strulovich personally executed mortgages, bank documents, and deeds, in which he falsely swore, or otherwise represented, that he was the sole member of the LLC Defendant that purchased the Investment Properties in order to position himself to both secretly divert loan proceeds to himself and Oberlander and to repudiate the rights of the Individual Plaintiffs in the event that they were ever to discover and resist his self-dealing.

### 853 Lexington Avenue, 1078 Dekalb Avenue, and 618 Lafayette Avenue

93.     One example of this is the Individual Defendants' current attempt to sell 853 Lexington Avenue without the knowledge or consent of the Plaintiffs, discussed *infra*.

94.     Discovery will show that Strulovich presented fraudulent operating agreements to various banks in order to induce the banks into giving him sole member loans or other loans, on more advantageous terms than he otherwise would have been able to obtain, and for the purpose of deceiving the banks into believing that there were no other partners/members in the company or real estate venture, despite the contrary.

95.     In fact, many banks and lending institutions have commenced foreclosure actions against Strulovich and the Holding Company Defendants for doing just this.

### 1173 Bergen Street, 720 Livonia Avenue and 196 Albany Avenue

96.     Another egregious con-artist tactic involved one of the final projects in which the Investors invested before discovering evidence of the Individual Defendants' fraud.

97.     In August 2014, the Individual Defendants offered the Original Plaintiffs the

opportunity to invest in a project at 1173 Bergen Street.

98.     The Fraudulent Prospectus represented that the cost of acquiring the parcel of property at 1173 Bergen would be $4.7 million.

99.     The Individual Defendants proceeded to immediately collect approximately $2,500,000 in equity from the Original Plaintiffs and other Investors.

100.    In or about October 2014, the Individual Defendants misrepresented to the Original Plaintiffs and the other Investors that: (i) the opportunity to purchase 1173 Bergen Street had fallen through and (ii) instead of refunding the $2.5 million, induced the Investors who had earmarked funds for the project at 1173 Bergen Street to contribute an additional $900,000 so the Individual Defendants could purchase for the Investors a different property, a project on 720 Livonia Avenue.

101.    The Individual Defendants then further misrepresented at that time that this would be a lucrative investment as Strulovich had an agreement with New York City to execute a 15-year lease once he had closed on this property.

102.    But this was a lie, as the deal to purchase 1173 Bergen had *not* fallen through.  In fact, the Individual Defendants had actually assembled a three-building package from the same sellers to purchase the Secret Property located at 1173 Bergen Street, 196 Albany Avenue *and* the Investment Property located on 720 Livonia Avenue.

103.    Specifically, the Individual Defendants failed to disclose that since, June 25, 2014, they had been in contract to purchase two Secret Properties from the same sellers: 1173 Bergen Street, as well as another Secret Property located at 196 Albany Avenue.

104.    Then, in August 2014, the Individual Defendants contracted with the same seller to purchase 720 Livonia as part of this discounted three-building package.

105.    Further, despite the Individual Defendants misrepresentation that they had repurposed Investors' money earmarked for 1173 Bergen for the purpose of acquiring and developing 720 Livonia, the Individual Defendants instead actually used the Investors' funds, as well as the additional funds the Individual Defendants represented were necessary to purchase 720 Livonia Avenue, to cover a cash shortfall which was necessary for the Individual Defendants to close on 196 Albany Avenue on November 25, 2014.

106.    Thus, contrary to their misrepresentation, the Individual Defendants also used the Investors funds to close on 1173 Bergen Avenue on November 25, 2014 for a purchase price of $2,500,000, more than $2.2 million less than represented in the Fraudulent Prospectus transmitted to the Individual Plaintiffs.

107.    Even worse, 196 Albany Ave is now a $10,000,000 renovated building with an already existing rent roll, which the Individual Defendants kept for themselves to the exclusion of the Plaintiffs' whose money they had just used to acquire it.

108.    Similarly, 1173 Bergen Ave is a lucrative property the Individual Defendants are actively developing—to the exclusion of Plaintiffs—without delay.

109.    The Individual Defendants further misrepresented that the they had closed on 720 Livonia Avenue in January 2015, when in fact, they had not, but were forced to do so much later because they had used the funds supplied by Investors to acquire 720 Livonia Avenue for other purposes detailed above.

110.    The Individual Defendants have also received mortgage proceeds from loans securing the Investment Property at 720 Livonia Avenue in the amount of $3.4 million, which they have diverted for their exclusive personal enrichment rather than use in connection with the project at 720 Livonia.

111.     Meanwhile, this Investment Property is still languishing, unoccupied and unrenovated, and the more that it deteriorates the more expensive and unprofitable it will be to properly perform the renovations necessary for it to be fit for being occupied by tenants.

112.     This is one example of the scheme to defraud and how it was executed, but the same conduct can be found with respect to all of the other Investment Properties.   While renovations and rental proceeds on the Secret Properties, like 196 Albany Avenue, are flourishing and all of those profits and other monies have been and are being diverted for the Individual Defendants' benefit, the neglect and looting of funds from the Investment Properties and the Holding Company Defendants by the Individual Defendants have caused, and continue to cause irreparable and pecuniary harm to Plaintiffs and the Investment Properties.

