UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JACOB SCHONBERG, BINYOMIN SCHONBERG, BINYOMIN HALPERN AND     :    Case No: 17-cv-2161
RAPHAEL BAROUCH ELKAIM, INDIVIDUALLY AND DERIVATIVELY ON     :    (CBA)(RML)
BEHALF OF BUSHWICK OPERATIONS LLC, KINGSTON OPERATIONS LLC,     :
JEFFERSON OPERATIONS LLC, 369 GATES OPERATIONS LLC, 1078 DEKALB     :
OPERATIONS LLC, 618 LAFAYETTE OPERATIONS LLC, 74 VAN BUREN     :    ORAL ARGUMENT
OPERATIONS LLC, 760 WILLOUGHBY OPERATIONS LLC, 454 CENTRAL AVENUE:    REQUESTED
OPERATIONS LLC, 855 DEKALB AVENUE OPERATIONS LLC, 720 LIVONIA     :
OPERATIONS LLC, SLOPE EQUITIES OPERATIONS LLC, WILLOUGHBY ESTATES :
OPERATIONS LLC, 73 EMPIRE DEVELOPMENT OPERATIONS LLC, 980     :
ATLANTIC HOLDINGS OPERATIONS LLC, 325 FRANKLIN OPERATIONS LLC, 8     :
MAPLE AVENUE OPERATIONS LLC 853 LEXINGTON OPERATIONS LLC, 348 ST.     :
NICHOLAS OPERATIONS LLC, 1301 PUTNAM OPERATIONS LLC AND 945 ARK     :
PLACE OPERATIONS LLC,     :

             *Plaintiffs,*     :

             -against-     :

    :

YECHEZKEL STRULOVICH a/k/a CHASKIEL STRULOVITCH, YECHIEL     :
OBERLANDER a/k/a MICI OBERLANDER a/k/a MIHAY OBERLANDER, CSRE LLC,     :
CS CONSTRUCTION GROUP LLC, GOOD LIVING MANAGEMENT LLC, 908     :
BERGEN STREET LLC, 901 BUSHWICK AVENUE LLC, 106 KINGSTON LLC, 1213     :
JEFFERSON LLC, GATES EQUITY HOLDINGS LLC, 1078 DEKALB LLC, 618     :
LAFAYETTE LLC, 74 VAN BUREN LLC, 762 WILLOUGHBY LLC, 454 CENTRAL     :
AVENUE LLC, 855 DEKALB AVENUE LLC, 720 LIVONIA DEVELOPMENT LLC,     :
853 LEXINGTON LLC, 657-665 5th AVENUE LLC, WILLOUGHBY ESTATES LLC, 73 :
EMPIRE DEVELOPMENT LLC, 980 ATLANTIC HOLDINGS LLC, 325 FRANKLIN     :
LLC, 945 PARK PL LLC, 1301 PUTNAM LLC, 348 ST. NICHOLAS LLC, APC     :
HOLDING 1 LLC, CSY HOLDINGS LLC, FIRST AVENUE REALTY HOLDINGS L.P., :
53 STANHOPE LLC, 1125-1133 GREENE AVE LLC, 834 METROPOLITAN AVENUE     :
LLC, 92 SOUTH 4TH STREET, LLC, THE HOWARD DAY HOUSE LLC, 55 STANHOPE:
LLC, 599- 601 WILLOUGHBY LLC, 1217 BEDFORD LLC, 1266 PACIFIC LLC, CSN     :
PARTNERS L.P., 196 ALBANY HOLDINGS L.P, FULTON STREET HOLDNGS LLC,     :
100 JEFFERSON REALTY LLC, 167 HART LLC, 741 LEXINGTON LLC, 296 COOPER     :
LLC, 400 SOUTH 2ND STREET HOLDINGS L P., 41-49 SPENCER LLC, CS YH     :
CONDOS LLC, GOLD CLIFF LLC, MYRTLINO HOLDINGS, LLC, WILLTROUT     :
REALTY LLC, SLOPE OFFICES LLC, STAGG STUDIOS LLC, AND JOHN DOES 1-10 :
AND XYZ CORPS. 1-10 SUCH INDIVIDUALS OR ENTITIES BEING UNKNOWN     :
ENTITIES PRESENTLY IN CONTRACT TO ACQUIRE THE PARCELS OF REAL     :
PROPERTY LOCATED AT 618 LAFAYETTE AVENUE, 1018 DEKALB AVENUE, 853 :
LEXINGTON AVENUE AND 657-665A FIFTH AVENUE,     :

    :

             *Defendants.*     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE NOTICES OF PENDENCY AND TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

I.       PRELIMINARY STATEMENT ..................................................................... 2

II.      THE ALLEGATIONS OF THE AMENDED COMPLAINT ........................... 4

         A.    Background of the Parties ................................................................... 4

         B.    Defendant Oberlander Syndicates Investors In Israel
               For Investments In The Schedule A Properties ................................. 5

         C.    The LLC Plaintiffs Enter Into Agreements With
               The Holding Company Defendants ..................................................... 6

         D.    The Holding Company Defendants Allegedly Misuse Investments ... 10

         E.    The Plaintiffs Commence This Action And File Notices Of Pendency .......... 11

III.     ARGUMENT ............................................................................................ 12

         A.    This Court Does Not Have Subject Matter Jurisdiction
               Because Arbitration Provisions Govern This Dispute ........................ 12

         B.    All Derivative Claims Must Be Dismissed ......................................... 15

               1.    The Amended Complaint Is Not Verified And Therefore
                     All Derivative Claims Must Be Dismissed ............................... 15

               2.    Plaintiffs Improperly Conflate Derivative And Direct Claims .......... 16

               3.    The Individual Plaintiffs Are Impermissibly Conflicted From
                     Representing The Interests Of The LLC Plaintiffs ................... 17

         C.    Even If This Derivative Action Is Proper, Which It Is Not,
               All Claims Must Be Dismissed .......................................................... 18

               1.    Legal Standard ....................................................................... 18

               2.    The First Cause Of Action for a violation of § 10(b)(5)
                     of the Securities Exchange Act must be dismissed ................. 18

                     a) Plaintiffs' group pleading is improper under
                        the heightened pleading standards ................................... 19

b) Plaintiffs plead that certain misrepresentations are actually true, therefore rendering such representations non-actionable .......... 19

c) Plaintiffs disclaimed reliance on any representations made prior to investing in the Holding Company Defendants .......... 20

d) Because the § 10(b)(5) claims must be dismissed, this court should transfer the remaining causes of action to the Supreme Court of the State of New York, Kings County ................................. 22

3.    To the extent the Court opts to retain jurisdiction over the pendent state law claims, those claims must also be dismissed ............. 22

a) The cancellation of contracts claim must be dismissed (Count 2) ..... 23

b) The direct breach of fiduciary duty claim must be dismissed (Count 6) ........................................................................................ 24

c) The accounting claim must be dismissed (Count 8) ........................... 25

d) The remaining equitable claims must be dismissed: Constructive Trust (Counts 4 and 9) and Unjust Enrichment (Count 7) .......................................................................... 26

D.    The Notices of Pendency Must Be Vacated ....................................... 27

1.    Notices of pendency are an extraordinary remedy and the statute is strictly applied ................................................................. 28

2.    *Lis Pendens* does not apply to Actions like this one where Plaintiffs are claiming an interest in an LLC ............................. 29

3.    The Constructive Trust claim is not a basis for attaching NOPs to the Schedule B Properties ....................................... 31

4.    The Court Should Award Defendants Their Costs And Expenses Incurred As A Result Of The Filing Of The NOPS ............... 33

5.    If The Court Does Not Vacate The NOPs, The Court Should Order Plaintiffs To Provide An Undertaking ................................... 33

IV.    CONCLUSION ............................................................................ 34

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Abraham v. Am. Home Mortg. Serv., Inc.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ............................................................26

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999).............................................................................14

*Amalgamated Consultants Ltd. v. De Savary*,
   No. 85 CIV. 2759 (JFK), 1985 WL 3044 (S.D.N.Y. Oct 22, 1985)................32

*Ambris v. Bank of N.Y.*,
   No. 96 CIV. 0061 LAP, 1997 WL 107632 (S.D.N.Y. Mar. 10, 1997)...................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................18

*Berk v. Tradewell, Inc.*,
   No. 01 Civ 9035, 2003 WL 21664679 (S.D.N.Y. July 16, 2003) ...........................25

*C.R.A. Realty Corp. v. Scor U.S. Corp.*,
   No. 92 CIV. 2093 (LMM), 1992 WL 309610 (S.D.N.Y. Oct. 9, 1992) ......................16

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).............................................................................6

*Cicchetti v. Davis Selected Advisors*,
   No. 02 Civ. 10150 (RMB), 2003 WL 22723015 (S.D.N.Y. Nov. 17, 2003)...........................15

*Color-Web, Inc. v. Mitsubishi Heavy Indus. Printing & Packaging Mach., Ltd.*,
   No. 16CV1435(DLC), 2016 WL 6837156 (S.D.N.Y. Nov. 21, 2016)....................14

*Ctr. v. Hampton Affiliates, Inc.*,
   No. 77 CIV. 581, 1978 WL 1097 (S.D.N.Y. June 28, 1978)...................................16

*Dallas Aero., Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003).............................................................................20

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).........................................................................................13

*DeBono v. Wash. Mut. Bank*,
   No. 05 Civ. 10333(DC), 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) ...................15

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
  9 F.3d 1060 (2d Cir. 1993)................................................................................14

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  No. 08 CV 4607 (ENV) (E.D.N.Y. June 4, 2009) ....................................26, 27, 32

*Done v. HSBC Bank USA*,
  No. 09-CV-4878(JFB)(ARL), 2010 WL 3824142(JFB)(ARL)
  (E.D.N.Y. Sept. 23, 2010)..............................................................................22

*Dresner v. Utility.com, Inc.*,
  371 F. Supp. 2d 476 (S.D.N.Y. 2005)..............................................................20

*Esposito v. FDIC*,
  644 F. Supp. 276 (E.D.N.Y. 1986) ...................................................................33

