# LIMITED LIABILITY COMPANY OPERATING AGREEMENT

This Limited Liability Company Operating Agreement ("Agreement") is effective as of January 7th, 2013 and entered into by and among **106 KINGSTON LLC** (the "Company") and **CSRE LLC** ("CSRE") the owner of fifty-four percent (54%) of the Company, and **KINGSTON OPERATIONS LLC** ("INVESTORS LLC") the owner of forty-six percent (46%) of the Company and the members of **KINGSTON OPERATIONS LLC** (hereinafter referred to as the "Members").

**WHEREAS**, the Articles of Organization for the Company were filed with the New York Department of State in accordance with the New York Limited Liability Company Act (the "Act"); and

**WHEREAS**, INVESTORS LLC and CSRE desire to operate the Company as a limited liability company under the Act for the purposes set forth herein.

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the Company and INVESTORS LLC and CSRE LLC and Members hereby agree as follows:

1.    **Name**.  The name of the Company is **"106 KINGSTON LLC"**, unless changed by agreement of both CSRE and INVESTORS LLC.

2.    **Purpose**.  The Company's business and purpose shall consist of acquiring, owning, holding, developing, maintaining, and operating a direct interest in the property located at **106 Kingston Avenue, Brooklyn, Ny 11213** (the "Premises"), together with such other activities as may be necessary or advisable in connection with the ownership of the Premises.

3.    **Principal Office**.  The principal office of the Company shall be located at **116 Nostrand Avenue, Brooklyn, New York 11205**, or such other location as the Managing Member of **106 KINGSTON LLC** may select.

4.    **Member(s) and Assignments.**  INVESTORS LLC and CSRE hereinafter referred to collectively as "Owners" shall be the only members of the Company unless the Members determine that one or more other persons/entities will be admitted as a member, or that any of the Owners desires to sell or assign all or any part of its membership interest in the Company. The names, addresses and percentage interests of the Members are listed on signature pages annexed below and to be maintained by the Co-Manager, or such other person to be appointed for the purpose by the Co-Manager or by the Investors Manager as per clause 5b below.

5.    **Management**.

(a)    The terms of the management of the Company are as follows:

(i)    The Owners agree that the business and affairs of the Company shall be managed by CSRE (the "Managing Member") and the Managing Member shall manage to the best of his capabilities.  The duties of the CSRE shall include, but not be limited to managing the Premises, arranging a bridge loan, obtaining permits for construction, building works and refurbishment, securing tenants for the Premises, obtaining a mortgage after construction is complete and the Premises tenanted (the "Refinance Loan")  and managing future tenants and maintaining the Premises.

(ii)    The Managing Member is authorized to execute any and all documents on behalf of the Company necessary or appropriate in connection with the acquisition, financing, operation, management or development of the business and any property of the Company. The Managing Member may also appoint a President, Secretary, one or more Vice-Presidents or such other officers of the Company, with such powers, authority and responsibilities as shall be assigned to them by the Managing Member, or in lieu of a specific grant of authority by the Managing Member to an officer, it shall be presumed that such officer has the authority and power to represent and act on behalf of the Company in the same manner as an officer of a New York corporation with the same title. The Managing Member shall be the only member responsible for the development and operation of the Premises.

(iii)    If the Managing Member elects to hire an outside management company or individual(s) to manage the Premises in his place, the Managing Member shall send notice to the Owners with three (3) replacement options and the Owners shall respond with their choice of replacement within sixty (60) days of receiving said notice. A minimum of seventy-eight percent (78%) of the combined total of all the Members and the members of CSRE shall be required to choose said replacement.

(iv)    The following actions shall require the consent of the Members and the members of CSRE representing at least seventy-eight percent (78%) of the ownership of the Company in the aggregate:

(1)    Taking any additional loans relating to the Premises after receiving the Refinance Loan;

(2)    Changing the ownership interest in the Premises and or the Company; and/or re-assigning the Managing Member's authority over the Premises

(3)    Any additional construction at the Premises after the Refinance Loan has been obtained;

(4)    Selling the Premises.

In the event that INVESTORS LLC has not yet received a return of their total loans and/or capital contributions and CSRE did receive the full return of their total loan and/or capital contributions, then the foregoing decisions in this subsection shall be made only by a sixty-seven percent (67%) majority of only the Members (all the INVESTORS LLC members).

(b)    The terms of the management of the INVESTORS LLC are as follows:

(i)    The Members of INVESTORS LLC agree that the business and affairs of INVESTORS LLC shall be managed by Chaskiel Strulovitch as the Managing Director (referred to hereinafter also as the "Investors Manager") and the Investors Manager shall manage to the best of his capabilities.

(ii)    The Investors Manager is authorized to execute any and all documents on behalf of INVESTORS LLC necessary or appropriate in connection with the acquisition, financing, operation, management or development of the business and any property of INVESTORS LLC.