113.     By way of some other examples, and without limitation:

- 14 of the 22 Investment Properties remain in various states of disrepair, depressing their value, making them structurally unsafe and driving away potential tenants (for example, the building at 73 Empire Blvd., which was represented to have been leased to Dollar Tree at a lucrative rate, was lost because Strulovich had not performed any of the necessary improvements or renovations and permitted 73 Empire Boulevard to remain in such disrepair that it has actual trees growing inside of the property that compromise the integrity of the building);

- The Investment Properties have paid and are unnecessarily accruing millions of dollars in compounding interest on loans secured by them, at interest rates of 12-13% per annum.   This is largely because the Individual Defendants looted the Companies and raided 100% of the proceeds of construction loans for their own personal enrichment to pay for their personal and business obligations immediately, upon executing loan documents, instead of waiting to withdraw those funds incrementally as the construction on the projects progressed so that the Plaintiffs would not suffer additional damages while construction was not being performed;

- As detailed below, the Investment Properties at 855 Dekalb Avenue, 657 Fifth Avenue, and 525 Willoughby Avenue are presently in foreclosure, there are presently default notices from the banks holding the mortgages on 618 Lafayette Avenue, 1078 Dekalb Avenue, and 106 Kingston Avenue, and the lawyers for the owner of the Investment Property located at 73 Empire Boulevard, in which

Plaintiffs invested money to purchase a ground lease are threatening eviction;

- Almost all of the Investment Properties are plagued with stop work orders, building code violations, and municipal fines; and

- The Individual Defendants are diverting rent from the renovated and refinanced Investment Properties and, in at least one instance, have taken out an additional $250,000 loan secured by a mortgage on 618 Lafayette Avenue without disclosing this loan to Plaintiffs, seeking their consent, or distributing 45% of the proceeds to the LLC Plaintiff with an interest in 618 Lafayette Avenue.

**D.      The Secret and Unauthorized Attempts to Sell at Least Four Investment Properties**

114.    The Investors became suspicious of wrongdoing by the Individual Defendants in the late spring of 2016 when they discovered that their larger, multi-million dollar investments in properties such as 657 Fifth Avenue, 73 Empire Boulevard, and 980 Atlantic Avenue had not progressed at all, and the Individual Defendants had reported that they took additional undisclosed mortgages on certain properties because the projects required more funding.

115.    Additionally, this was after a lucrative, long-term lease for 980 Atlantic Avenue was to be signed, at which time the Investors began to receive communications from Defendant Oberlander purporting to attempt to convey anonymous offers to purchase, at a significant profit, the interests held by the Individual Plaintiffs, along with instructions to communicate any similar kinds of offers directly through him.

116.    When approached by the Investors with questions, and when it became clear to the Individual Defendants that the Investors were investigating why their investments had stalled, the projects were allegedly penniless, and all of their accounts were in overdraft, the Individual Defendants began to take secret steps to drain the Investment Properties of more equity and to secretly sell certain Investment Properties without the knowledge or consent of Plaintiffs.

117.    Most egregiously, in or about February 2017, the Investors learned that the

Individual Defendants were in negotiations with undisclosed third parties to enter into a real estate contract to sell 853 Lexington Avenue.

118.   After the Investors confronted the Individual Defendants, the Individual Defendants misrepresented that they ceased negotiations.

119.   On April 5, 2017, Plaintiffs learned that a closing was imminently scheduled to occur, and that the Individual Defendants had misrepresented to all parties involved that they have obtained the consent of Plaintiffs for the sale.

120.   Likewise, in April 2017, Plaintiffs learned for the first time that the Individual Defendants also contracted to sell the Investment Property at 657-665 Fifth Avenue ("657 Fifth Avenue") to a developer without their knowledge or consent, and shortly thereafter learned that the Investment Properties located at 618 Lafayette Avenue and 1078 Dekalb Avenue were also in contract to be sold without the knowledge or consent of Plaintiffs solely for the purpose of diverting the proceeds of the sale for their own benefit and to the detriment of Plaintiffs.

121.   Since the commencement of this action, 43 additional Investors who are victims of the Individual Defendants' self-dealing and fraudulent scheme, have stepped forward and now join this lawsuit as Plaintiffs and assert securities violations against the Defendants.

122.   Moreover, the Investors subsequently authorized each of the LLC Plaintiffs to bring this action directly against the Defendant LLCs, thereby obviating the need for the derivative claims that were pleaded in the First Amended Complaint.

123.   In addition, prior to and since the filing of this action, the mortgages on several of the Investment Properties have fallen into default and foreclosure due to the Individual Defendants' failure to remit mortgage payments, cure violations on the Investment Properties, and pay property taxes and water bills, as well as the discovery by lenders that Strulovich

fraudulently misrepresented to them that he was the sole member of the Holding Company Defendants.

124.    Further, in menacing fashion, since the filing of the instant action, agents of the Individual Defendants have been threatening many of the Investors, stating that if they join in the lawsuit, the Individual Defendants, acting in concert, will repudiate their interest in the investment companies and refuse to return their investment or to deliver the benefits they bargained for.

**THE FIRST CAUSE OF ACTION**
**(Violations of Section 10(b)(5) the Securities Exchange Act of 1934)**
**(The Investors as Against Defendants Strulovich and Oberlander)**

125.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

126.    Based upon the allegations set forth above, membership interests in the Holding Company Defendants are "securities" within the meaning of the Securities Exchange Act of 1934, 15 U.S.C. § 78c (the "34 Act").

127.    Under Section 10 of the 34 Act, it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of mails . . . [t]o use or employ, in connection with the purchase [of any security,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations of the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest for the protection of investors." 15 U.S.C. § 78j(b).

128.    Under SEC rule 10b-5, it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of mails . . .

(a) To employ any devise, scheme, or artifice to defraud,

(b)     To make any untrue statement of material fact or to omit to state a

material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.

129.    Under SEC rule 10b-5, the "manipulative and deceptive devices" prohibited by Section 10(b) of the 34 Act and Rule 10b-5 include, *inter alia*, the purchase of a security "on the basis of material non-public information about that security or [its] issuer, in breach of a duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security or the shareholder of that issuer . . ." 17 C.F.R. § 240.10b5-1(a).

130.    Through their conduct alleged herein, the Individual Defendants have violated Section 10 of the 34 Act and Rules 10b-5 and 10b5-1.