*First Eagle Sogen Funds, Inc. v. Bank for Int'l Settlements*,
  No. 01 Civ. 0087(RO), 2001 WL 1150323 (S.D.N.Y. Sept. 28, 2001)................15

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)........................................................................................12

*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*,
  569 F. App'x 43 (2d Cir. 2014) .......................................................................18

*Hansen v. Wwebnet, Inc.*,
  No. 1:14-CV-2263(ALC), 2015 WL 4605670 (S.D.N.Y. July 31, 2015) ............24

*Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*,
  197 F. Supp. 2d 1 (S.D.N.Y. 2002) .................................................................13

*In re ITT Educ. Servs., Sec. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)................................................................18

*JLM Indus. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)...........................................................................12

*Katz v. Image Innovations Holdings, Inc.*,
  No. 06 CIV.3707(JGK), 2008 WL 4840880 (S.D.N.Y. Nov. 4, 2008) ...............20

*Kelter v. Apex Equity Options Fund, LP*,
  No. 08 CIV. 2911(NRB), 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009) ............20

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
  86 F. Supp. 3d 277 (S.D.N.Y. 2015)................................................................15

*Marcus v. Textile Banking Co.*,
  38 F.R.D. 185 (S.D.N.Y. 1965) ......................................................................16

*McAllister v. Conn. Renaissance Inc.*,
    496 F. App'x 104 (2d Cir. 2012) ......................................................13

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    851 F. Supp. 2d 512 (S.D.N.Y. 2012), *aff'd*, 571 F. App'x 8 (2d Cir. 2014)........................19

*NEM Re Receivables, LLC v. Fortress Re, Inc.*,
    173 F. Supp. 3d 1 (S.D.N.Y. 2016) ..................................................25

*One Commc'ns Corp. v. JP Morgan SBIC LLC*,
    381 F. App'x 75 (2d Cir. 2010)........................................................22

*Poole v. N.Y.*,
    No. 11-CV-921(JFB)(AKT), 2012 WL 727206 (E.D.N.Y. Mar. 6, 2012)............................22

*Priestley v. Comrie*,
    No. 07 CV 1361(HB), 2007 WL 4208592 (S.D.N.Y. Nov. 27, 2007) ......................17

*Richard J. Zitz, Inc. v. Pereira*,
    965 F. Supp. 350 (E.D.N.Y. 1997) ..................................................28

*Robinson Brog Leinwand Greene Genovese & Gluck P.C. v.*
    *John M. O'Quinn & Assocs., L.L.P.*,
    523 F. App'x 761 (2d Cir. 2013) ....................................................14

*Rodriguez v. Four Seasons Hotels, Ltd.*,
    No. 09 Civ. 2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) ....................12

*Ross v. Am. Exp. Co.*,
    547 F.3d 137 (2d Cir. 2008)............................................................13

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................19

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
    No. 06CIV688(SWK), 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006)........................17

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)............................................................26

*Telesco v. Neuman*,
    No. 14 CV 3480 VB, 2015 WL 2330166 (S.D.N.Y. Mar. 11, 2015) ....................26

*Thomas v. Pub. Storage, Inc.*,
    957 F. Supp. 2d 496 (S.D.N.Y. 2013)................................................13

*Tuscano v. Tuscano*,
    403 F. Supp. 2d 214 (E.D.N.Y. 2005) ..............................................17

*United States v. Kramer,*
　　No. 1:06-cr-200-ENV-CLP, 2006 WL 3545026 (E.D.N.Y. Dec. 8, 2006) .............................28

*Wall St. Sys., Inc. v. Lemence,*
　　No. 04 CIV. 5299 (JSR), 2005 WL 292744 (S.D.N.Y. Feb. 8, 2005) ....................................17

*Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.,*
　　247 F. Supp. 2d 352 (S.D.N.Y. 2002) ..................................................................................20, 22

## State Cases

*5303 Realty Corp. v. O&Y Equity Corp.,*
　　64 N.Y.2d 313, 486 N.Y.S.2d 877 (1984) .................................................................................28

*Abrams v. Donati,*
　　66 N.Y.2d 951, 498 N.Y.S.2d 782 (1985) .................................................................................16

*Arrow Commc'n Labs., Inc. v. Pico Prods., Inc.,*
　　219 A.D.2d 859, 632 N.Y.S.2d 903 (4th Dep't 1995) ..............................................................25

*Barbour v. Knecht,*
　　296 A.D.2d 218, 743 N.Y.S.2d 483 (1st Dep't 2002) ..............................................................16

*Chambi v. Navarro, Vives & Cia, Ltd.,*
　　95 A.D.2d 667, 463 N.Y.S.2d 218 (1st Dep't 1983) ................................................................28

*Felske v. Bernstein,*
　　173 A.D.2d 677, 570 N.Y.S.2d 331 (2d Dep't 1991) ...............................................................30

*General Prop. Corp. v. Diamond,*
　　29 A.D.2d 173, 286 N.Y.S.2d 553 (1st Dep't 1968) ................................................................30

*Holzer v. Mondadori,*
　　40 Misc. 3d 1233(A), 2013 WL 4523615 (Sup. Ct. N.Y. Cnty. 2013)....................................26

*Liffiton v. DiBlasi,*
　　170 A.D.2d 994, 566 N.Y.S.2d 148 (1st Dep't 1991) ..............................................................31

*McKernan v. Doniger,*
　　161 A.D.2d 1159, 555 N.Y.S.2d 517 (4th Dep't 1990) ............................................................30

*No. 1 Funding Ctr., Inc. v. H & G Operating Corp.,*
　　48 A.D.3d 908, 853 N.Y.S.2d 178 (3d Dep't 2008) .................................................................33

*Olstad v. Nehmadi,*
　　31 Misc. 3d 1211(A), 2011 WL 1420879 (Sup. Ct. N.Y. Cnty. Apr. 8, 2011) ...........29, 30, 32

*RB Hempstead, LLC v. Inc. Vill. of Hempstead,*
　　34 A.D.3d 552, 824 N.Y.S.2d 407 (2d Dep't 2006).................................................................27

*In re Sakow,*
    97 N.Y.2d 436, 741 N.Y.S.2d 175 (2002) ................................................................28

*Sherpaco, LLC v. Kossi,*
    No. 103875/2007, 2010 WL 231618 (Sup. Ct. N.Y. Cnty. Jan. 5, 2010) ................31

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ....................................................................................24

*W25 Holdings, LLC v. Schreiber,*
    No. 155921/2014, 2014 WL 6471481 (N.Y. Sup. Nov. 19, 2014) ..........................31

*Yonaty v. Glauber,*
    40 A.D.3d 1193, 834 N.Y.S.2d 744 (3d Dep't 2007) .............................................31

*Yudell v. Gilbert,*
    99 A.D.3d 108, 949 N.Y.S.2d 380 (1st Dep't 2012) ..............................................24

## Statutes & Rules

9 U.S.C. §§ 1-16 ..................................................................................................................1

9 U.S.C. § 2 ......................................................................................................................12

15 U.S.C. § 78u–4(b)(*l*)(B) ...............................................................................................18

17 C.F.R. 240.10b–5 .........................................................................................................18

Fed. R. Civ. P. 9(b) ...................................................................................................1, 18

Fed. R. Civ. P. 12(b) ...........................................................................................................6

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1

Fed. R. Civ. P. 23.1 ..........................................................................................................16

Fed. R. Civ. P. 23.1(a) ......................................................................................................17

Fed. R. Civ. P. 23.1(b) ......................................................................................................15

Fed. R. Civ. P. 41(b) ..............................................................................................1, 15, 16

Federal Arbitration Act, § 10(b)(5) of the Securities Exchange Act of 1934 ....................... passim

N.Y. C.P.L.R. § 6501 ..............................................................................................28, 30, 32

N.Y. C.P.L.R. § 6514(c) ....................................................................................................33

N.Y. C.P.L.R. § 6515(2) ................................................................................................33

N.Y. General Obligations Law § 5-703 ......................................................................23

### **Miscellaneous**

Lis Pendens, 11A Fed. Prac. & Proc. Civ. § 2935 (3d ed.)......................................27

David D. Siegel, New York Practice § 334 (5th ed. 2016)......................................1, 28

Defendants Yechezkel Strulovich, CSRE LLC, CS Construction Group LLC, Good Living Management LLC, 908 Bergen Street LLC, 901 Bushwick Avenue LLC, 106 Kingston LLC, 1213 Jefferson LLC, Gates Equity Holdings LLC, 1078 Dekalb LLC, 618 Lafayette LLC, 74 Van Buren LLC, 762 Willoughby LLC, 454 Central Avenue LLC, 855 Dekalb Avenue LLC, 720 Livonia Development LLC, 853 Lexington LLC, 657-665 5th Avenue LLC, Willoughby Estates LLC, 73 Empire Development LLC, 980 Atlantic Holdings LLC, 325 Franklin LLC, 945 Park Pl LLC, 1301 Putnam LLC, 348 St. Nicholas LLC, CSY Holdings LLC, APC Holding 1 LLC, 53 Stanhope LLC, The Howard Day House LLC, 55 Stanhope LLC, 599-601 Willoughby LLC, 1217 Bedford LLC, 1266 Pacific LLC, Fulton Street Holdings LLC, 167 Hart LLC, 741 Lexington LLC, 296 Cooper LLC, and CS YH Condos LLC respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 9(b), 41(b), and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), to: (i) dismiss the Amended Complaint in the above-captioned action; (ii) compel Arbitration, if the Court deems it necessary; (iii) transfer this action to Kings County Supreme Court, if the Court deems it necessary; (iv) cancel the notices of pendency attached to certain parcels of real property owned by certain of the Defendants; and (v) for such other and further relief as this Court deems appropriate.[1]

---

[1] To the extent not defined, all capitalized terms herein incorporate the definitions ascribed to them in the Amended Complaint. 908 Bergen Street LLC, 901 Bushwick Avenue LLC, 106 Kingston LLC, 1213 Jefferson LLC, Gates Equity Holdings LLC, 1078 Dekalb LLC, 618 Lafayette LLC, 74 Van Buren LLC, 762 Willoughby LLC, 454 Central Avenue LLC, 855 Dekalb Avenue LLC, 720 Livonia Development LLC, 853 Lexington LLC, 657-665 5th Avenue LLC, Willoughby Estates LLC, 73 Empire Development LLC, 980 Atlantic Holdings LLC, 325 Franklin LLC, 945 Park Pl LLC, 1301 Putnam LLC, 348 St. Nicholas LLC, CSY Holdings LLC are collectively referred to as the "Holding Company Defendants." APC Holding 1 LLC, 53 Stanhope LLC, The Howard Day House LLC, 55 Stanhope LLC, 599-601 Willoughby LLC, 1217 Bedford LLC, 1266 Pacific LLC, Fulton Street Holdings LLC, 167 Hart LLC, 741 Lexington LLC, 296 Cooper LLC, and CS YH Condos LLC are collectively referred to as the "Schedule B Defendants."