(iii)    Mr. Mici Oberlander shall be co-manager of INVESTORS LLC (the "Co-Manager"), and he shall have the same rights, responsibility and authority as the Investors Manager has in INVESTORS LLC, and his signature shall be binding on INVESTORS LLC for all intents and purposes equally as would the signature of the Investors Manager.

6.     **Indemnification**.

(a)     The Company shall indemnify and hold harmless the Managing Member(s). The Company shall indemnify and hold harmless, to the fullest extent permitted by law, each of such persons from and against any and all losses, claims, damages, liabilities, expenses (including reasonable legal fees and expenses), judgments, fines, settlements and other amounts arising from all claims, demands, actions, suits or proceedings in which such persons may be involved on behalf of the Company, or threatened to be involved, as a party or otherwise arising as a result of such person's status as a Managing Member of the Company, in his exercise of reasonable business judgment. The Company shall pay or reimburse, to the fullest extent allowed by law, in advance of the final disposition of the proceeding, the costs referred to above as they are incurred by the indemnified person in connection with any action to which this indemnity applies.

(b)     The indemnity rights and obligations of the parties under this section shall survive the termination of this Agreement and the dissolution of the Company to the extent that an indemnified person becomes involved in an action at such time.

(c)     The Managing Member shall be required to render a financial report to the Members quarterly each year reflecting the financial transactions and obligations of the Company and the status of loans outstanding, tenant payments and occupancy, and any other significant matters relevant to the management of the Premises and the Company. The Managing Member shall also make available to the Members all books and records of the company and his management activities upon their request.

7.     **Capital Contributions and Loans**.   The Owners agree that the cost of purchasing and developing the premises shall be **Five Hundred And Twenty Five Thousand Dollars ($525,000.00)** (the "Total Capital Requirement"). INVESTORS LLC shall make an initial loan and/or capital contribution in the amount of **One Hundred And Fifty Thousand Dollars ($150,000.00)** towards the Total Capital Requirement. The funds for INVESTORS LLC's initial loan/capital contribution shall be given by each of the partners in INVESTORS LLC in accordance with the amount listed on each partner's signature page annexed below and maintained by the Co-Manager, or such other person to be appointed for the purpose by the Co-Manager or by the Investors Manager. CSRE shall be responsible to use best efforts to obtain loans secured by the Premises for the balance of the Total Capital Requirement or any excess amount needed. No loan and/or capital contributions shall be returned to the Members of neither CSRE nor INVESTORS LLC except upon the Managing Member's written consent. No interest shall accrue or be payable with respect to any Member's loan. Beyond such required payment of loan or capital contribution as discussed above, any member or any other person may make advances or loans to the Company on such terms and conditions as such person agrees in writing with the Managing Member on behalf of the Company, but, as noted above, such loans shall not bear interest.

8.     **Payments and Distributions.**

(a)     Payments and distributions shall be allocated and/or paid to the **Owners as follows** after current operating expenses and payments to third parties including liabilities to banks or other third parties in the following order:

(i)     First, to repay all liens on and/or relating to the Premises, including, but not limited to, mortgages, loans, and promissory notes, owing to CSRE;

(ii)     Second, to Members in return of loans and/or capital contributions per Paragraph 7 above, pari passu; and

(iii)     Third, INVESTORS LLC and CSRE ratably in accordance with their Percentage Interests in the Company for distribution to the members of each such LLC as

designated on their signature page discussed above. For further clarification and to avoid any misunderstanding, it is further clarified here that the profit sharing ratio and percentage rights in assets to be distributed under this sub-paragraph and in ultimate liquidation of the Joint venture partnership shall be based on CSRE owning fifty-four percent (54%) of the Company and INVESTORS LLC owning forty-six percent (46%) of the Company, independent of any voting rights otherwise discussed herein nor anything else contained herein to the contrary notwithstanding. The further distribution to the members of each of the Owners shall be in accordance with the ownership and profit interests of each of the members of each such INVESTORS LLC independent of the ownership and profit ratio interests of the Owners in the Company.

(b)     Above distributions shall be made quarterly or more often at the times and in the amounts determined by the Managing Member giving consideration to his anticipated need for working capital to be retained by the Company. No distribution shall be made to the extent that it would be improper under the Act. Notwithstanding anything in this agreement to the contrary, any and all losses only up to the amount **One Hundred And Fifty Thousand Dollars ($150,000.00)** funded by INVESTORS LLC shall be borne by INVESTORS LLC.