131.    As alleged more fully above, the Individual Defendants engaged in a course of conduct that operated as a fraud or deceit upon Plaintiffs in violation of Rule 10b-5(c).

132.    The Individual Defendants engaged in the course of conduct and made the statements and omissions alleged herein with scienter.  Specifically, the Individual Defendants' intention was to induce the Investors to invest far more than was required to purchase or develop the Investment Properties so that the Individual Defendants could use the excess proceeds to purchase and/or develop entirely different properties, to the total exclusion of Plaintiffs and for his their own personal enrichment, and to leave the Investment Properties to languish and remain unprofitable.

133.    The Individual Defendants knew their statements were false when made.

134.    But for these misrepresentations, the Plaintiffs would not have purchased the

aforementioned securities.

135.    Based on the foregoing, in addition to any and all remedies Plaintiffs are entitled to under any theory of liability, including the ones pleaded in the other causes of action in this Complaint, Plaintiffs are entitled to the return of all funds invested into the Individual Defendants' fraudulent scheme, and all other damages recoverable under the 34 Act, together with interest, costs, expenses, and attorneys' fees, but in no event less than $30,000,000.

**THE SECOND CAUSE OF ACTION**
**(Cancellation of Real Estate Contracts for 853 Lexington, 657 Fifth Avenue**
**618 Lafayette Avenue, and 1078 Dekalb Avenue)**

136.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

137.    On information and belief, the Individual Defendants, purporting to act with the authority of the Holding Company Defendants 853 Lexington LLC and 657-665 5th Avenue LLC, 618 Lafayette Avenue LLC, and 1078 Dekalb Avenue LLC, have executed one or more real estate contracts for the sale and or transfer of the properties known as 853 Lexington Avenue, Brooklyn, New York ("853 Lexington"), 657 Fifth Avenue, 618 Lafayette Avenue, and 1078 Dekalb Avenue to John Does 1-10 and/or XYZ Corps. 1-10, the identity of whom and/or which cannot presently be sufficiently identified without further discovery and/or investigation.

138.    These contracts were signed by one or more of the Individual Defendants without the necessary authority or approval of Plaintiffs and were executed solely for the purpose of diverting the proceeds of the sale for the Individual Defendants' own benefit and to the detriment of Plaintiffs.

139.    These real estate contracts are thus void under, *inter alia,* New York General Obligations Law § 5-703.

140.    On information and belief, the Individual Defendants have not informed the John Does 1-10 and/or XYZ Corps. 1-10 that they did not and do not have authority to sign this real estate contract (or contracts) to sell or otherwise convey these Investment Properties.

141.    Individual Defendants have also concealed the identity of John Does 1-10 and/or XYZ Corps. 1-10, and as a result, the Plaintiffs cannot inform them that these contracts were executed without authority of Holding Company Defendants 853 Lexington LLC, 657-665 5th Avenue LLC, 1078 Dekalb LLC, and 618 Lafayette LLC.  If Plaintiffs knew the identity of John Does 1-10 and/or XYZ Corps. 1-10, Plaintiffs would rescind and cancel this contract (or contracts) and identify them by name.

142.    Those affected by this cause of action are not believed to be infants, mentally retarded, mentally ill, or alcohol or drug abusers.

143.    Any judgment granted herein will not affect any person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the aforesaid premises. In addition, every person in being who would have been entitled to such estate or interest, if such event had happened immediately before the commencement of the action, is named as a party to this action.

144.    As a result of the foregoing, the Plaintiffs are entitled to a judgment canceling and rescinding this real estate contract (or contracts).

145.    In addition, insofar as John Does 1-10 and/or XYZ Corps. 1-10 may claim to have some estate or interest in 853 Lexington, 618 Lafayette Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, Plaintiffs are entitled to a (i) judgment under Article 15 of the NY RPAPL, declaring John Does 1-10 and/or XYZ Corps. 1-10 and all persons claiming under them or under

any of them be barred from all claim to an estate or interest of 853 Lexington, 618 Lafayette

Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, (ii) finally determining that 853 Lexington

LLC, 657-665 5th Avenue LLC, 618 Lafayette LLC, and 1078 Dekalb LLC are the lawful

owners and are vested with an absolute and unencumbered title in fee to each of these respective

properties, and (iii) declaring that the sole and complete possession of the Investment Property at

(a) 853 Lexington shall be retained by 853 Lexington LLC; (b) 657 Fifth Avenue shall be

retained by 657-665 5th Avenue LLC; (c) 618 Lafayette Ave shall be retained by 618 Lafayette

LLC; and (d) 1078 Dekalb Avenue shall be retained by 1078 Dekalb LLC.

### THE THIRD CAUSE OF ACTION
**(Fraud)**
**(The Investors and the LLC Plaintiffs**
**as Against Defendants Strulovich and Oberlander)**

146.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the

above paragraphs as if fully set forth herein.

147.    Prior to the Investors' investment in the Investment Properties, the Individual

Defendants made the material misrepresentations and omissions in the Fraudulent Prospectuses.

148.    Said misrepresentations and omissions were made by the Individual Defendants to

induce the Investors to invest in the Investment Properties and the Individual Defendants'

fraudulent scheme.

149.    The Individual Defendants' representations were knowingly false when made.

150.    The Investors reasonably relied on these misrepresentations and omissions in

electing to invest with the Individual Defendants and forego other investment opportunities.

151.    But for these misrepresentations and omissions, the Investors would not have

invested any money with the Individual Defendants.

152.    As a result of these representations and omissions, the Investors have incurred

significant damages.

153.    In addition, subsequent to the Investors investing with the Individual Defendants and becoming members in the LLC Plaintiffs, the Individual Defendants made further misrepresentations to the LLC Plaintiffs and/or the Investors concerning the progress on the Investment Properties and/or the need for further investments.