## I.    PRELIMINARY STATEMENT

The Amended Complaint, alleging a "Bernie Madoff" type scheme where money was actually returned to the investors, is dead on arrival.   Clear and unmistakable arbitration provisions mandate that this dispute be heard by an arbitrator.   Indeed, the very agreements by which the LLC Plaintiffs, of which the Individual Plaintiffs are super-minority members, acquired interests in the Holding Company Defendants (the "Holding Company Agreements"), which own the Schedule A Properties, explicitly provide that: "In case of any doubt, question or disagreements about anything pertaining to this Agreement, the parties will choose a third party that is acceptable to all the parties and ask for his opinion, and his ruling shall be accepted. **The parties agree to not bring any matter relating to this Agreement to a secular court**." (emphasis added).   The persons that the Plaintiffs assert are the managing members of the LLC Plaintiffs signed these agreements with the Holding Company Defendants on behalf of the LLC Plaintiffs.   Some of the Individual Plaintiffs even signed schedules appended to these agreements, simply acknowledging their super-minority interests in the Holding Company Defendants.  In other words, this dispute must be dismissed, and arbitration must be compelled.

Even if arbitration is not compelled by the Court, the Amended Complaint must be dismissed for a multitude of procedural and substantive reasons.   By way of the improperly **unverified** Amended Complaint, Plaintiffs assert intermingled, commingled, and confusing direct and derivative claims, simultaneously attempting to obtain damages for the benefit of the individual plaintiffs Jacob Schonberg, Binyomin Schonberg, Binyomin Halpern and Raphael Barouch Eklaim (the "Individual Plaintiffs") and the twenty-one LLC Plaintiffs that allegedly have an interest in certain of the Holding Company Defendants for identical claims.   Such pleading is wholly improper as the Individual Plaintiffs certainly do not have the right to directly receive the benefits of tortious conduct allegedly committed against the LLC Plaintiffs.   Even if

they did have the right to bring these intermingled claims, by reason of the fact that the Individual Plaintiffs seek personal damages for identical misconduct that was allegedly inflicted on the LLC Plaintiffs, the Individual Plaintiffs are conflicted from serving as representatives of the LLC Plaintiffs in a derivative action.

Even if the Court opts to not dismiss the entirety of this lawsuit on subject matter jurisdiction grounds and/or failure to properly plead derivative claims, this Court must dismiss the cause of action for a violation of § 10(b)(5) of the Securities Exchange Act of 1934, and, as a result, transfer this dispute to Kings County Supreme Court for resolution of the pendent state law claims.  The § 10(b)(5) claims fail due to impermissible group pleading for things the "Individual Defendants" said or did.  That lack of specificity in the pleading is basis alone to dismiss the § 10(b)(5) claims, which are subject to heightened pleading standards.  Not only that, Plaintiffs speak out of both sides of their mouths when they allege a scheme in the "style of Bernie Madoff" but separately allege that the "Defendants … returned the vast majority of the investment funds" with respect to at least six of the Holding Company Defendants. (¶ 66).  This is exactly what the prospectuses upon which the Plaintiffs base their § 10(b)(5) claims promise: "investors would receive the return of their original investment…" (¶ 36).  And, even if there were misrepresentations made with respect to any of the investments in the Schedule A Properties, the LLC Plaintiffs disclaimed reliance on such misrepresentations via the Holding Company Agreements, rendering the § 10(b)(5) claims unsustainable.

Even if the Court does not compel arbitration, does not dismiss the entirety of the lawsuit for failure to properly plead derivative claims, and retains pendent jurisdiction of this action, despite dismissing the § 10(b)(5) claims, the state claims fail for a variety of procedural and substantive reasons, as stated herein.

3

Not only did the Plaintiffs file a frivolous, **<u>unverified</u>** complaint, they also absurdly attached notices of pendency to several Schedule A Properties and all of the Schedule B Properties, despite the fact that none of the Plaintiffs have a direct interest in those properties. Courts in New York have routinely found that interests in joint ventures or limited liability companies that themselves have interests in real property, is not a sufficient basis for attaching a notice of pendency to real property when a dispute over interests in the entity, not the real property, arises.

Accordingly, the notices of pendency attached to certain of the Schedule A Properties and all of the Schedule B Properties must be vacated and the Amended Complaint as a whole must be dismissed.

## II.   THE ALLEGATIONS OF THE AMENDED COMPLAINT

Since, on a motion to dismiss, the Court must accept the Plaintiffs' allegations of fact as true, the following statement of facts is abbreviated and drawn from the Amended Complaint and the Court is respectfully referred to the Amended Complaint for the full set of facts alleged therein.

### A.   Background of the Parties

The Individual Plaintiffs are Israeli nationals allegedly with interests in the LLC Plaintiffs. (¶¶ 14, 17).  The Amended Complaint fails to plead the amount of interest each Individual Plaintiff owns in each LLC Plaintiff, but it is a super-minority interest. The LLC Plaintiffs allegedly hold partial equity interests in the Holding Company Defendants, which represent twenty-one of the incorporated defendants. (¶ 16).   The Individual Defendants (Yechezkel Strulovitch and Yechiel Oberlander) are managing members of the LLC Plaintiffs. (¶¶ 23, 133, 140).

The Holding Company Defendants hold title to certain parcels of real property, mostly in Brooklyn, which are identified on Schedule A of the Amended Complaint. (¶¶ 19-20). The Plaintiffs also name the so-called Secret LLC Defendants, many of which are identified in this brief as the Schedule B Defendants, which represent an additional 20 defendants, which hold title to the Properties set forth on Schedule B of the Amended Complaint. (¶¶ 25, 27). Not a single Plaintiff holds an interest in any of the Schedule B Properties (¶ 25).

The Plaintiffs group Defendants Oberlander and Strulovitch into the same bucket as the "Individual Defendants" but they are separate individuals, represented by different counsel, and with entirely different roles in this dispute.

### B. Defendant Oberlander Syndicates Investors In Israel For Investments In The Schedule A Properties

In early 2012, Oberlander began to syndicate investors for investments into real estate projects in Brooklyn. (¶ 30). Oberlander represented that his "business associate and real estate developer, Strulovitch" would acquire and develop the properties. (¶ 31). Oberlander specifically approached the Individual Plaintiffs as investors because they were allegedly influential in orthodox communities and he knew they were amateurs when it came to New York real estate. (¶¶ 32-33). In total, the Individual Plaintiffs and other individuals invested more than $20 million into the LLC Plaintiffs, which moneys would then be used to acquire interests in the Holding Company Defendants. (¶¶ 18, 62).

The Plaintiffs assert that between February 2012 and September 2014, the "Individual Defendants" transmitted "prospectuses" to the Individual Plaintiffs to invest in the Schedule A Properties. (¶ 34) (the "Prospectuses"). The Prospectuses allegedly represented the purchase price of the Schedule A Property, the loan to finance the acquisition, when the Individual Plaintiffs would receive a return of their investment, and that they would also receive 45% of the

profits. (¶¶ 35-36).   The Prospectuses also allegedly represent that the "Individual Plaintiffs' investment would depend solely on the efforts of the Individual Defendants, stating that the Individual Defendants would 'attend to, manage, and worry for the project in its formation, continuation, rental, and sale all attention necessary for the success of the business." (¶ 38).

The Prospectuses allegedly misrepresented the purchase price of the Schedule A Properties, and that the actual price paid was less than the amount represented in the Prospectuses. (¶¶ 38-59).   The Individual Defendants also allegedly inflated projected construction costs in the Prospectuses in order to justify taking out loans and fully leverage the Schedule A Properties. (¶¶ 60-61).

### C. The LLC Plaintiffs Enter Into Agreements With The Holding Company Defendants

The LLC Plaintiffs interest in the Holding Company Defendants (who own the Schedule A Properties) was memorialized by the Holding Company Agreements. (¶ 18).[2]

- Strulovitch Decl., Ex. 1 (908 Bergen Street LLC).  This LLC Agreement is effective "as of April 4, 2012."  The Prospectus with respect to 908 Bergen Street was allegedly transmitted on or about February 6, 2012. (¶ 38).

- Strulovitch Decl., Ex. 2 (853 Lexington LLC).  This LLC Agreement is effective "as of June 3rd 2013."  The Prospectus with respect to 853 Lexington was allegedly transmitted on or about July 16, 2012.  (¶ 41).

- Strulovitch Decl., Ex. 3 (74 Van Buren LLC).  This LLC Agreement is effective "as of June 3rd 2013."  The Prospectus with respect to 74 Van Burden was allegedly transmitted on or about November 4, 2012.  (¶ 44).

- Strulovitch Decl., Ex. 4 (762 Willoughby LLC).  This LLC Agreement is effective "as of August 14, 2013."  The Prospectus with respect to 762 Willoughby was allegedly transmitted on December 19, 2012. (¶ 47).

---

[2] On a 12(b) motion to dismiss, "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'" which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Ambris v. Bank of N.Y.*, No. 96 CIV. 0061 LAP, 1997 WL 107632, at *2 (S.D.N.Y. Mar. 10, 1997).

- Strulovitch Decl., Ex. 5 (454 Central Avenue LLC).  This LLC Agreement is effective "as of May 7, 2014."  The Prospectus with respect to 454 Central Avenue was allegedly transmitted on May 16, 2013. (¶ 50).