9.     **Fiscal Year; Tax Reporting**.  The fiscal year of the Company for financial statement and income tax purposes shall end on December 31st of each year. The Managing Member shall cause to be prepared and timely filed all tax returns required to be filed for the Company (if any). Furthermore, it is hereby acknowledged by the parties to this agreement that since the Company is an LLC formed and operated in New York and as such is not subject to US Federal nor State income tax, therefore each of the members of the Company shall be responsible to report its share of the Company's taxable income and its components, and that the members of CSRE and of INVESTORS LLC shall be responsible for such income taxes.

10.     **Dissolution**.

(a)     The Company shall continue until the written consent of the members of INVESTORS LLC and CSRE representing at least seventy-eight percent (78%) of the ownership interest in the Company vote to dissolve the Company.

(b)     If the Company is wound up with a deficit capital account upon dissolution, its members shall have no obligation to make any additional capital contribution to cover that deficit capital, and the negative balance of such member's capital account shall not be considered a debt owed by the member to the Company but shall only reduce such member's distributive share upon dissolution, if any.

11.     **Entire Agreement; Amendments**.  This Agreement constitutes the entire operating agreement between Members, CSRE and INVESTORS LLC and the Company and may be amended and supplemented only by a written instrument signed by the managing member of each LLC on behalf of the LLC he manages.

12.     **Governing Law**.  This Agreement and its interpretation shall be governed by the laws of New York State, and the courts of New York State shall have initial jurisdiction over the Company and the interpretation and enforcement of this agreement, subject nevertheless by the terms and provisions of clause 13 (d) herein..

13.     **Miscellaneous**.  The following additional terms shall apply for purposes of this Agreement:

(a)     If there is any concern of *ribbis* [interest forbidden by Halacha] regarding any of the terms and conditions of this Agreement, then the condition will remain standing, according to the

Page 4

common *heter isska*, including any loans or investments obtained subsequent to the initial loans and investments from the Members

    (b)    The parties have seen and understood everything that is specified in this current Agreement, and have fully agreed to everything in this agreement, and the terms and conditions of this agreement supersede any prior terms of agreement between the parties as to the subject matter of this agreement.

    (c)    INVESTORS LLC has had the opportunity to examine the Premises, is familiar with the physical condition of the Premises, has checked all aspects of the transaction without relying on representations of the parties to this agreement, and has made an independent decision to invest hereunder and enter into this agreement. Except to the extent that a representation is made specifically elsewhere in this Agreement, CSRE has not made and does not make any representations as to the physical condition, expenses, operations, value of the land or buildings referred to here as the Premises, which might be pertinent to the purchase of the Premises or the execution of this Agreement, including, without limitation,

    (i)    The current or future real estate tax liability, assessment or valuation of the Premises;

    (ii)    The potential qualification of the Premises for any and all benefits conferred by federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated;

    (iii)    The compliance of the Premises, in its current or any future state, with applicable zoning ordinances and the ability to obtain a change in the zoning or a variance in respect to the Premises, noncompliance, if any, with said zoning ordinances;

    (iv)    The availability of any financing for the purchase, alteration, rehabilitation or operation of the Premises from any source, including, but not limited to, any state, city or federal government or institutional lender;

    (v)    The current or future use of the Premises;

    (vi)    The present and future condition and operating status of any and all machinery or equipment on the Premises and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation;

    (vii)    The ownership or state of title of any personal property on the Premises; and

    (viii)    The applicability or inapplicability of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; or

    (ix)    The compliance with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere in the Premises.

INVESTORS LLC hereby expressly acknowledges that no such representations have been made nor relied upon. CSRE is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Premises, made or furnished by any real estate broker, agent, employee, servant or other person representing or purporting to represent CSRE. All understandings and agreements heretofore between the parties are superseded by this Agreement, which alone fully and completely expresses the terms of this agreement.

(d)     In case of any doubt, question or other disagreement among the parties to this agreement about anything pertaining to this Agreement, all of the parties to the disagreement shall choose a third party that is acceptable to all of them as Arbitrator (the "Arbitrator") and ask for his ruling on point, and his ruling shall be accepted by all the parties to the disagreement. If, however, the parties do not reach agreement within forty-five (45) days as to who is to be the Arbitrator, then HaRav Avrohom Baruch Rosenberg of Monsey, New York shall choose the arbitrator for the parties and that Arbitrator's ruling shall be binding on all the parties. In any case, however, all the parties to this agreement agree not to bring any matter relating to this Agreement to a secular court for resolution unless instructed to do so by the Arbitrator or to enforce the Arbitrator's ruling.