154.    Said misrepresentations and omissions were made by the Individual Defendants to induce the Investors, through the LLC Plaintiffs, to further invest in the Investment Properties and the Individual Defendants' fraudulent scheme.

155.    The Individual Defendants' representations were knowingly false when made.

156.    The Investors and the LLC Plaintiffs reasonably relied on these misrepresentations and omissions in electing to invest with the Individual Defendants and forego other investment opportunities.

157.    But for these misrepresentations and omissions, the Investors and the LLC Plaintiffs would not have invested further money with the Individual Defendants.

158.    As a result of these representations and omissions, the Investors and the LLC Plaintiffs have incurred significant damages.

159.    Based on the foregoing, Plaintiffs are entitled to damages and the disgorgement of profits in an amount to be determined at trial, and the return of all funds invested into the Individual Defendants' fraudulent scheme, together with interest, costs, expenses, and attorneys' fees, but in no event less than $30 million.

## THE FOURTH CAUSE OF ACTION
### (Constructive Trust Over the Secret Properties)
### (The LLC Plaintiffs Against The Secret LLC Defendants)

160.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

161.    As set forth in detail above, the Individual Defendants engaged in a scheme to defraud the Investors, whereby Individual Defendants procured significant investments of money from Plaintiffs for the benefit of/into the Holding Company Defendants based on the misrepresentation that such investments would go exclusively toward the purchase and development of the Investment Properties.

162.    As set forth in detail above, the Investors, as members of the LLC Plaintiffs had a confidential and/or fiduciary relationship with the Individual Defendants and CSRE, their partners, in the Investment Properties.

163.    Thereafter, in reliance upon the Individual Defendants promises and assurances, the Investors, through the LLC Plaintiffs, transferred to accounts designated by their partners (the Individual Defendants and CSRE), significant sums of money.

164.    After the Individual Defendants procured these significant investments, the Individual Defendants fraudulently removed and diverted these monies and utilized same to purchase and develop the Secret Properties.

165.    Insofar as the Secret Properties were procured with the proceeds of Individual Defendants' fraudulent scheme against the Individual Plaintiffs, the Plaintiffs demand that title to the Secret Properties be conveyed to the appropriate LLC Plaintiffs, together with any profits that the Individual Defendants obtained from the Secret Properties.

166.    Because this information is solely within the control of the Individual Defendants, who, despite demands, refuse to turn over their books and records to the Plaintiffs, discovery is necessary in order to determine which LLC Plaintiff should be awarded a constructive trust entitled to each respective Secret Property.[3]

167.    Based on the foregoing, Plaintiffs are entitled to the imposition of a constructive trust over the Secret Properties and a judgment: (i) declaring that such properties be re-conveyed to Plaintiffs pursuant thereto; and (ii) compelling the Individual Defendants to do so or, in the alternative, a judgment pursuant to Fed. R. Civ. P. 70, divesting the Secret LLCs of title to the Secret Properties and vesting title to it in the LLC Plaintiffs, whose money was used to purchase and/or develop the Secret Properties.

## THE FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty as to the Developed Properties)

168.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

169.    The Investment Properties owned and operated by the following Holding Company Defendants were developed and/or renovated, or purchased as developed properties (the "Developed Properties"): (i) 106 Kingston LLC; (ii) 908 Bergen LLC; (iii) 1213 Jefferson LLC; (iv) 618 Lafayette LLC; (v) 1078 Dekalb LLC; (vi) 325 Franklin LLC; and (vii) 8 Maple Avenue.

170.    Strulovich, Oberlander, and the Construction Management Defendants, by virtue of being co-venturers, majority members, and managers of the Holding Company Defendants for each of the Developed Properties, owed fiduciary duties of loyalty and care to each the LLC

---

[3] Plaintiffs intend, and expressly reserve their right to, further amend this Complaint as discovery reveals the magnitude of Defendants' fraudulent conduct and the presently-unknown other avenues, vehicles, corporations and straw people utilized.

Plaintiffs that held the other interest in the respective Holding Company Defendants that owned these Developed Properties (*i.e.*, (i) 106 Kingston Operations LLC; (ii) 908 Bergen Operations LLC; (iii) 1213 Jefferson Operations LLC; (iv) 618 Lafayette Operations LLC; (v) 1078 Dekalb Operations LLC; (vi) 325 Franklin Operations LLC; and 8 Maple Avenue Operations LLC)).

171.    Among those duties of loyalty and care were the duties to not misappropriate or engage in self-dealing with money contributed by the Investors, to manage the Developed Properties in accordance with reasonable business judgment, not to engage is self-dealing with money generated by the Investment Property through its financing, refiancning or leasing, and to fully disclose to the Investors, all material facts.

172.    Strulovich, Oberlander, and the Construction Management Defendants breached these fiduciary duties by, as discussed above, misappropriating funds contributed by the Investors for Strulovich, Oberlander, and the Construction Management Defendants' personal enrichment in order to finance the Individual Defendants' lavish lifestyle and to purchase and develop the Secret Properties.

173.    Additionally, Strulovich, Oberlander, and the Construction Management Defendants breached their fiduciary duty by, *inter alia*:

a.   wrongfully withholding and diverting rents collected from the tenants of the Developed Properties, for their own personal enrichment instead of distributing any rent to respective LLC Plaintiffs for each of the Developed Properties in accordance with the Fraudulent Prospectuses;

b.   failing to disclose when residential apartments and/or commercial apartments have been continually and fully rented since completion of the renovations; and

c.   failing to make any efforts to rent the commercial property located in the Developed Properties;

d.   failing to make mortgage and/or loan payments on the Developed Properties thereby causing interest and penalties to accrue and for the Developed Properties to fall into foreclosure;

e.   failing to make mortgage payments and or payments on other loans taken out on the Developed Properties; and

f.   permitting DOB and ECB violations to be incurred and remain uncured in connection with the Developed Properties.