- Strulovitch Decl., Ex. 6 (855 DeKalb Avenue LLC).  This LLC Agreement is effective "as of May 7, 2014."  The Prospectus with respect to 855 DeKalb Avenue was allegedly transmitted on May 16, 2013. (¶ 50).

- Strulovitch Decl., Ex. 7 (525 Willoughby Estates LLC).  This LLC Agreement is effective "as of June 2, 2015."  The Prospectus with respect to 525 Willoughby was allegedly transmitted on October 29, 2013. (¶ 54).

- Strulovitch Decl., Ex. 8 (73 Empire Development LLC).  This LLC Agreement is effective "as of August 14, 2013."  The Prospectus with respect to 73 Empire was allegedly transmitted on October 15, 2013. (¶ 57).

- Strulovitch Decl., Ex. 9 (980 Atlantic Holdings LLC). This LLC Agreement is effective "as of Juny 9 [sic] 9, 2014)." The Prospectus with respect to 980 Atlantic was allegedly transmitted on March 19, 2014. (¶ 57).

- Strulovitch Decl. Ex. 10 (106 Kingston Avenue LLC).  This LLC Agreement is "effective as of January 7th 2013."  Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property.  Their only reference to it is that the Defendants "returned the vast majority of the investment funds." (¶ 66).

- Strulovitch Decl. Ex. 11 (1213 Jefferson LLC). This LLC Agreement is "effective as of January 7th 2013."  Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property.  Their only reference to it is that the Defendants "returned the vast majority of the investment funds." (¶ 66).

- Strulovitch Decl. Ex. 12 (618 LaFayette LLC). This LLC Agreement is "effective as of June 3rd 2013."  Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property.  Their only reference to it is that the Defendants sold it without their knowledge and consent and "returned the vast majority of the investment funds." (¶¶ 66, 94).

- Strulovitch Decl. Ex. 13 (1078 DeKalb LLC). This LLC Agreement is "effective as of Juny [sic] 7th 2013."  Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property.  Their only reference to it is that the Defendants sold it without their knowledge and consent and "returned the vast majority of the investment funds." (¶¶ 66, 94).

- Strulovitch Decl. Ex. 14 (325 Franklin LLC). This LLC Agreement is "effective as of June 10th 2013."  Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property.  Their only reference to it is that the Defendants "returned the vast majority of the investment funds." (¶ 66).

- Strulovitch Decl. Ex. 15 (657-665 5th Avenue LLC). This LLC Agreement is "effective as of September 09, 2013." Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property. Their only reference to this Property is that Plaintiffs contracted to sell it without their knowledge and consent. (¶ 94).

- Strulovitch Decl. Ex. 16 (901 Bushwick Avenue LLC). This LLC Agreement is "effective as of January 7th, 2013." Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property. There are no allegations of wrongdoing with respect to this Property.

- Strulovitch Decl. Ex. 17 (720 Livonia Development LLC). This LLC Agreement is "effective as of February 10th, 2015." Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property. Rather, they allege that the moneys invested to purchase 1173 Bergen Street were being used to acquire 720 Livonia. (¶¶ 76-80).

- Strulovitch Decl., Ex. 18 (Gates Equity Holdings LLC). This LLC Agreement is "effective as of June 3rd, 2013." Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property. There are no allegations of wrongdoing with respect to this Property.

- Strulovitch Decl., Ex. 19 (945 Park PL LLC). This LLC Agreement is "effective as of June 3rd, 2013." Plaintiffs do not identify a Prospectus (or misrepresentation) with respect to this Property. There are no allegations of wrongdoing with respect to this Property.

Each Holding Company Agreement provides a provision as follows (or in relatively similar fashion): "[t]he parties have seen and understood everything that is specified in this current Agreement, and have fully agreed to everything, and the terms and conditions of this agreement supersede any prior terms of agreement between the parties as to the subject matter of this agreement." (Ex. 1 § 14(b); Ex. 2, § 13(b); Ex. 3, § 13(b); Ex. 4, § 13(b); Ex. 5, § 13(b); Ex. 6, § 13(b); Ex. 7, § 13(b); Ex. 8, § 13(b); Ex. 9, § 13(b); Ex. 10, § 13(b); Ex. 11, § 13(b); Ex. 12, § 13(b); Ex. 13, § 13(b); Ex. 14, § 13(b); Ex. 15, § 13(b); Ex. 16, § 13(b); Ex. 17, § 13(b); Ex. 18, § 13(b); Ex. 19, § 13(b).

The Holding Company Agreements further provide (or in relatively similar fashion) that: The LLC Plaintiffs further agreed that they "had the opportunity to examine the Premises, is familiar with the physical condition of the Premises, has checked all aspects of the transaction

8

without relying on representations of the parties to this agreement, has found this transaction to be fully conforming to its investment policies and has made an independent decision to invest hereunder." (Ex. 1, § 14(c); Ex. 2, § 13(c); Ex. 3, § 13(c); Ex. 4, § 13(c); Ex. 5, § 13(c); Ex. 6, § 13(c); Ex. 7, § 13(c); Ex. 8, § 13(c); Ex. 9, § 13(c); Ex. 10, § 13(c); Ex. 11, § 13(c); Ex. 12, § 13(c); Ex. 13, § 13(c); Ex. 14, § 13(c); Ex. 15, § 13 (c); Ex. 16, § 13 (c); Ex. 17, § 13(c); Ex. 18, § 13(c); Ex. 19, § 13(c).

Further, the LLC Plaintiffs agreed (or in relatively similar fashion) that: "Except to the extent that a representation is made specifically elsewhere in this Agreement, CSRE has not made and does not make any representations as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or relating to the Premises, which might be pertinent to the purchase of the Premises or the execution of this Agreement…" (Ex. 1, § 14(c); Ex. 2, § 13(c). Ex. 3, § 13(c); Ex. 4, § 13(c); Ex. 5, § 13(c); Ex. 6, § 13(c); Ex. 7, § 13(c); Ex. 8, § 13c); Ex. 9, § 13(c); Ex. 10, § 13(c); Ex. 11, § 13(c); Ex. 12, § 13(c); Ex. 13, § 13(c); Ex. 14, § 13(c); Ex. 15, § 13(c); Ex. 16, § 13 (c); Ex. 17, § 13(c); Ex. 18, § 13(c); Ex. 19, § 13(c).

The LLC Plaintiffs additionally agreed (or in relatively similar fashion) that "CSRE is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations, or information pertaining to the Premises, made or furnished by any real estate broker, agent, employee, servant or other person representing or purporting to represent CSRE. All understandings and agreement heretofore had between the parties are merged in this Agreement, which alone fully and completely expresses their agreement." (Ex. 1, § 14(c); Ex. 2 § 13(c); Ex. 3, § 13(c); Ex. 4, § 13(c); Ex. 5, § 13(c); Ex. 6, § 13(c); Ex. 7, § 13(c);

Ex. 8, § 13(c); Ex. 9, § 13(c); Ex. 10, § 13(c); Ex. 11, § 13(c); Ex. 12, § 13(c); Ex. 13, § 13(c); Ex. 14, § 13(c); Ex. 15, § 13(c); Ex. 16, § 13 (c); Ex. 17, § 13(c); Ex. 18, § 13(c); Ex. 19, § 13(c).

The parties also agreed to arbitration in each Holding Company Agreement as follows (or in relatively similar fashion): "In case of any doubt, question or disagreements about anything pertaining to this Agreement, the parties will choose a third party that is acceptable to all the parties and ask for his opinion, and his ruling shall be accepted. The parties agree to not bring any matter relating to this Agreement to a secular court." (Ex. 1, § 14(d); Ex. 2, § 13(d); Ex. 3, § 13(d); Ex. 4, § 13(d); Ex. 5, § 13(d); Ex. 6, § 13(d); Ex. 7, § 13(d); Ex. 8, § 13(d); Ex. 9, § 13(d); Ex. 10, § 13(d); Ex. 11, § 13(d); Ex. 12, § 13(d); Ex. 13, § 13(d); Ex. 14, § 13(d); Ex. 15, § 13(d); Ex. 16, § 13(d); Ex. 17, § 13(d); Ex. 18, § 13(d); Ex. 19, § 13(d).

### D.    The Holding Company Defendants Allegedly Misuse Investments

The Plaintiffs allege that the "Individual Defendants employed numerous scam tactics in the style of Bernie Madoff." (¶ 64). The first of these tactics was allegedly to return to the members of the LLC Plaintiffs their investments in six of the Holding Company Defendants with respect to the following Schedule A Properties: (i) 908 Bergen Street; (ii) 106 Kingston Avenue; (iii) 618 LaFayette Avenue; (iv) 1078 Dekalb Avenue; (v) 325 Franklin Avenue; and (vi) 1213 Jefferson Avenue. (¶¶ 65-66). This is exactly what the so called Prospectuses promise. (¶¶ 35-36). By keeping their promise, the Plaintiffs (despite the fact that the individual investors in each LLC Plaintiff are different) were somehow "lulled into a false sense of security" and entitled them to the belief they would make their money back on their other speculative investments in Brooklyn. (¶ 65).

The Individual Defendants also allegedly provided inaccurate status updates about the progress of the construction, development, and refinancing of unidentified Schedule A Properties. (¶ 67). The Individual Defendants also allegedly diverted the funds belonging to the

Schedule A Properties to themselves personally and to purchase and develop the Schedule B properties via the Schedule B Defendants. (¶¶ 68-69). Further, with respect to an unidentified "half of the [Schedule A] Properties, Defendant Strolovitch allegedly personally executed mortgages, bank documents, and deeds on behalf of the Holding Company Defendants. (¶ 71). This was expressly authorized and contemplated by the Holding Company Agreements. (*See* § 5 of Exs. 1- 19).

The Plaintiffs also allege that the Individual Defendants induced the Plaintiffs to invest money in 720 Livonia Avenue based on a representation that their plan to purchase 1173 Bergen Street had fallen through. (¶¶ 76-77).

Another example of allegedly bad conduct is that a lease with Dollar Tree at 73 Empire Blvd was lost because "**he** had not performed" improvements to the properties. (¶ 87). There is no mention of who "he" is.