14.     **Members purchase options**

(a)     If a member of INVESTORS LLC desires to sell his membership interests (the "Selling Member"), he shall give written notification to the INVESTORS LLC Co-Manager, or such other person to be appointed for the purpose by the Investors Manager or by the Co-Manager, (to be considered the "Purchasing Member") of his desire to sell his membership interests with the price that he would like to receive from the sale (the "Asking Price"). The Purchasing Member shall then have the right to offer to purchase the Selling Member's membership interests at the Asking Price. If the Purchasing Member does not want to buy the membership interests at the Asking Price, then the Selling Member may elect to sell his membership interests under the same terms and conditions to a third totally unrelated party acceptable to INVESTORS LLC (the "Third Party"). If the Selling Member can only find a Third Party willing to pay less than the Asking Price (the "Lower Price"), then he shall first offer to sell his membership interests to The Purchasing Member at the Lower Price and only sell to the Third Party if the Purchasing Member does not want to buy the membership interests at the Lower Price.

(b)     If a member of INVESTORS LLC wishes to transfer all or part of his interest in INVESTORS LLC by gift or sale to a relative of his, he shall be allowed to do so, unless a majority of the members of INVESTORS LLC object, paragraph 14(a) notwithstanding.

(c)     If the holders of sixty-seven percent (67%) of the membership interest of INVESTORS LLC desire to sell their membership interest in the Company, then CSRE may elect to

(i)     Purchase said membership interests at market value (with each holder of the membership interest receiving their share of the sale price, parri passu), or

(ii)     Sell the Premises and liquidate the Company, or

(iii)     Find other third parties interested in purchasing the interests of the Selling Members.

(d)     If CSRE desires to sell or assign its membership interest, it shall first offer INVESTORS LLC to sell or assign their membership interests at the same terms. If 65% of INVESTORS LLC agree to sell or assign their membership interests in conjunction with CSRE selling its membership interest, then CSRE may only sell or assign its membership interest if all INVESTORS LLC membership interests are sold as well as an integral part of the CSRE sale and at the same terms.

15.     **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be considered an original.

[Signature page follows]

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, have duly executed this Agreement as of the date and year first set forth above.

**MANAGING MEMBER:**

**106 KINGSTON LLC**

By: Chaskiel Strulovitch
Title: Manager

**MANAGING MEMBER:**

**CSRE LLC**

By: Chaskiel Strulovitch
Title: Manager

**MANAGING DIRECTOR:**

**KINGSTON OPERATIONS LLC**

By: Chaskiel Strulovitch
Title: Manager

## SCHEDULE A

| | |
|---|---|
| **Member:** | **CSRE LLC** |
| **Address:** | **116 Nostrand Avenue, Brooklyn, New York 11205** |
| **Capital Contribution:** | $_____0_____ |
| **Equity Loan:** | $_____0_____ |
| **Membership Interest in 106 KINGSTON LLC:** | **Fifty Four Percent (54%)** |

| | |
|---|---|
| **Member:** | **KINGSTON OPERATIONS LLC** |
| **Address:** | **116 Nostrand Avenue, Brooklyn, New York 11205** |
| **Capital Contribution:** | $_____0_____ |
| **Equity Loan** | **One Hundred And Fifty Thousand Dollars ($150,000.00)** |
| **Membership Interest in 106 KINGSTON LLC:** | **Forty Six Percent (46%)** |

**THE DETAILS OF EACH OF THE MEMBERS OF INVESTORS LLC ARE TO BE MAINTAINED IN ACORDANCE WITH THE REQUIRMENTS OF CLAUSE 4 ABOVE AND ANNEXED HERETO IN SCHEDULE B ON INDIVIDUAL SIGNATURE PAGES**

ACKNOWLEGED BY:

| MANAGING MEMBER: | MANAGING MEMBER: | MANAGING DIRECTOR: |
|---|---|---|
| 106 KINGSTON LLC | CSRE LLC | KINGSTON OPERATIONS LLC |
| By: Chaskiel Strulovitch | By: Chaskiel Strulovitch | By: Chaskiel Strulovitch |
| Title: Manager | Title: Manager | Title: Manager |

## SCHEDULE B

I, the undersigned, an investor in KINGSTON OPERATIONS LLC with the sum set forth below, intending to be legally bound by the terms of the aforesaid Agreement, hereby acknowledge my consent thereto as of the date and year first set forth above.

By: Meir Bamberger


Partner of:                     **KINGSTON OPERATIONS LLC**

Address:                        **32 Avnei Nezer St, Modi'in Ilit, 7181032, Israel**

Capital Contribution:           **$_____0_____**

Equity Loan:                    **Six Thousand  Dollars ($6,000.00)**

Membership Initial Interest in
**106 KINGSTON LLC:**           **One and Eight Tenths of One Percent (1.8%)**


ACKNOWLEGED BY:

MANAGING MEMBER:        MANAGING MEMBER:        MANAGING DIRECTOR:

106 KINGSTON LLC        CSRE LLC                KINGSTON
                                                OPERATIONS LLC

By: Chaskiel Strulovitch   By: Chaskiel Strulovitch   By: Chaskiel Strulovitch
Title: Manager             Title: Manager             Title: Manager