174.   As a result of the foregoing, 106 Kingston Operations LLC; (ii) 908 Bergen Operations LLC; (iii) 1213 Jefferson Operations LLC; (iv) 618 Lafayette Operations LLC; (v) 1078 Dekalb Operations LLC; (vi) 325 Franklin Operations LLC; and (vii) 8 Maple Avenue Operations LLC, have been damaged in an amount to be proven at the trial, but no less than $8.9 Million.

### THE SIXTH CAUSE OF ACTION
**(Breach of Fiduciary Duty as to the Undeveloped Properties)**

175.   Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

176.   The Investment Properties owned and operated by the following Holding Company Defendants were never developed as the Individual Defendants represented that they would be in the Fraudulent Prospectuses (the "Undeveloped Properties"): (i) 901 Bushwick LLC, (ii) 369 Gates LLC, (iii) 853 Lexington LLC; (iv) 945 Park Place LLC; (v) 74 Van Buren LLC; (vi) 760 Willoughby LLC; (vii) Slope Equities LLC; (viii) 454 Central Avenue LLC; (ix) Willoughby Estates LLC; (x) 73 Empire Development LLC; (xi) 980 Atlantic Holdings LLC; and (xii) 720 Livonia LLC.

177.   Strulovich, Oberlander, and the Construction Management Defendants, by virtue of being co-venturers, majority members, and managers of the Holding Company Defendants for each of the Undeveloped Properties, owed fiduciary duties of loyalty and care to each the LLC Plaintiffs that held the other interest in the respective Holding Company Defendants that owned

these Undeveloped Properties (*i.e.*, (i) 901 Bushwick Operations LLC, (ii) 369 Gates Operations LLC, 853 Lexington Operations LLC; (iii) 945 Park Place Operations LLC; (iv) 74 Van Buren Operations LLC; (v) 760 Willoughby Operations LLC; (vii) Slope Equities Operations LLC; (viii) 454 Central Avenue Operations LLC; (ix) Willoughby Estates Operations LLC; (x) 73 Empire Development Operations LLC; (xi) 980 Atlantic Holdings Operations LLC; (xii) 720 Livonia Operations LLC; (xiii) 348 St. Nicholas Operations LLC; and (xiv) 1301 Putnam Operations LLC)).

178.     Among those duties of loyalty and care were the duties to not misappropriate or engage in self-dealing with money contributed by the Investors, to manage the Undeveloped Properties in accordance with reasonable business judgment, not to engage is self-dealing with money garnered from the Investment Properties by virtue of leveraging them or renting them, and to fully disclose to the investors, all material facts.

179.     Strulovich, Oberlander, and the Construction Management Defendants breached these fiduciary duties by, as discussed above, by misappropriating funds contributed by the Investors for Strulovich, Oberlander, and the Construction Management Defendants' personal enrichment in order to finance the Individual Defendants lavish lifestyle and to purchase and develop the Secret Properties.

180.     Additionally, Strulovich, Oberlander, and the Construction Management Defendants breached their fiduciary duty by *inter alia*:

   a.  wrongfully withholding and diverting the money contributed by the respective Investors and/or LLC Plaintiffs, and the proceeds of the mortgages and/or loans Strulovich, Oberlander, and the Construction Management Defendants took out on the Undeveloped Properties for their own personal enrichment instead of for the development of the Undeveloped Properties in accordance with the Fraudulent Prospectuses;

   b.  failing to perform the development represented in the Fraudulent Prospectus;

    c.   failing to disclose their failure to perform the development represented in the Fraudulent Prospectus;

    d.   failing to make mortgage and/or loan payments on the Undeveloped Properties thereby causing interest and penalties to accrue and for the Undeveloped Properties to fall into foreclosure;

    e.   permitted the Undeveloped Properties to fall into disrepair and to be neglected;

    f.   permitting DOB and ECB violations to be incurred and remain uncured in connection with the Developed Properties;

181.    As a result of the foregoing, (i) 901 Bushwick Operations LLC, (ii) 369 Gates Operations LLC, 853 Lexington Operations LLC; (iii) 945 Park Place Operations LLC; (iv) 74 Van Buren Operations LLC; (v) 760 Willoughby Operations LLC; (vii) Slope Equities Operations LLC; (viii) 454 Central Avenue Operations LLC; (ix) Willoughby Estates Operations LLC; (x) 73 Empire Development Operations LLC; (xi) 980 Atlantic Holdings Operations LLC; (xii) 720 Livonia Operations LLC; (xiii) 348 St. Nicholas Operations LLC; and (xiv) 1301 Putnam Operations LLC have been damaged in an amount to be proven at the trial, but no less than $90 Million.

## THE SEVENTH CAUSE OF ACTION
### (Unjust Enrichment Against the Defendant Holding Companies, Strulovich, Oberlander, and the Construction Management Defendants)

182.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

183.    The Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants have enriched themselves at the LLC Plaintiffs' expense by, *inter alia*, siphoning money contributed by the Investors from the Defendant Holding Companies and/or the

LLC Plaintiffs (of which the Individual Defendants were managers) to pay themselves and to purchase and develop the Secret Properties.

184. Specifically, according to the Fraudulent Prospectuses upon which the Investors relied in order to purchase their ownership interest in the Investment Properties property located the LLC Plaintiffs transferred more than $20,000,000 to Strulovich and Oberlander in exchange for a 45% ownership interest in the Defendant Holding Companies.