Finally, Plaintiffs allege that Defendants sold four of the Schedule A Properties without the consent of Plaintiffs (¶¶ 88-94).

### E.      The Plaintiffs Commence This Action And File Notices Of Pendency

On April 10, 2017, the Individual Plaintiffs commenced this action "individually and derivatively on behalf of" the LLC Plaintiffs. The Individual Plaintiffs brought this "action derivatively in the right and for the benefit of the LLC Plaintiffs to redress injuries suffered, and that continue to be suffered, by the LLC Plaintiffs, as a direct result of the breaches of fiduciary duties owed by the Individual Defendants." (¶ 95). The Individual Plaintiffs assert that demand would be futile because the Individual Defendants control the LLC Plaintiffs. (¶ 98).

The following causes of action were set forth in the Amended Complaint: (i) a violation of § 10(b)(5) of the Securities Exchange Act of 1934 entitling all Plaintiffs to damages; (ii) cancellation of certain real estate contracts; (iii) fraud entitling all Plaintiffs to damages; (iv)

constructive trust over the Schedule B Properties in favor of all Plaintiff; (v) a derivative cause of action for breach of fiduciary duty; (vi) a direct cause of action for breach of fiduciary duty against the Individual Defendants; (vii) unjust enrichment entitling all Plaintiffs to damages; (viii) an accounting; and (ix) constructive trust over the proceeds derived from the sale of Schedule A Properties entitling all Plaintiffs to damages. Perhaps recognizing the absurdity of bringing any claims directly in this action, the *ad damnum* clause in the sixth cause of action, in which Plaintiffs assert were brought directly on behalf of the Individual Plaintiffs, seeks damages only on behalf of the LLC Plaintiffs.

On April 25, 2017 and May 2, 2017, the Plaintiffs filed notices of pendency ("NOP") on all Schedule B Properties and four Schedule A Properties. (Strulovitch Decl., Exs. 21-22).   The four Schedule A Properties with Notices of Pendency attached thereto are: (i) 1078 Dekalb Avenue; (ii) 853 Lexington Avenue; (iii) 618 LaFayette Street; and (iv) 657-665A 5th Avenue (the "Schedule A NP Properties").   These properties were sold by the Holding Company Defendants, allegedly without the consent of Plaintiffs. (¶¶ 88-94).

## III.   ARGUMENT

### A.  This Court Does Not Have Subject Matter Jurisdiction Because Arbitration Provisions Govern This Dispute

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09 Civ. 2864, 2009 WL 2001328, at *2 (S.D.N.Y. July 10, 2009).  The federal policy favoring arbitration is well-established.  The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted);

*see also Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008); *Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 3 (S.D.N.Y. 2002). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citations omitted) (Emphasis in original).

Courts consider the following four factors in determining whether to compel arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope or the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013)

All of the elements for compelling arbitration are met in this case. <u>First</u>, it is indisputable that the LLC Plaintiffs agreed to arbitrate this dispute via the Holding Company Agreements. (Strulovitch Decl. Exs. 1- 19, § 13(d)). The LLC Plaintiffs signed the Holding Company Agreements by way of their managing member Strolovitch (¶¶ 23, 133, 140). Thus, the agreement is binding upon the LLC Plaintiffs.

Even if not every individual investor signed the Holding Company Agreements, the LLC Plaintiffs and the Individual Plaintiffs should be estopped from refusing to arbitrate. "A nonsignatory may be bound by an arbitration clause when it has 'knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement.'"

13

*Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs., L.L.P.*, 523 F. App'x 761, 763 (2d Cir. 2013).   When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from "denying its obligation to arbitrate." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *see, e.g.*, *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1061 (2d Cir. 1993) (compelling arbitration against non-signatory of agreement which governed the terms of use of a trade name because the nonsignatory received a copy of the agreement, raised no objections to it and made use of that trade name pursuant to the agreement); *Color-Web, Inc. v. Mitsubishi Heavy Indus. Printing & Packaging Mach., Ltd.*, No. 16CV1435(DLC), 2016 WL 6837156, at *5 (S.D.N.Y. Nov. 21, 2016) (compelling arbitration against plaintiffs who were not signatories to arbitration agreement "[b]ecause the claims of these two plaintiffs relate to the direct benefits they would have obtained from Color-Web's purchase of the printing press under the sales agreement").

The Individual Plaintiffs received direct benefits of the Holding Company Agreements by having their money invested into the Schedule A Properties via the Holding Company Defendants.   Additionally, Plaintiffs rely on these agreements in setting forth causes of action for breach of fiduciary duties against the Individual Defendants and CSRE LLC, who are alleged to be "Managers of … the Holding Company Defendants."   That allegation is derived from each of the Holding Company Agreements. (Strulovitch Decl. Exs.1-19, § 5).   The Individual Plaintiffs cannot simultaneously obtain the benefit of these agreements while disclaiming the enforceability of the arbitration provision.   Further, it would make no sense to separate the signatories from the non-signatories in this case.   Indeed, some of the Individual Plaintiffs even signed schedules appended to the Holding Company Agreements. (Strulovitch Decl. Exs. 1-19).

14

They were clearly aware that an arbitration agreement governed the dispute and they have failed to object to the viability of the same.

Second, the arbitration provisions cover virtually any claim against the Holding Company Defendants: "In case of any doubt, question or disagreements about anything pertaining to this Agreement, the parties will choose a third party that is acceptable to all the parties and ask for his opinion, and his ruling shall be accepted. The parties agree to not bring any matter relating to this Agreement to a secular court." (Strulovitch Decl. Exs. 1- 19, § 13(d)).

Third, the § 10(b) claim, which is the only federal claim raised, is arbitrable. *See First Eagle Sogen Funds, Inc. v. Bank for Int'l Settlements*, No. 01 Civ. 0087(RO), 2001 WL 1150323, at *2 (S.D.N.Y. Sept. 28, 2001) ("[I]t is well-settled that Exchange Act claims are arbitrable[.]").

Fourth, there can be no dispute that Plaintiffs' pendent state law claims are arbitrable as well. *See Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 288 (S.D.N.Y. 2015) ("Given that Plaintiffs' statutory claims are arbitrable, Plaintiffs' 'pendent state law claims are also arbitrable.'").

Thus, because each and every claim is arbitrable, this case should be dismissed rather than stayed. *See, e.g., DeBono v. Wash. Mut. Bank*, No. 05 Civ. 10333(DC), 2006 WL 3538938, at *4 (S.D.N.Y. Dec. 8, 2006); *Cicchetti v. Davis Selected Advisors*, No. 02 Civ. 10150 (RMB), 2003 WL 22723015, at *3 (S.D.N.Y. Nov. 17, 2003).

### B. All Derivative Claims Must Be Dismissed

#### 1. The Amended Complaint Is Not Verified And Therefore All Derivative Claims Must Be Dismissed

Pursuant to FRCP 23.1(b), "[t]he complaint must be verified." Pursuant to FRCP 41(b), if a plaintiff fails "to comply with these rules … a defendant may move to dismiss the action." The failure to verify a complaint in a derivative action is grounds for dismissal pursuant to FRCP

41(b). *See, e.g., Marcus v. Textile Banking Co.*, 38 F.R.D. 185, 186 (S.D.N.Y. 1965) (describing failure to verify complaint in a stockholder's derivative action as a "fatal defect" under predecessor to Rule 23.1); *C.R.A. Realty Corp. v. Scor U.S. Corp.*, No. 92 CIV. 2093 (LMM), 1992 WL 309610, at *1 (S.D.N.Y. Oct. 9, 1992) (finding that "the Complaint is dismissed [pursuant to FRCP 41(b)] for failure to comply with Rule 23.1, requiring verification of a complaint"); *Ctr. v. Hampton Affiliates, Inc.*, No. 77 CIV. 581, 1978 WL 1097, at *4 n.3 (S.D.N.Y. June 28, 1978) ("Other grounds for dismissal of this derivative suit under Rule 23.1, Fed. R. Civ. P., are that (1) the complaint is not verified..."). Accordingly, the Amended Complaint should be dismissed.

### 2.    Plaintiffs Improperly Conflate Derivative And Direct Claims

The derivative claims must be dismissed because they are comingled with Plaintiffs' alleged direct claims. Courts in New York have long held that complaints that fail to delineate between or comingle direct and derivative claims must be dismissed. *See Abrams v. Donati*, 66 N.Y.2d 951, 953-54, 498 N.Y.S.2d 782, 783 (1985) (dismissing complaint because it combined derivative claims for injuries to the corporation with individual claims); *Barbour v. Knecht*, 296 A.D.2d 218, 227-28, 743 N.Y.S.2d 483, 491 (1st Dep't 2002) ("The mingling of derivative claims and individual claims requires dismissal of the causes of action so affected.").

Here, the causes of action are not separately delineated. The first through fourth and seventh through ninth causes of action appear to be brought on behalf of all Plaintiffs, which is improper in a derivative action. (¶¶ 99-31, 148-61). The Sixth Cause of Action is purportedly brought directly by the Individual Plaintiffs but seeks damages on behalf of the LLC Plaintiffs. (¶ 147). Such intermingling, conflation, and confusion of claims warrants dismissal.

### 3. The Individual Plaintiffs Are Impermissibly Conflicted From Representing The Interests Of The LLC Plaintiffs

Pursuant to Rule 23.1(a) of the FRCP, a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Courts in the Second Circuit routinely find that where an individual plaintiff brings an action derivatively and at the same time alleges direct claims, an impermissible conflict of interest arises. *See Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) (stating that "[a]ny individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest."); *Wall St. Sys., Inc. v. Lemence*, No. 04 CIV. 5299 (JSR), 2005 WL 292744, at *3 (S.D.N.Y. Feb. 8, 2005) (stating that "an individual shareholder has a conflict of interest, and therefore cannot adequately represent other shareholders, when he simultaneously brings a direct and derivative action, as Lemence has done here"); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06CIV688(SWK), 2006 WL 2849783, at *7 (S.D.N.Y. Oct. 4, 2006) ("Courts in this Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest."); *Priestley v. Comrie*, No. 07 CV 1361(HB), 2007 WL 4208592, at *6 (S.D.N.Y. Nov. 27, 2007) (holding that "[h]er attempt to advance derivative and direct claims in the same action is an impermissible conflict of interest that disqualifies her from maintaining this action").