185. In accordance with the Fraudulent Prospectuses, Defendants were obligated to develop, renovate and/or operate the Investment Properties, refinance same within a set period of time and use the portions of the refinance proceeds that remained after repayment of the original mortgage to return to the members of the LLC Plaintiffs One Hundred Percent (100%) of the funds they originally invested, and to then pay the members of the LLC Plaintiffs Forty-Five Percent (45%) of all excess proceeds of the refinance.

186. Defendants were also obligated to rent the commercial and residential units at the Investment Properties, to collect rents from the tenants occupying the Investment Properties and to immediately distribute 45% of the rental income therefrom to the respective LLC Plaintiffs.

187. Instead of adhering to the Fraudulent Prospectus the Defendants secretly diverted monies to themselves to pursue business ventures to the exclusion of the members of the LLC Plaintiffs.

188. As such, instead of using these monies for the purposes of timely completing the projects, they suffered construction delays that caused the Investment Properties to incur unnecessary costs and expenses.

189. Additionally, if and when the Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants refinanced the Investment Properties they

took for themselves all of the proceeds rather than distributing Forty-Five percent (45%) to the LLC Plaintiffs in accordance with the Fraudulent Prospectuses.

190.    Further, to the extent the Investment Properties had tenants, the Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants diverted these rental proceeds garnered to themselves and for the benefit of the Secret LLC, rather than disbursing distributing Forty-Five percent (45%) to the LLC Plaintiffs in accordance with the Fraudulent Prospectuses or utilizing the funds for the benefit of the Defendant Holding Companies.

191.    Moreover, the Individual Defendants sold the Investment Properties located at 348 St. Nicholas Avenue, 1301 Putnam Avenue, and 908 Bergen Street, and surreptitiously retained the proceeds of these sales for themselves by falsely representing that Strulovich had contributed his own capital to these Investment Properties so that he could take for himself more than 55% of the profits from the sales proceeds.

192.    As such, the Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants are wrongfully in possession of these monies and have received substantial benefits from the wrongful possession thereof.

193.    Equity and good conscience require that the Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants return the value of these monies to the LLC Plaintiffs.

194.    As a result of the foregoing, the Defendant Holding Companies, Strulovich, Oberlander, and the Strulovich Corporate Defendants have caused and continue to cause damage to the LLC Plaintiffs, in an amount to be proven at the trial, but no less than $90 million.

## THE EIGHTH CAUSE OF ACTION
### (Accounting)
### (All of the LLC Plaintiffs against all of the Defendants)

195.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

196.    The fraud and breaches of fiduciary duty set forth above have damaged the Plaintiffs.

197.    The Individual Defendants are the managers, and are in possession, of the books and records of the LLC Plaintiffs.

198.    On numerous occasions, up to and including at an in person meeting with Strulovich in February 2017, the LLC Plaintiffs made a demand for access to the Holding Company Defendants books and records so that the LLC Plaintiffs' accountants could review them, and the Individual Defendants refused to provide such access.

199.    Despite due demand, the Individual Defendants have refused to provide a just and fair accounting to Plaintiffs.

200.    Plaintiffs are therefore entitled to an accounting of all of the books, records and transactions of the LLC Plaintiffs and the Holding Company Defendants, and for the recovery of any funds that have been improperly taken therefrom.

## THE NINTH CAUSE OF ACTION
### (Constructive Trust Over Proceeds Derived From Properties Held for the Benefit of the Individual Defendants by the Additional Secret LLC Defendants)

201.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs as if fully set forth herein.

202.    The Individual Defendants engaged in a scheme to defraud the Individual Plaintiffs, whereby the Individual Defendants procured significant investments of money from

Plaintiffs into the Holding Company Defendants based on the misrepresentation that such investments would go exclusively toward the purchase and development of the Investment Properties.

203.    After the Individual Defendants procured these significant investments, the Individual Defendants fraudulently removed and diverted these moneys from the Holding Company Defendants and utilized same to purchase, develop or otherwise acquire interests in other properties that were held by the Individual Defendants, or for their benefit, in the name of the Additional Secret LLC Defendants, and thereafter the Individual Defendants sold these properties and/or their interests therein and diverted the proceeds therefrom solely for their own benefit and to the exclusion of Plaintiffs.

204.    Insofar as the proceeds derived from the properties owned by these Additional Secret LLC Defendants were procured with the proceeds of the Individual Defendants' fraudulent scheme against the Individual Plaintiffs, Plaintiffs are entitled to a constructive trust over all such proceeds.

**WHEREFORE**, Plaintiffs hereby request that the Court grant the following relief:

(i)     On the First Cause of Action, a money judgment in favor of the Individual Plaintiffs and the LLC Plaintiffs jointly and severally against the Individual Defendants in an amount no less than $30,000,000, jointly and severally together with interest, costs, expenses, and attorneys' fees;

(ii)    On the Second Cause of Action, a judgment against 853 Lexington Avenue LLC and 657-665 5th Avenue LLC and John Does 1-10 and/or XYZ Corps. 1-10: (i) canceling and rescinding any real estate contracts for the purchase of 853 Lexington, 657 Fifth Avenue, 618 Lafayette Avenue, and 1078 Dekalb Avenue (ii) judgment under Article 15 of the NY RPAPL, declaring John Does 1-10 and/or XYZ Corps. 1-10 and all persons claiming under them or under any of them be barred from all claim to an estate or interest of 853 Lexington, 618 Lafayette Avenue, 1078 Dekalb Avenue or 657 Fifth Avenue, (iii) finally determining that 853 Lexington LLC, 657-665 5th Avenue LLC, 618 Lafayette

LLC, and 1078 Dekalb LLC are the lawful owners and are vested with an absolute and unencumbered title in fee to each of these respective properties, and (iv) declaring that the sole and complete possession of the Investment Property at (a) 853 Lexington shall be retained by 853 Lexington LLC; (b) 657 Fifth Avenue shall be retained by 657-665 5th Avenue LLC; (c) 618 Lafayette Ave shall be retained by 618 Lafayette LLC; and (d) 1078 Dekalb Avenue shall be retained by 1078 Dekalb LLC;