Because the Individual Plaintiffs seek personal monetary relief pursuant to the *ad damnum* clause of virtually every single cause of action (¶¶ 109, 126, 131, 153, 157, 161), in addition to making a direct claim for breach of fiduciary duty (¶¶ 141-47), the Individual Plaintiffs are incapable of adequately representing the LLC Plaintiffs derivatively. As a result, the Amended Complaint must be dismissed.

## C. Even If This Derivative Action Is Proper, Which It Is Not, All Claims Must Be Dismissed

### 1.   Legal standard

In order to survive a motion to dismiss, the complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To do so, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should not accept "legal conclusion[s] couched as ... factual allegation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79 (quotation marks and citation omitted).

As shown below, the Amended Complaint falls short of this standard. In fact, since there are no allegations of wrongdoing with respect to 901 Bushwick Avenue LLC, Gates Equity Holdings LLC and 945 Park PL LLC, those defendants must be dismissed from the action.

### 2.   The First Cause Of Action for a violation of § 10(b)(5) of the Securities Exchange Act must be dismissed

To state a claim for a violation of § 10(b)(5) and Rule 10b–5, a plaintiff must plead a misstatement of material fact (or an omission of a material fact that the defendant has a duty to disclose), made using an instrumentality of interstate commerce, with scienter, on which the plaintiff relied to her detriment in connection with the purchase or sale of a security. *In re ITT Educ. Servs., Sec. Litig.*, 34 F. Supp. 3d 298, 305 (S.D.N.Y. 2014). "The Private Securities Litigation Reform Act ("PSLRA") imposes a heightened standard for a 10(b) allegation to be well pleaded." *Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 569 F. App'x 43, 44 (2d Cir. 2014). "Plaintiffs must satisfy Rule 9(b), which requires plaintiffs to state 'the circumstances constituting fraud,' and the PSLRA also requires them to 'state with particularity all facts on which [their belief that defendants violated Rule 10(b)(5)] is formed.'" *Id.* (citing 15 U.S.C. § 78u–4(b)(*l*)(B)). In order to comport with Rule 9(b), securities fraud allegations must "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 534 (S.D.N.Y. 2012), *aff'd*, 571 F. App'x 8 (2d Cir. 2014) (dismissing complaint where plaintiff failed to allege "specific speakers"). For all the reasons that follow, the § 10(b) claim must be dismissed.

### a) *Plaintiffs' group pleading is improper under the heightened pleading standards*

Plaintiffs fail to meet the heightened pleading standards necessary to successfully plead a § 10(b) claim. Indeed, none of the alleged misrepresentations concern what Mr. Strulovitch did or said. Rather, all alleged misrepresentations concern what the "Individual Defendants" did or said. (¶¶ 34-61, 105, 106, 107). Such group pleading is improper.

Moreover, per the Amended Complaint, it appears that Defendant Oberlander was the only person to communicate with the investors. (¶¶ 30-33). Oberlander is merely alleged to be Strulovitch's "business associate." (¶ 31). There is no allegation that Oberlander was Strulovitch's agent or partner. Oberlander did not and could not speak for Strulovitch and thus any claims against Strulovitch and his related entities fails.

### b) *Plaintiffs plead that certain misrepresentations are actually true, therefore rendering such representations non-actionable*

To the extent Plaintiffs plead that misrepresentations were made with respect to six of the Schedule A Properties that were sold -- (i) 1078 Dekalb; (ii) 618 Lafayette; (iii) 908 Bergen; (iv) 106 Kingston; (v) 1213 Jefferson Avenue; and (vi) 325 Franklin -- such claims must be dismissed because any alleged misrepresentations were actually true. The alleged Prospectuses that serve as the basis for § 10(b)(5) claims state that the "investors would receive the return of their original investment..." (¶ 36). Plaintiffs expressly pled that with respect to these six

19

properties, "the Individual Defendants refinanced loans and returned the vast majority of the investment funds…" (¶ 66).   As a result, the alleged representations in the Prospectuses have been established as true.  As such, these claims must be dismissed.

**c)**   ***Plaintiffs disclaimed reliance on any representations made prior to investing in the Holding Company Defendants***

"Plaintiffs may not maintain a securities fraud claim unless they allege that they reasonably relied on a misrepresentation or omission." *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491 (S.D.N.Y. 2005).  The "Court of Appeals for the Second Circuit has held that 'a party cannot justifiably rely on a representation that is specifically disclaimed by an agreement.'" *Katz v. Image Innovations Holdings, Inc.*, No. 06 CIV.3707(JGK), 2008 WL 4840880, at *5 (S.D.N.Y. Nov. 4, 2008) (citing *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003)); *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 368 (S.D.N.Y. 2002) ("It is well-established, however, that a party to a contract cannot rely on oral representations where a contract specifically disavows the incorporation of non-written representations.").  "The clear implication of the Court of Appeals' language is that a disclaimer of representations also disclaims reliance on those representations." *Image Innovations Holdings, Inc.*, 2008 WL 4840880, at *5.  A merger clause need not disclaim the identical representations complained of in order to serve as a bar to a § 10(b) claim; rather, many courts hold that a "standard merger clause precludes reliance on prior representations." *Kelter v. Apex Equity Options Fund, LP*, No. 08 CIV. 2911(NRB), 2009 WL 2599607, at *8 (S.D.N.Y. Aug. 24, 2009); *see also Image Innovations Holdings, Inc.*, 2008 WL 4840880, at *6 ("It is plain that a merger clause may disclaim reliance on certain representations without identifying those representations in language that is identical to the language used by a party claiming reliance."); *Wells Fargo Bank*, 247 F. Supp. 2d at 368 ("New York courts have recognized that 'no particular

20

words are needed to transform a general disclaimer into a specific one, and have excluded parol evidence even when the contract did not contain an express disavowal of reliance on oral representations.'").

Pursuant to certain clauses in the Holding Company Agreements, the Plaintiffs disclaimed reliance on all representations not contained in said agreements. The Holding Company Agreements state that the LLC Plaintiffs:

> had the opportunity to examine the Premises, is familiar with the physical condition of the Premises, has checked all aspects of the transaction **without relying on representations of the parties to this agreement**, has found this transaction to be fully conforming to its investment policies and has made an independent decision to invest hereunder.
> …
>
> Except to the extent that a representation is made specifically elsewhere in this Agreement, **CSRE has not made and does not make any representations** as to the physical condition, expenses, operations, **value of the land or buildings thereon**, or any other matter or thing affecting or relating to the Premises, which might be pertinent to the purchase of the Premises or the execution of this Agreement.
> …
>
> The LLC Plaintiffs additionally agreed "CSRE is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, **statements, representations, or information pertaining to the Premises**, made or furnished by any real estate broker, agent, employee, servant or other person representing or purporting to represent CSRE. All understandings and agreement heretofore had between the parties are merged in this Agreement, which alone fully and completely expresses their agreement."

(emphasis added). In other words, the merger clauses specifically disclaim reliance on any representations made by any party prior to entering into the agreements, including "representations as to the … value of the land or buildings thereon." These agreements were all signed after the relevant Prospectuses were allegedly sent. Because the merger clauses

specifically disclaim reliance on representations as to the value of the Schedule A Properties prior to entering into the agreements, the § 10(b) claim must be dismissed. *See, e.g., One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 79 (2d Cir. 2010) ("With respect to the pre-agreement representations allegedly made by Lightship, we conclude that the merger agreement foreclosed any reliance by CTC on those representations and that therefore no § 10(b) claim may be brought based on them."); *Wells Fargo Bank*, 247 F. Supp. 2d at 368-69 ("It does not follow, however, that where a written contract specifically identifies areas that are not the subject of representations, a party can avoid its specifically-negotiated contract obligations by claiming a representation that is a slight variant of the particular language disclaimed in the contract.").

**d)** ***Because the § 10(b)(5) claims must be dismissed, this court should transfer the remaining causes of action to the Supreme Court of the State of New York, Kings County***

Where the only basis for litigating a dispute in a Federal Court is on Federal Question grounds, upon dismissal of all Federal claims, Courts in the Eastern District of New York usually exercise their discretion to transfer the remaining claims to state court for adjudication. *See, e.g., Done v. HSBC Bank USA*, No. 09-CV-4878(JFB)(ARL), 2010 WL 3824142(JFB)(ARL), at *1 (E.D.N.Y. Sept. 23, 2010); *Poole v. N.Y.*, No. 11-CV-921(JFB)(AKT), 2012 WL 727206, at *4 (E.D.N.Y. Mar. 6, 2012). Because the § 10(b) claim must be dismissed, this Court should transfer the remaining claims to state court for resolution.

**3.** **To the extent the Court opts to retain jurisdiction over the pendent state law claims, those claims must also be dismissed**

For all of the reasons the § 10(b) claim must be dismissed, Plaintiffs' cause of action for fraud must also be dismissed. Additionally, for the reasons that follow, all of the remaining state law claims must be dismissed.

a)      *The cancellation of contracts claim must be dismissed (Count 2)*

Via its Second Cause of Action, the Plaintiffs seek to cancel the contracts to sell the Schedule A NP Properties to third parties on the grounds that the "contracts were signed by one or more of the Individual Defendants without the authority or approval of Plaintiffs." (¶ 112). Plaintiffs cite New York General Obligations Law § 5-703 as the statute permitting them to void these contracts.  This statute states that: "[a] contract … for the sale of any real property, or an interest therein, is void unless the contract … is in writing, subscribed by the party to be charged, **or by his lawful agent thereunto authorized by writing**."