(iii)   On the Third Cause of Action a money judgment in favor of the Investors and the LLC Plaintiffs, jointly and severally, against the Individual Defendants in an amount no less than $30,000,000, jointly and severally together with interest, costs, expenses, and attorneys' fees;

(iv)   On the Fourth Cause Action, the imposition of a constructive trust on the Secret Properties in favor of the Plaintiffs and a judgment (i) declaring that such properties be re-conveyed to Plaintiffs pursuant thereto; and (ii) compelling the Individual Defendants to do so or, in the alternative, a judgment pursuant to Fed. R. Civ. P. 70, divesting the Secret LLCs of title to the Secret Properties and vesting title to it in others;

(v)   On the Fifth Cause of Action, a money judgment in favor of the LLC Plaintiffs and against the Holding Company Defendants, Strulovich, Oberlander, and the Construction Management Defendants, in an amount to be proven at trial but no less than $8.9 Million;

(vi)   On the Sixth Cause of Action, a money judgment in favor of the LLC Plaintiffs and against the Holding Company Defendants, Strulovich, Oberlander, and the Construction Management Defendants, in an amount to be proven at trial but no less than $90 Million;

(vii)   On the Seventh Cause of Action, a money judgment in favor of the LLC Plaintiffs and against the Holding Company Defendants, Strulovich, Oberlander, and the Construction Management Defendants, in an amount to be proven at trial but no less than $90 Million;

(viii)   On the Eighth Cause of Action, a full accounting in favor of Plaintiffs and against Defendants compelling Defendants to fully disclose to Plaintiffs the Holding Company Defendants and LLC Plaintiffs' books, records and transactions of in an amount to be determined at trial;

(ix)   On the Ninth Cause of Action, the imposition of a constructive trust on all proceeds derived by Defendants in connection with the properties acquired in the name of the Additional Secret LLC Defendants;

(x)   Plaintiffs' costs and disbursements incurred in this suit, including Plaintiffs' attorneys' fees to the full extent permitted by law;

(xi)     Pre and post-judgment interest; and

(xii)    Such other and further relief as the Court may deem just and proper.

Dated: July 14, 2017
       New York, New York

                         Respectfully Submitted,

                         OVED & OVED LLP

                         By:     /s/ Edward C. Wipper
                                 Darren Oved, Esq.
                                 Edward C. Wipper, Esq.
                                 Andrew J. Urgenson, Esq.
                                 *Attorneys for Plaintiffs*
                                 401 Greenwich Street
                                 New York, New York 10013
                                 Tel: 212.226.2376

## SCHEDULE A

| Investment Property | Defendant Holding Companies | Members of Holding Company | Members of LLC Plaintiffs That Are Named as Individual Plaintiffs Herein[1] |
|---|---|---|---|
| 901 Bushwick Avenue, Brooklyn, NY 11221 | 901 Bushwick Avenue LLC | Bushwick Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg |
| 908 Bergen Street, Brooklyn, NY 11238 | 908 Bergen Street LLC | 908 Bergen Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg Nathan Gross |
| 106 Kingston Avenue, Brooklyn, NY 11213 | 106 Kingston LLC | Kingston Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg Jacob Schonberg Bertha Sara Schonberg |
| 1213 Jefferson Avenue, Brooklyn, NY11221 | 1213 Jefferson LLC | Jefferson Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg |
| 369 Gates Avenue, Brooklyn, NY 11216 | Gates Equity Holdings LLC | 369 Gates Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg Jacob Schonberg Bertha Sara Schonberg |
| 853 Lexington Avenue, Brooklyn, NY 11221 | 853 Lexington LLC | 853 Lexington Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg Jacob Schonberg Bertha Sara Schonberg David Dov Ernster |
| 945 Park Place, Brooklyn, NY 11213 | 945 Park Pl LLC | 945 Park Place Operations LLC | Binyomin Mordechai Halpern Benjamin Schonberg |

---

[1] There are over 180 investors in these entities.

# SCHEDULE A

| | | | Jacob Schonberg<br>Bertha Sara Schonberg |
|---|---|---|---|
| 1078 Dekalb Avenue, Brooklyn, NY 11221 | 1078 Dekalb LLC | 1078 Dekalb Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Michael Muller<br>Chaja Chava Zwiebel |
| 618 Lafayette Avenue, Brooklyn, NY, 11216 | 618 Lafayette LLC | 618 Lafayette Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Michael Muller<br>Chaja Chava Zwiebel |
| 74 Van Buren Street, Brooklyn, NY 11221 | 74 Van Buren LLC | 74 Van Buren Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Frieda Karmel<br>Morris Karmel<br>David Schonfeld<br>Pnina Schonfeld |
| 325 Franklin Avenue, Brooklyn, NY 11238 | 325 Franklin LLC | 325 Franklin Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Frieda Karmel<br>Morris Karmel<br>David Schonfeld<br>Pnina Schonfeld |

# SCHEDULE A

| 760-762 Willoughby Avenue, Brooklyn, NY 11206 | 762 Willoughby LLC | 760 Willoughby Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg |
|---|---|---|---|
| 657-665A 5th Avenue, Brooklyn, NY 11215 | 657-665 5th Avenue LLC | Slope Equities Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Raphael Barouch Elkaim<br>Yechiel Ben-David<br>Avraham Ben-Zimra<br>Rachel Ben-Zimra<br>Isaac Elkaim<br>Jakob Elkaim<br>Shmuel Gabai<br>Mike Genuth<br>Miriam Genuth<br>Miriam Chaya Lev (Ben-Simon)<br>Avraham Yeshayahu Lev<br>Yaakov Levin<br>Simha Maimon<br>Yosef Maimon<br>Mordechai Yaakov Meyer<br>Sara Meyer<br>Pinhas Dov Neufeld<br>Abraham Paskas<br>Itamar Shaya<br>Yossef Shtern<br>Zevulun Veichelder |
| 454 Central Avenue, Brooklyn, NY 11205 | 454 Central Avenue LLC | 454 Central Avenue Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg |

# SCHEDULE A

| | | | Bertha Sara Schonberg<br>Clara Grossman<br>Irving Grossman<br>Abraham Joshua Grossnass<br>Frieda Karmel<br>Morris Karmel<br>David Schonfeld<br>Pnina Schonfeld |
|---|---|---|---|
| 855 Dekalb Avenue, Brooklyn, NY 11211 | 855 Dekalb Avenue LLC | 855 Dekalb Avenue Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Clara Grossman<br>Irving Grossman<br>Abraham Joshua Grossnass<br>Frieda Karmel<br>Morris Karmel<br>David Schonfeld<br>Pnina Schonfeld |
| 525 Willoughby Avenue, Brooklyn, NY 11206 | Willoughby Estates LLC | Willoughby Estates Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg<br>Bertha Sara Schonberg |
| 73 Empire Boulevard, Brooklyn, NY 11225 | 73 Empire Development LLC | 73 Empire Development Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Benjamin Schonberg<br>Raphael Barouch Elkaim<br>Pinchas Groskopf<br>Michael Muller<br>David Schonfeld<br>Pnina Schonfeld |

# SCHEDULE A

|  |  |  | Itamar Shaya |
|---|---|---|---|
| 980 Atlantic Avenue, Brooklyn, NY 11238 | 980 Atlantic Holdings LLC | 980 Atlantic Holdings Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Benjamin Schonberg<br>Yaakov Ben-Shimon<br>Pinchas Groskopf<br>Nathan Gross<br>Clara Grossman<br>Irving Grossman<br>Frieda Karmel<br>Morris Karmel<br>Oved Levi<br>David Schonfeld<br>Pnina Schonfeld<br>Itamar Shaya<br>Shimon  Shenker<br>Abraham Vinberg |
| 720 Livonia Avenue, Brooklyn, NY 11210 | 720 Livonia Development LLC | 720 Livonia Operations LLC | Binyomin Mordechai Halpern<br>Jacob Schonberg<br>Bertha Sara Schonberg<br>Benjamin Schonberg<br>Mike Genuth<br>Miriam Genuth<br>Rachel Golomback<br>Nathan Gross<br>Clara Grossman<br>Irving Grossman<br>Frieda Karmel<br>Morris Karmel<br>Michael Muller |

5

# SCHEDULE A

|  |  |  | David Schonfeld<br>Pnina Schonfeld |
|---|---|---|---|
| 8 Maple Avenue,<br>Bay Shore, NY 11706 | CSY Holdings LLC | 8 Maple Avenue Operations LLC | Raphael Barouch Elkaim<br>Shimon Asulin<br>Yaakov Ben-Shimon<br>Netanel Cohen-Arazi<br>Itamar Shaya<br>Shimon  Shenker<br>Elyashiv Menahem Weil<br>Yaakov Wizman<br>Avraham Zakuta |
| 348 St. Nicholas Avenue,<br>New  York NY 10027 | 348 St. Nicholas LLC | 348 St. Nicholas Operations LLC | Binyomin Mordechai Halpern<br>Benjamin Schonberg<br>Jacob Schonberg<br>Bertha Sara Schonberg |
| 1301 Putnam Avenue,<br>Brooklyn, NY 11221 | 1301 Putnam LLC | 1301 Putnam Operations LLC | Raphael Barouch Elkaim<br>Jakob Elkaim<br>Nathan Gross |

6

# <u>SCHEDULE B</u>

(Secret Properties and Secret LLC Defendants' Membership Interests)

| <u>Secret Property</u> | <u>Secret LLC Defendant</u> |
|---|---|
| 568 Willoughby Avenue, Brooklyn, NY, | APC Holding 1 LLC |
| 53 Stanhope Street, Brooklyn, NY | 53 Stanhope LLC |
| 1125-1133 Greene Avenue, Brooklyn, NY | 1125-1133 Greene Ave LLC |
| 834 Metropolitan Avenue, Brooklyn, NY | 834 Metropolitan Avenue LLC |
| 92 South 4th Street, Brooklyn, NY | 92 South 4th Street LLC |
| 16 Howard Avenue, Brooklyn, NY | The Howard Day House LLC |
| 55 Stanhope Street, Brooklyn, NY | 55 Stanhope LLC |
| 599-601 Willoughby Avenue, Brooklyn, NY | 599-601 Willoughby LLC |
| 1217 Bedford Avenue, Brooklyn, NY | 1217 Bedford LLC |
| 1266 Pacific Street, Brooklyn, NY | 1266 Pacific LLC |
| 1173 Bergen Street, Brooklyn, NY | CSN Partners L.P. |
| 196 Albany Avenue, Brooklyn, NY | 196 Albany Holdings LP |
| 1426-1436 Fulton Street, Brooklyn, NY | Fulton Street Holdings LLC |
| 98, 100, 102, 104 Jefferson Street, Brooklyn, NY | 100 Jefferson Realty LLC |
| 167 Hart Street, Brooklyn, NY | 167 Hart LLC |
| 741 Lexington Avenue, Brooklyn, NY | 741 Lexington LLC |
| 296 Cooper Street, Brooklyn, NY | 296 Cooper LLC |
| 113 and 115-123 Clifton Place, Brooklyn, NY | Gold Cliff, LLC |
| 219 and 221 Rutledge Avenue, Brooklyn, NY | CS YH Condos LLC |