Strulovitch was the lawful agent of the Holding Company Defendants as its managing member (¶¶ 23, 133, 140).  Further, the Amended Complaint fails to identify any basis for which the LLC Plaintiffs, the Individual Plaintiffs, or any other investor, were required to give their consent before a Schedule A Property was transferred.  Instead, the Plaintiffs plead that the Prospectuses stated that the investments would depend solely on the efforts of the Individual Defendants and that the Individual Defendants would "attend to, manage, and worry for the project in its formation, continuation, rental, and sale all attention necessary for the success of the business." (¶ 38).  And even if a certain percentage of investors' consent was required for a transfer, the Individual Plaintiffs fail to plead what percentage was required, the amount of interest they have in the Holding Company Defendants (via the LLC Plaintiffs), and whether any other non-plaintiff investor (which represents the vast majority of the interests in the LLC Plaintiffs) consented to the transfer.  Such flimsy pleading cannot satisfy Plaintiffs' heavy burden of cancelling a real estate contract of some innocent third party.

**b)** *The direct breach of fiduciary duty claim must be dismissed (Count 6)*

The Individual Plaintiffs improperly assert direct claims against the Individual Defendants in the sixth cause of action, which is for breach of fiduciary duty. Under New York law, "a derivative claim seeks to recover for injury to the business entity," while "a direct claim seeks redress for injury to [a plaintiff] individually." *Hansen v. Wwebnet, Inc.*, No. 1:14-CV-2263(ALC), 2015 WL 4605670, at *4 (S.D.N.Y. July 31, 2015) (citing *Yudell v. Gilbert*, 99 A.D.3d 108, 113, 949 N.Y.S.2d 380, 383 (1st Dep't 2012)). In *Yudell*, the First Department adopted Delaware's "common sense approach" (*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)) for deciding whether a claim is derivative or direct. *Id.* (citing *Yudell*, 99 A.D.3d at 114, 949 N.Y.S.2d at 384. Under *Tooley*, "a court should consider (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Id.* (citing *Yudell*, 99 A.D.3d at 114, 949 N.Y.S.2d at 384).

Outside of generally pleading that the Individual Plaintiffs were damaged by way of the Individual Defendants alleged breaches of fiduciary duty, the Amended Complaint could not be clearer that any purported injury was to the LLC Plaintiffs, not the Individual Plaintiffs. Indeed, the *ad damnum* clause in the sixth cause of action asserts not that the Individual Plaintiffs seek an award of damages; rather, it asserts that the "LLC Plaintiffs are entitled to compensatory and punitive damages and the disgorgement of profits…" (¶ 147). That alone establishes the second part of *Tooley* analysis. Accordingly, the direct claim for breach of fiduciary duty must be dismissed.

c)      *The accounting claim must be dismissed (Count 8)*

Plaintiffs' claim for an accounting must be dismissed.   A party that sues for an accounting must establish four elements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Berk v. Tradewell, Inc.*, No. 01 Civ. 9035, 2003 WL 21664679, at *7 (S.D.N.Y. July 16, 2003).   Because Plaintiffs' fail to satisfy the second through fourth elements, the accounting claim must be dismissed.

Under New York law, "[a]n accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury." *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1, 7 (S.D.N.Y. 2016); *see, e.g., Arrow Commc'n Labs., Inc. v. Pico Prods., Inc.*, 219 A.D.2d 859, 860, 632 N.Y.S.2d 903, 905 (4th Dep't 1995) ("Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.'").   Here, Plaintiffs have failed to allege whether an alternative legal remedy is available to them.   The Amended Complaint makes clear that one is available, however.   Via its accounting cause of action, Plaintiffs seek "an accounting of all books, records and transactions of the LLC Plaintiffs and the Holding Company Defendants, ***and for the recovery of any funds that have been improperly taken therefrom.***"   (¶ 157) (emphasis added). Plaintiffs seek those same damages through its fraud and breach of fiduciary duty claims. Therefore the accounting claim must be dismissed. *NEM Re Receivables*, 173 F. Supp. 3d at 7 ("NEM Re not only requests an accounting but also seeks the amount found to be due from that accounting, including prejudgment and post judgment interest. NEM Re seeks monetary damages which are recoverable under a cause of action at law, namely a breach of contract

25

claim. Therefore, a claim for accounting is not proper"); *Telesco v. Neuman*, No. 14 CV 3480 VB, 2015 WL 2330166, at *7 (S.D.N.Y. Mar. 11, 2015) ("When, as here, a plaintiff seeks money damages in a breach of contract claim, an accounting claim is unavailable because discovery as to the measure of damages associated with the breach of contract claim provides plaintiff the remedy he seeks.").

With respect to the fourth element, Plaintiffs only make the conclusory allegation that "Despite due demand, the Individual Defendants have refused to provide a just and fair accounting to Plaintiffs." (¶ 156).   There is no allegation when this demand took place, who made the demand, when the Individual Defendants refused such demand, nor any other information about such demand and refusal.   This allegation is not sufficient to survive the *Twombley/Iqbal* pleading standard.

> **d)**     ***The remaining equitable claims must be dismissed:  Constructive Trust (Counts 4 and 9) and Unjust Enrichment (Count 7)***

Because there are valid contracts between LLC Plaintiffs and the Holding Company Defendants (the Holding Company Agreements), the equitable claims fail.   (Strulovitch Aff., Exs. 1-19).   Under New York law, "the existence of a written agreement precludes a finding of unjust enrichment [or a] constructive trust." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, No. 08 CV 4607 (ENV)(RML, 2009 WL 1652253, at *4 (E.D.N.Y. June 4, 2009) (citing *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 213 (2d Cir. 2004); *Abraham v. Am. Home Mortg. Serv., Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) ("It is well established that the existence of a contract precludes a claim for a constructive trust."); *Holzer v. Mondadori*, 40 Misc. 3d 1233(A), 2013 WL 4523615, at * 7 n.10 (Sup. Ct. N.Y. Cnty. 2013) ("Similarly, a claim for a constructive trust would fail because of the existence of written contracts governing the transfer of the $2 million.").

Although the Plaintiffs have chosen not to bring a breach of contract claim for apparently strategic reasons, a contract exists between the parties with respect to Plaintiffs' investments in the Holding Company Defendants, and therefore all equitable claims must be dismissed.

Additionally, there is not a single detail about the alleged diversion of money from the Holding Company Defendants to the Schedule B Defendants represented by this law firm. Instead, Plaintiffs generally plead, without any detail whatsoever, that Plaintiffs "used money invested by the Plaintiffs to purchase and develop the Secret Properties." (¶ 129). Plaintiffs no not even plead how they came to learn about such alleged diversion. The claims (and related NOPs) were made exclusively to wreak havoc on Strulovitch's other business interests as some sort of punishment for Plaintiffs' investments not panning out. These conclusory allegations should not be accepted by the Court and the constructive trust claim must be dismissed.

## D. **The Notices of Pendency Must Be Vacated**

Because the Amended Complaint must be dismissed on procedural and substantive grounds, the NOPs on the Schedule A NP Properties and Schedule B Properties must be vacated. *See RB Hempstead, LLC v. Inc. Vill. of Hempstead*, 34 A.D.3d 552, 553, 824 N.Y.S.2d 407, 409 (2d Dep't 2006). Even if certain causes of action are not dismissed, the NOPs on the Schedule A Properties must be vacated for a simple reason: this case concerns interests in limited liability companies, which is personalty, not realty, and therefore inadequate to sustain a *lis pendens* under New York law.[3]

---

[3] As a matter of substantive law affecting property, "state law governs the matter of lis pendens." § 2935, Lis Pendens, 11A Fed. Prac. & Proc. Civ. § 2935 (3d ed.); *DLJ Mortgage Capital*, 2009 WL 1652253, at *2 n.2 (explaining that the court "must look to state law to govern the matter of lis pendens") (Internal quotation marks omitted).

1.    **Notices of pendency are an extraordinary remedy and the statute is
strictly applied**

Pursuant to CPLR § 6501, "[a] notice of pendency may be filed in any action ... in which
the judgment demanded would affect the title to, or the possession, use or enjoyment of, real
property..."  "The filing of a notice of pendency is an extraordinary privilege, and the statute
conferring it should be strictly construed." *Chambi v. Navarro, Vives & Cia, Ltd.*, 95 A.D.2d
667, 667, 463 N.Y.S.2d 218, 219 (1st Dep't 1983); *see also In re Sakow*, 97 N.Y.2d 436, 441,
741 N.Y.S.2d 175, 179 (2002).

A *lis pendens* is only appropriate in the "narrowest" of circumstances: namely, cases
"directly affecting title or, or the possession, use or enjoyment of real property." *5303 Realty
Corp. v. O&Y Equity Corp.*, 64 N.Y.2d 313, 315-16, 486 N.Y.S.2d 877, 884 (1984) (cancelling
lis pendens in property held by real estate partnership; "the drastic impact of the notice of
pendency authorized by N.Y. CPLR § 6501 requires strict applications of that statute"); *see also
Richard J. Zitz, Inc. v. Pereira*, 965 F. Supp. 350, 354-55 (E.D.N.Y. 1997) (explaining that the
New York Court of Appeals has "imposed a narrow interpretation in reviewing whether an
action is one affecting the title to, or the possession, use or enjoyment of, real property")
(Citations omitted).  "Despite the broad language of § 6501, which allows for the filing of *lis
pendens* where 'judgment demanded would affect the title to, or the possession, use or enjoyment
of, real property,' the statute is interpreted narrowly by New York courts." *United States v.
Kramer*, No. 1:06-cr-200-ENV-CLP, 2006 WL 3545026, at *9 (E.D.N.Y. Dec. 8, 2006)
(citations omitted); *see also* David D. Siegel, New York Practice § 334 (5th ed. 2016) (noting that
notwithstanding the "seeming generous language of the statute (including the phrase 'use or
enjoyment'), a notice of pendency cannot be sustained where the plaintiff claims no 'right title,
or interest' in the property itself").

28

2.    *Lis Pendens* **does not apply to Actions like this one where Plaintiffs are claiming an interest in an LLC**

Plaintiffs do not have a direct interest in the Schedule A NP Properties nor the Schedule B Properties and thus the notices of pendency must be vacated. On many occasions, Courts have vacated a notice of pendency when the plaintiffs claim an interest in a joint venture or a limited liability company dealing with property because an interest in a joint venture or limited liability company dealing with property is not an interest in the property itself, and thus fails to support a notice of pendency. *See, e.g., Olstad v. Nehmadi*, 31 Misc. 3d 1211(A), 2011 WL 1420879 (Sup. Ct. N.Y. Cnty. Apr. 8, 2011).

*Ostad v. Nehmadi* is illustrative of this point. In *Olstad*, the plaintiff sued the defendant "claiming an interest in property acquired by a corporation for the benefit of purported partnership." *Id.* at *1. According to the plaintiff, the property was purchased by a limited liability company formed by the parties to acquire title on their behalf. *Id.* Plaintiff alleged that he contributed $400,000 in exchange for a 10% interest in the limited liability company. *Id.* When one of the defendants refinanced the property, the plaintiff filed a complaint requesting a final accounting of all proceeds generated by the property and the formation of a constructive trust on the property and the LLC to "establish the rights of the parties, and determine and partition the assets of the alleged" partnership. *Id.* The plaintiff also filed a notice of pendency, on the grounds that his request of relief implicated his 10% interest in the ownership of the property. *Id.*

The court vacated the *lis pendens*. It explained that in reviewing a *lis pendens*, "[t]he basic test is whether the pleading on its face directly affects the necessary interest in the land, and notice of pendency is improper if the relationship of action to realty is only indirect." *Id.* at *3 (citations omitted). The court determined that plaintiff's involvement with the "enterprise"

was similar to a partnership or a joint venture, and thus the question is whether "a partner's or a venturer's claim on the real estate owned by such an entity constitutes personal property, which falls outside the scope of N.Y. C.P.L.R. § 6501." *Id.* at *5. Despite the plaintiff's argument that he was seeking a 10% interest in the property, the court found that the complaint averred membership in an enterprise that purchased the property. *Id.* at *5, 8. The court concluded that such an interest is an interest in personalty, only indirectly involving the property. *Id.* at *6.

Likewise in *Felske v. Bernstein*, the Second Department held in an abuse of process action that a notice of pendency had been improperly filed. 173 A.D.2d 677, 570 N.Y.S.2d 331 (2d Dep't 1991). The basis of the notice of pendency was a landowner's claim for specific performance of an alleged agreement to form a joint venture for the purpose of developing a condominium project on the landowner's property. The Court reasoned that:

> The plaintiffs contend that the notice of pendency was diverted from its lawful purpose. We agree. "A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." At bar, even if the defendants were granted specific performance in the underlying action, that fact alone would not give them an interest in the subject realty because the defendants' interest in the joint venture would be an interest in personal property, not an interest in the realty. Since the judgment for specific performance would not affect the title to, or the possession, use or enjoyment of real property, the filing of the notice of pendency was not justified

*Id.* at 678, 570 N.Y.S.2d at 333 (citations omitted). Many other courts have reiterated the reasoning in *Ostad* and *Felske* that claims to membership or interest in an LLC only indirectly affect real estate and thus fail to support a lis pendens under CPLR § 6501.[4]

---

[4] *General Prop. Corp. v. Diamond*, 29 A.D.2d 173, 175, 286 N.Y.S.2d 553, 554 (1st Dep't 1968) (vacating *lis pendens* because "the interest of a joint venturer in a venture having to do with realty is not an interest in the realty itself"); *McKernan v. Doniger*, 161 A.D.2d 1159, 555 N.Y.S.2d 517 (4th Dep't 1990) (finding the trial court erred in denying motion to cancel lis pendens, where plaintiff challenged defendants' ability to sell real estate owned by their partnership, explaining that "[p]laintiff's interest in the partnership is an interest in personal property, not an interest

Here, as in *Ostad* and *Felske*, and the line of cases that follow, the Individual Plaintiffs (amongst many other investors) allegedly contributed money into the LLC Plaintiffs, which allegedly have an interest in the Holding Company Defendants that own the Schedule A NP Properties.  In the Second Cause of Action, which seeks a cancellation of the contracts to sell the Schedule A NP Properties, Plaintiffs seek a declaration that certain of the Holding Company Defendants "are the lawful owners and are vested with absolute and unencumbered title in fee to each of [the Schedule A NP Properties] and declaring that the Holding Company Defendants have "sole and complete possession of [the Schedule A NP Properties]."  (¶ 119).   In other words, the Plaintiffs put NOPs on the Schedule A NP Properties because they seek a declaration that the Holding Company Defendants, in which the LLC Plaintiffs have a direct interest and the Individual Plaintiffs have an indirect interest, own the Schedule A Properties.  This is exactly the sort of interest in personalty that the plethora of cases cited refer to when disallowing an NOP on real property when the plaintiff only has an interest in entities that own the real property.

Accordingly, the NOPs must be vacated.

### 3.   The Constructive Trust claim is not a basis for attaching NOPs to the Schedule B Properties

Because the constructive trust claims must be dismissed, the NOPs attached to the Schedule B Properties must also be vacated.  Even if the constructive trust claim was properly stated, the NOPs must still be vacated.

---

in the real property owned by the partnership"); *Yonaty v. Glauber*, 40 A.D.3d 1193, 1195, 834 N.Y.S.2d 744, 747 (3d Dep't 2007) (affirming cancellation of notice of pendency because "Membership interest in an LLC constitutes personal property and an LLC member has 'no interest in specific property of the LLC'"); *Liffiton v. DiBlasi*, 170 A.D.2d 994, 994, 566 N.Y.S.2d 148, 149 (1st Dep't 1991) ("Since plaintiff's claimed interest in the partnership is, under the partnership law, an interest in personal property, a lis pendens is not appropriate") (citations omitted); *W25 Holdings, LLC v. Schreiber*, No. 155921/2014, 2014 WL 6471481, at *3 (N.Y. Sup. Nov. 19, 2014) (cancelling notice of pendency where "[a]ll of the claims in the original complaint arise out of plaintiffs' claim that they are 35% owners of a joint venture that owns the Property [and thus t]heir interest is in personal, not real, property"); *Sherpaco, LLC v. Kossi*, No. 103875/2007, 2010 WL 231618 (Sup. Ct. N.Y. Cnty. Jan. 5, 2010).

The Plaintiffs have no interest in the Schedule B Properties nor the Schedule B Defendants, yet they attached NOPs to all Schedule B Properties. Their apparent basis to do so is that they have alleged a constructive trust over the Schedule B Properties. The mere inclusion of a request for a constructive trust does not support a NOP, as the courts of New York look to the substance of the action to determine whether the statutory requirements are met. *See Olstad*, 2011 WL 1420879, at *6; *DLJ Mortg. Capital*, 2009 WL 1652253, at *2 n.2 (rejecting plaintiff's claim for a constructive trust and concluding that plaintiff's notice of pendency failed under CPLR § 6501); *Amalgamated Consultants Ltd. v. De Savary*, No. 85 CIV. 2759 (JFK), 1985 WL 3044, at *9-10 (S.D.N.Y. Oct 22, 1985) (vacating NOP on property despite plaintiff's inclusion of a constructive trust claim on the property).

As in *Ostad*, Plaintiffs' constructive trust claim here does not transform its action into a direct claim on the Property. The substance of the Plaintiffs' claims make clear that they seek an interest in the Schedule B Defendants, not that they are entitled to a transfer of the Schedule B Properties owned by the Schedule B Defendants (despite demanding such relief). (¶ 131). Plaintiffs fail to plead how much the Schedule B Properties were acquired for, how much money was invested to develop them, and how much of Plaintiffs money was allegedly diverted to the Schedule B Defendants. At best, even if some of Plaintiffs' money was diverted to the Schedule B Defendants to acquire and develop the Schedule B Properties, which it was not, that would only give the Plaintiffs an interest in the Schedule B Defendants who own the Schedule B Properties. And, as discussed above, an interest in an LLC is an interest in personality and cannot serve as the basis for attaching an NOP.

### 4. The Court Should Award Defendants Their Costs And Expenses Incurred As A Result Of The Filing Of The NOPs

Courts in New York State do not hesitate to award costs and fees as a result of the improper filing and refusal to vacate a frivolous NOP. *See* CPLR § 6514(c) ("Costs and expenses. The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action."); *see, e.g., No. 1 Funding Ctr., Inc. v. H & G Operating Corp.*, 48 A.D.3d 908, 853 N.Y.S.2d 178 (3d Dep't 2008) (Upon cancelling NOP in prospective buyer's action against sellers, seeking specific performance of parties' asset sale agreement, trial court had statutory authority to award counsel fees to sellers in the absence of a contractual provision permitting such an award). Here, via its pre-motion letter, the Defendants informed Plaintiffs of their frivolous NOPs. Rather than admit their "error," the Plaintiffs have dug their heels in, refusing to vacate the NOPs, despite absolutely no direct interest in any of the properties on which they attached a NOP. Accordingly, the Court should award Defendants their costs and fees occasioned by the filing and inevitable cancellation of the NOPs.

### 5. If The Court Does Not Vacate The NOPs, The Court Should Order Plaintiffs To Provide An Undertaking

There was no basis for Plaintiffs to file the NOPs, other than simply to impose on Defendants the burden of seeking to have it vacated. If the Court declines to vacate the NOPs, however, the Court should at a minimum require Plaintiffs to post a bond in an amount sufficient to indemnify Defendants for the damages they will undoubtedly incur if the NOPs are not cancelled. CPLR § 6515(2). "The purpose of the bond required to be posted by plaintiff is to indemnify defendant against any damages he may sustain if the notice of pendency is not cancelled." *Esposito v. FDIC*, 644 F. Supp. 276, 277 (E.D.N.Y. 1986).

## IV.    CONCLUSION

For all of the reasons stated above the Court should issue an order: (i) dismissing the Amended Complaint; (ii) compelling Arbitration, if the Court deems it necessary; (iii) transferring this action to Kings County Supreme Court, if the Court deems it necessary; (iv) cancelling the notices of pendency attached to certain parcels of real property owned by certain of the Defendants; and (v) for such other and further relief as this Court deems appropriate.

Dated:   New York, New York
         June 12, 2017

Avery S. Mehlman
Scott C. Ross
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
212.592.1400
sross@herrick.com