# Exhibit 1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012112901059001001EE253

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 28 |
|---|---|---|
| **Document ID: 2012112901059001** | Document Date: 11-27-2012 | Preparation Date: 11-30-2012 |
| Document Type: MORTGAGE | | |
| Document Page Count: 27 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| INFINITY LAND SERVICES LLC IL5794 **PICKUP** AS AGENT FOR FIDELITY NATIONAL TITLE INSURANCE CO 974 EAST 27TH STREET BROOKLYN, NY 11210 718-338-4200 | HOUTEX LLC 55 NORTHERN BOULEVARD, SUITE 202 GREAT NECK, NY 11021 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1795 | 41 | Entire Lot | 74 VAN BUREN STREET |
| | **Property Type:** OTHER | | | |

## CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ___ Page _____ *or* File Number _____

## PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 74 VAN BUREN LLC 223 RUTLEDGE STREET BROOKLYN, NY 11211 | HOUTEX LLC 55 NORTHERN BOULEVARD, SUITE 202 GREAT NECK, NY 11021 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 320,000.00 | | | |
| Taxable Mortgage Amount: | $ | 320,000.00 | NYC Real Property Transfer Tax: | $ | 0.00 |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,600.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,200.00 | | $ | 0.00 |
| Spec (Additional): | $ | 800.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 960.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 6,560.00 | | | |
| Recording Fee: | $ | 172.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          12-10-2012 10:07
City Register File No.(CRFN):
                               **2012000482081**

*Annette M. Hill*

*City Register Official Signature*

## Mortgage, Security Agreement and Assignment of Rents and Leases

### between

## 74 VAN BUREN LLC (the Mortgagor)

### and

## HOUTEX LLC
## (the Mortgagee)

Block: 1795

Lot:   41

County:     Kings

Address:     74 Van Buren Street, Brooklyn, New York

RECORD AND RETURN TO:

HOUTEX LLC
55 Northern Boulevard
Suite 202
Great Neck, NY 11021

Premises described herein are
not new or to be improved by
a one to six family dwelling.

## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS AND LEASES

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS AND LEASES ("Mortgage"), made the 27th day of November, 2012 between 74 Van Buren LLC, a New York Limited Liability Company, having an office at 223 Rutledge Street, Brooklyn, New York 11211 (the "Mortgagor") and HOUTEX LLC, a New York Limited Liability Company, having an office at 55 Northern Boulevard, Suite 202, Great Neck, New York 11021 (the "Mortgagee"),

WITNESSETH, that to secure the payment of an indebtedness in the sum of THREE HUNDRED TWENTY THOUSAND and 00/100 DOLLARS ($320,000.00), lawful money of the United States, or so much thereof as may be advanced, to be paid according to a certain bond, note or obligation bearing even date herewith (such instrument, as the same may be hereafter amended, modified or extended, being hereinafter called the "Note") and to secure the payment of interest and any other sums payable pursuant to the Note or this Mortgage and the performance and observance of all the provisions of the Note, and this Mortgage, the Mortgagor hereby mortgages to the Mortgagee:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected or to be erected (hereinafter called the "Premises"), commonly known as 74 Van Buren Street, Brooklyn, New York and found in Block 1795 Lot 41 and more particularly bounded and described in Schedule A annexed hereto and made a part hereof;

TOGETHER with all right, title and interest, if any, of the Mortgagor of, in and to the land lying in the streets, roads or avenues, open or proposed, in front of and adjoining the Premises and of, in and to any strips or gores of land adjoining the Premises;

TOGETHER, ALSO, with all fixtures, chattels and articles of personal property now or hereafter attached to or located in or upon the Premises, and used or usable in connection with any present or future operation or letting of the Premises or the activities at any time conducted therein (hereinafter called "Building Equipment"), including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other machinery, appliances, fittings, furniture, furnishings and fixtures of every kind used in the operation of the buildings standing or hereafter erected on the Premises, together with any and all replacements thereof and additions thereto, and all right, title and interest of the Mortgagor in and to any Building Equipment which may be subject to any security

454571;5

agreements, as defined in subdivision (1)(1) of Section 9-105 of the Uniform Commercial Code of the State of New York (hereinafter called "Security Agreements"), superior in lien to the lien of this Mortgage; it being understood and agreed that all Building Equipment is part and parcel of the Premises and appropriated to the use thereof and, whether affixed or annexed to the Premises or not, shall, for the purpose of this Mortgage, be deemed conclusively to be real estate and mortgaged hereby; and the Mortgagor agrees to execute and deliver, from time to time, such further instruments (including further Security Agreements) as may be requested by the Mortgagee to confirm the lien of this Mortgage on any Building Equipment;

TOGETHER, ALSO, with any and all awards, including interest thereon, heretofore and hereafter made to the Mortgagor for the taking by eminent domain of the whole or any part of the Premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the Mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the Mortgagor hereby agrees, upon request, to make, execute and deliver any and all instruments sufficient for the purpose of confirming such assignment of said awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever;

TOGETHER, ALSO, with all the Mortgagor's interest in all agreements, contracts, certificates, instruments and other documents, now or hereafter entered into, pertaining to the construction, operation or management of any structure or building now or hereafter erected on the Premises;

TOGETHER, ALSO, with all the Mortgagor's interest in all franchises, permits, licenses and rights therein and thereto respecting the use, occupation or operation of the Premises;

TOGETHER, ALSO, with all the Mortgagor's interest in all easements, rights-of-way, and appurtenances whatsoever in any way belonging, relating or appurtenant to the Premises, whether now owned or hereafter acquired by Mortgagor;

TOGETHER, ALSO, with all of the Mortgagor's interest in all unearned premiums accrued, accruing or to accrue under any and all insurance policies affecting the Premises and all insurance proceeds paid or payable with respect to the Premises;

TOGETHER, ALSO, with all of the Mortgagor's interest in all contract rights, security deposits, tradenames, trademarks, franchises, warranties, refunds or rebates of taxes or assessments upon the Premises, whether paid or to be paid, and other intangible property

454571;5                            −2−

owned by the Mortgagor and used or useful in connection with the operation, use and occupancy of the Premises;

TOGETHER, ALSO, with the Mortgagor's rights further to encumber the Premises for debt.

AND the Mortgagor covenants with the Mortgagee as follows:

1. That the Mortgagor will pay the indebtedness as hereinbefore provided.

2.     (a)     That the Mortgagor, at its sole cost and expense, shall maintain the following insurance:

(i)     Insurance on any building and any other improvements covered by the lien of this Mortgage (hereinafter sometimes collectively referred to as the "Building") and the Building Equipment against loss or damage by fire and against loss or damage by other risks now or hereafter embraced by "All-Risks" insurance, so called, in an amount sufficient to prevent the Mortgagor from becoming a co-insurer under the applicable policies but, in any event, not less than 100% of the "full replacement cost" thereof, without deduction for depreciation, and with a replacement cost endorsement, agreed amount endorsement and ordinance or law coverage  endorsement satisfactory to the Mortgagee. As used herein, "full replacement cost" shall mean (A) with reference to the Building, the cost of replacing the Building, exclusive of the cost of excavations, foundations and footings below the lowest basement floor, and (B) with reference to the Building Equipment, the cost of replacing the Building Equipment, and in either case, without deduction for the physical depreciation thereof.  Such full replacement cost shall be determined from time to time (but not more often than once every twenty-four months) at the request of the Mortgagee by an insurer or by an appraiser, architect or contractor designated by the Mortgagee and paid by the Mortgagor.  No omission on the part of the Mortgagee to request any such determination shall relieve the Mortgagor of any of its obligations under this Article 2.

(ii)     Commercial general liability insurance (with contractual liability on an occurrence basis and including blanket contractual liability, completed operations and personal injury coverage) against claims for bodily injury, death or property damage occurring on, in or about the Premises, such insurance to afford protection, during the term of this Mortgage, in such amounts as the Mortgagee may from time to time require.

(iii)    Insurance against loss or damage from (A) leakage of sprinkler systems and (B) explosion of steam boilers, air conditioning equipment, pressure vessels or similar apparatus now or hereafter installed in the Building, in such amounts as the Mortgagee shall from time to time require.

(iv)    Rent and/or business interruption insurance for loss occasioned by the perils commonly insured in the "All Risks" policy, so-called, in an amount not less than one year's gross income from the Premises plus the annual "Taxes" (as defined in Article 5(b) hereof) thereon.

(v)    When all or any portion of the Premises is located within a flood zone or area designated as subject to flood by the Federal Insurance Administration, Department of Housing and Urban Development or, if such flood insurance is otherwise required by any Federal, State or local rule, law, statute, regulation or ordinance, flood insurance on the Building in an amount equal to the lesser of "full replacement cost" thereof or the maximum amount of insurance obtainable.

(vi)    Worker's compensation and employer's liability insurance, subject to statutory limitations or  better, in regard to work or other operations on, about or in connection with the Premises.

(vii)    When required by the Mortgagee, such other insurance in such amounts as may from time to time be required by Mortgagee against other insurable hazards which at the time are commonly insured against and generally available in the case of premises similarly situated, due regard being or to be given, to the height and type of the Building, its construction, use and occupancy.

(b)    That the Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless:

(i)    the policies are submitted to the Mortgagee for its prior approval;

(ii)    the insurers thereunder and the terms thereof are acceptable to the Mortgagee in accordance with the requirements of this Article; and

(iii)    the Mortgagee is included therein as mortgagee and/or loss payee, with loss payable as provided in this Article.

454571;5                                        –4–

The Mortgagor shall immediately notify the Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to the Mortgagee the policy or policies of such insurance.

(c)     That all insurance provided for in this Article 2 shall be effected under valid and enforceable policies issued by financially responsible insurers having a general policyholder's and financial rating of not less than A/X, as rated in the most currently available Best's Insurance Reports, and incorporated under the Laws of the United States or any state thereof and authorized to do business in the State of New York and which are approved in writing by the Mortgagee.  It is further agreed that the aggregate amount of coverage underwritten by any insurer in conformance with the provisions of this Mortgage shall not exceed 10% of that insurer's surplus to policyholders.  Upon the execution of this Mortgage and thereafter, not less than thirty (30) days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this Article 2 or any other Article of this Mortgage, originals or certified copies of the policies bearing notations evidencing the payment of not less than one year's premiums, or accompanied by other evidence satisfactory to the Mortgagee of such payment, shall be assigned and delivered by the Mortgagor to the Mortgagee.

(d)     That all policies of insurance required by clauses (i), (iii), (iv), (v) and, if appropriate, (vii) of subdivision (a) of this Article 2 shall contain the standard non-contributory mortgagee endorsement in favor of the Mortgagee (entitling the Mortgagee to collect any and all proceeds payable under such insurance), and shall provide that the Mortgagee shall have the sole and exclusive right to adjust any insurance awards.  All policies of insurance required by clause (ii) of subdivision (a) of this Article 2 shall name the Mortgagee as an additional insured.  All insurance maintained by the Mortgagor shall be satisfactory in all respects to the Mortgagee and shall provide that (i) no cancellation, material change or reduction in the coverage or amounts thereof shall be effective until at least thirty (30) days after receipt by the Mortgagee of written notice thereof, and (ii) all losses shall be payable notwithstanding any act or negligence of the Mortgagor or its agents or employees which might, absent such agreement, result in a forfeiture of all or part of any insurance payment, and notwithstanding (A) the occupation or use of the Premises for purposes more hazardous than permitted by the terms of the policy, (B) any foreclosure or other action or proceeding taken pursuant to any provision of this Mortgage, or (C) any change in title or ownership of the Premises or any part thereof.  If binders for any of the insurance required by this Article 2 were delivered upon the execution of this Mortgage, originals or certified copies of the policies of insurance to be issued pursuant to such binders shall be delivered to the Mortgagee within thirty (30) days from the date hereof.

454571;5                                    —5—

(e)     That, if the Mortgagor shall fail to procure, pay for or deliver to the Mortgagee any policy or policies of insurance and/or renewals thereof as in this Article 2 required, the Mortgagee may, at its option, but shall be under no obligation to do so, effect such insurance and pay the premium therefor, and the Mortgagor will repay to the Mortgagee on demand any premiums so paid, with interest thereon at the rate set forth in Article 4 hereof.  Any amount so expended by the Mortgagee, with interest thereon, shall be secured by the lien of this Mortgage.  The Mortgagor hereby waives any claim against the Mortgagee by reason of the failure of the Mortgagee to (i) notify the Mortgagor of the cancellation or non-renewal of any insurance required by this Article 2, or (ii) effect any such insurance.  The foregoing waiver shall apply notwithstanding that the Mortgagee has elected to require the Mortgagor to escrow insurance premiums with the Mortgagee pursuant to Article 5(b) hereof.

(f)     That, notwithstanding the provisions of Subdivision 4 of Section 254 of the Real Property Law, the Mortgagee shall be entitled to retain and apply the proceeds of any and all insurance required by clauses (i), (iii), (iv), (v) and, if appropriate, (vii) of subdivision (a) of this Article 2 to the payment of the indebtedness secured hereby in the inverse order of its maturity.

(g)     That, in the event of a foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of the Mortgagor, including any rights to the proceeds of insurance and to unearned premiums, in and to all policies of insurance required by this Article.

3.     That no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished or materially altered without the prior written consent of the Mortgagee, except that the Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such Building Equipment as from time to time may become worn out or obsolete, provided that either (a) simultaneously with or prior to such removal, any such equipment shall be replaced with other equipment of a value at least equal to that of the replaced equipment and free from any Security Agreement, and by such removal and replacement the Mortgagor shall be deemed to have subjected such Building Equipment to the lien of this Mortgage, or (b) any net cash proceeds received from such disposition shall be paid over promptly to the Mortgagee to be applied to the last installments due on the indebtedness secured, without any charge for prepayment.

4.     That in the event of any default in the performance of any of the Mortgagor's covenants or agreements herein, the Mortgagee may, at the option of the Mortgagee, perform the same and the cost thereof, with interest at twenty-four (24%) percent per annum (but in no event in excess of the maximum rate allowed by law to be charged to

454571;5                                      —6—

the Mortgagor), shall immediately be due from the Mortgagor to the Mortgagee and secured by this Mortgage.  If the principal sum of the Note shall not be paid at its maturity, or on its acceleration pursuant to Article 18 hereof, interest thereon shall thereafter be computed and paid at the said rate per annum specified in this Article 4 until the entire principal balance of the Note is repaid to the Mortgagee in full.  It is the express intention of the Mortgagor that the unpaid principal balance of the Note shall continue to bear interest at the said rate per annum specified in this Article 4, notwithstanding the entry of a judgment to foreclose this Mortgage and/or on the Note and that, to the extent permitted by applicable law, interest on the amount of any such judgment shall be computed and paid at the said rate per annum specified in this Article 4.

5.      (a)      That the Mortgagor will pay all taxes, assessments, water rates, sewer rents and other charges now or hereafter levied against the Premises or any part thereof, and also any and all license fees or similar charges which may be imposed by the municipality in which the Premises are situated for the use of walks, chutes, areas and other space beyond the lot line and on or abutting the public sidewalks in front of or adjoining the Premises, together with any penalties or interest on any of the foregoing, and in default thereof the Mortgagee may pay the same and the Mortgagor will repay the same with interest thereon at the rate per annum specified in Article 4 hereof and the same shall be secured by the lien of this Mortgage; that upon request of the Mortgagee, the Mortgagor will exhibit to the Mortgagee receipts for the payment of all items specified in this Article prior to the date when the same shall become delinquent.

        (b)      That the Mortgagee may, at its option to be exercised by twenty (20) days written notice to the Mortgagor, require that the Mortgagor deposit with the Mortgagee, on the first day of each and every month, simultaneously with the payment of the monthly installments of principal and/or interest then due under the Note, a sum equal to one-twelfth (1/12th) of the annual real estate taxes, assessments, water rates, sewer rents and other charges specified in this Article 5 (hereinafter collectively referred to as "Taxes") plus one-twelfth (1/12th) of the premiums required to keep in force for one year the insurance specified in Article 2 hereof.  The Mortgagor shall also deposit with the Mortgagee, if such deposits shall be so required, at least thirty (30) days prior to the due date of each installment of such Taxes and each insurance premium, such additional amount as may be determined by the Mortgagee in order to provide the Mortgagee with funds sufficient to pay such installment or premium.  It is the intention of the parties that, if such deposits shall be so required, the Mortgagor shall deposit with the Mortgagee the necessary funds so that the Mortgagee, at all times until the full payment and satisfaction of this Mortgage, shall have on hand sufficient deposits covering the accrued amounts of such Taxes and insurance premiums.  If permitted by law, the said funds shall bear no interest and may be commingled with other funds of the Mortgagee.  The Mortgagee shall have no obligation to use said funds to pay an installment of Taxes prior to the last day on

454571;5                                    —7—

which payment thereof may be made without penalty or interest and until receipt by the Mortgagee of a bill for such Taxes or to pay an insurance premium prior to the due date thereof and receipt by the Mortgagee of a bill for such premium.  If the whole of said *principal sum and interest shall be declared due and payable by the Mortgagee pursuant to Article 18 hereof*, all such deposits may, at the option of the Mortgagee, be applied in reduction of said principal sum and/or interest, as the Mortgagee shall elect.  Upon an assignment of this Mortgage, the Mortgagee shall have the right to pay over the balance of such deposits in its possession to the assignee and the Mortgagee shall thereupon be completely released from all liability with respect to such deposits and the Mortgagor or owner of the Premises shall look solely to the assignee or transferee in reference thereto.  This provision shall apply to  every transfer of such deposits to a new assignee.  Upon full payment and satisfaction of this Mortgage or at any prior time, at the election of the Mortgagee, the balance of the deposits in its possession shall be paid over to the record owner of the Premises and no other party shall have any right or claim thereto in any event.  The Mortgagor agrees to make the aforesaid deposits with such servicer or financial institution as the Mortgagee shall from time to time designate and to deliver to the Mortgagee, or to any such servicer or financial institution, any and all bills for Taxes promptly upon the Mortgagor's receipt thereof.

6.     That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

7.     That the Mortgagor, within five (5) days upon request in person or within ten (10) days upon request by mail, will furnish a written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the mortgage debt.

8.     That notice and demand or request may be in writing and may be served in person or by mail.

9.     That the Mortgagor warrants the title to the Premises.

10.     That in case of a foreclosure sale, the Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel.

11.     That if any action or proceeding be commenced (including an action to foreclose this Mortgage or to collect the debt secured hereby), in which the Mortgagee becomes a party or participates, by reason of being the holder of this Mortgage or the debt secured hereby, all sums paid by the Mortgagee for the expense of so becoming a party or partici-pating (including reasonable counsel fees) shall on notice and demand be paid by the Mortgagor, together with interest thereon at the rate per annum specified in Article 4

454571;5                                  –8–

hereof, and shall be a lien on the Premises, prior to any right or title to, interest in, or claim upon, the Premises subordinate to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.  In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall apply in addition to the foregoing.

12.     That the Mortgagor will maintain the Premises and the Building Equipment in good condition and repair, will not commit or suffer any waste thereof or the conduct of any nuisance or unlawful occupation or business on, or use of, the Premises, and will comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises; that the Mortgagor will promptly repair, restore, replace or rebuild any part of the Premises or the Building Equipment now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in Article 13; and that the Mortgagor will not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions, limiting or defining the uses which may be made of the Premises, or any part thereof.

13.     That notwithstanding any taking by eminent domain or other governmental action causing injury to, or decrease in value of, the Premises and creating a right to compensation therefor, including, without limitation, the change of the  grade of any street, the Mortgagor shall continue to pay interest, computed at the rate reserved in the Note, on the entire unpaid principal amount thereof, until the award or compensation for such taking or other action shall have been actually received by the Mortgagee and such award or compensation need not be applied by the Mortgagee in reduction of principal but may be applied in such proportions and priority as the Mortgagee, in the Mortgagee's sole discretion, may elect, to the payment of principal, interest or other sums secured by this Mortgage and/or to payment to the Mortgagor, on such terms as the Mortgagee may specify, for the sole purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking or other action; that if, prior to the receipt by the Mortgagee of such award or compensation, the Premises shall have been sold on foreclosure of this Mortgage, the Mortgagee shall have the right to receive said award or compensation to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, together with reasonable counsel fees and the costs and disbursements incurred by the Mortgagee in connection with the collection of such award or compensation.

14.     That the Mortgagee and any persons authorized by the Mortgagee shall have the right to enter and inspect the Premises at all reasonable times; and that if, at any time after default by the Mortgagor in the performance of any of the terms, covenants or provisions of this Mortgage or of the Note, the management or maintenance of the Premises shall be determined by the Mortgagee to be unsatisfactory, the Mortgagor shall employ, for the duration of such default, as managing agent of the Premises, such person or firm as from time to time shall be approved by the Mortgagee.

15.     That the Mortgagor shall furnish to the Mortgagee as promptly as reasonably possible, such financial or other information with respect to the Mortgagor, any of the Guarantors or the operation of the Premises as the Mortgagee may reasonably request.

16.     That the Mortgagor hereby assigns to the Mortgagee, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to the Mortgagee an executed counterpart of each such lease or other document.  Nothing contained in the foregoing sentence shall be construed to bind the Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on the Mortgagee (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Premises), except that the Mortgagee shall be accountable for any money actually received pursuant to such assignment.  The Mortgagor hereby further grants to the Mortgagee the right (a) to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits; (b) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Mortgagee; (c) to let the Premises, or any part thereof, and (d) to apply said rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness.  Such assignment and grant shall continue in effect until the indebtedness secured by this Mortgage is paid, the execution of this Mortgage constituting and evidencing the irrevocable consent of the Mortgagor to the entry upon and taking possession of the Premises by the Mortgagee pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The Mortgagee, however, grants to the Mortgagor a license to collect and receive the rents, issues and profits of the Premises until the occurrence of a default by the Mortgagor under any of the covenants, conditions or agreements contained in this Mortgage.  The Mortgagor agrees to hold said rents, issues and profits as a trust fund for the benefit of the Mortgagee and to apply the same as required by the Mortgagee in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, water

454571;5                                        –10–

rates, sewer rents and carrying charges becoming due against the Premises. Such license of the Mortgagor to collect and receive said rents, issues and profits may be revoked by the Mortgagee upon any such default by the Mortgagor without notice to the Mortgagor of such revocation. In the event of any default under this Mortgage, the Mortgagor will pay monthly in advance to the Mortgagee, on its entry into possession pursuant to the foregoing grant, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment will vacate and surrender the possession of the Premises or such part thereof, as the case may be, to the Mortgagee or to such receiver, and, in default thereof, may be evicted by summary proceedings.

17.     (a)     That the Mortgagor shall not enter into any lease for all or any portion of the Premises without the prior written consent of the Mortgagee.

(b)     That the Mortgagor has no right or power, as against the Mortgagee without its prior written consent, to cancel, abridge or otherwise modify the leases or subleases of the Premises or any of the terms, provisions or covenants thereof or to accept prepayments of installments of rent to become due thereunder and the Mortgagor shall not do so without such consent. This agreement, insofar as it affects any lease or sublease which is not primarily for the residential purposes of the owner of the leasehold estate and which, at the date hereof, has an unexpired term of not less than five (5) years, is made with reference to Section 291-f of the Real Property Law. Upon notice and demand, the Mortgagor will, from time to time, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to the Mortgagee, in form satisfactory to the Mortgagee, one or more separate assignments (confirmatory of the general assignment provided in Article 16 hereof) of the lessor's interest in any lease or sublease now or hereafter affecting the whole or any part of the Premises, or one or more agreements pursuant to said Section 291-f, restricting the Mortgagor's right or power, as against the Mortgagee, without its consent, to cancel, abridge or otherwise modify, or accept prepayments of installments of rent to become due under, any lease or sublease hereafter in existence, which is of the character described in the second sentence of this Article. The Mortgagor shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation and recording of any such assignment or agreement. With respect to any lease referred to in this Article, or which at any time is covered by any such agreement or any such assignment of lessor's interest in such lease, the Mortgagor will (i) fulfill or perform each and every condition and covenant of the same to be fulfilled or performed by the landlord thereunder, (ii) give prompt notice to the Mortgagee of any notice of default by the landlord thereunder received by the Mortgagor together with a complete copy of any such notice, and (iii) enforce, short of

termination thereof, the performance or observance of each and every covenant and condition thereof by the lessee thereunder to be performed or observed.

18.      That the whole of said principal sum and the interest shall become due at the option of the Mortgagee:  (a) after default in the payment of any installment of principal or interest for five (5) days; or (b) after default in the payment of any tax, water rate, sewer rent, assessment or vault license fee for twenty (20) days after the same first becomes due and payable, it being understood and agreed that an assessment which has been made payable in installments at the application of the Mortgagor or any lessee of the Premises shall, nevertheless, for the purposes of this clause, be deemed due and payable in its entirety on the date the first installment becomes due or payable or a lien; or if the Mortgagor fails to furnish the Mortgagee with receipted tax bills or other proof of payment of the aforesaid items by no later than the dates on which such items must be paid so as not to constitute a default hereunder; or (c) after default after notice and demand, either in assigning and delivering the policies of insurance herein described or referred to, or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinbefore provided; or (d) upon the actual or threatened waste, removal or demolition of any building or other property on the Premises, except as permitted by Article 3; or (e) upon assignment by the Mortgagor of the whole or any part of the rents, issues or profits arising from the  Premises to any person without the written consent of the Mortgagee or if, without such consent, the Mortgagor shall further encumber the Premises for debt; or (f) if the buildings on the Premises are not maintained in reasonably good repair; or (g) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within three months from the issuance thereof; or (h) if, on application of the Mortgagee, two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the Premises; or (i) after thirty (30) days' notice to the Mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes, or the manner of collecting such taxes and imposing a tax, either directly or indirectly, on this Mortgage or the Note; or (j) if the Mortgagor shall fail to make payment of any other sums required to be paid hereunder within the period required by specific provision of this Mortgage or, if no such period is so provided, by not later than ten (10) days after written notice; or (k) if the Mortgagor shall fail to comply with any other covenants or conditions contained in this Mortgage and, except with respect to failure to pay money, such failure shall continue unremedied for the period within which performance is required to be made by specific provision of this Mortgage, or, if no such period is so provided, for a period of ten (10) days after written notice thereof shall have been given by the Mortgagee or, with respect to any such default which shall be of such nature that it cannot reasonably be cured or

454571;5                                          –12–

remedied within ten (10) days, if the Mortgagor shall not promptly commence and exercise due diligence and continuous effort to remedy the same; or (1) if the Mortgagor or a Guarantor shall: (i) admit in writing its inability to pay its debts generally as they become due; (ii) file a petition in bankruptcy or a petition to take advantage of any insolvency act; (iii) make an assignment for the benefit of creditors; (iv) consent to, or acquiesce in, the appointment of a receiver, liquidator or trustee of itself or of the whole or any substantial part of its properties or assets; (v) file a petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under the federal bankruptcy laws or any other applicable law; or (m) (i) if, without the Mortgagor's or a Guarantor's as the case may be, consent or acquiescence, a court of competent jurisdiction shall enter an order, judgment or decree appointing a receiver, liquidator, or trustee of the Mortgagor or a Guarantor, or of the whole or any substantial part of the property or assets of the Mortgagor or such Guarantor, and such order, judgment or decree shall remain unvacated, or not set aside, or unstayed for thirty (30) days, or (ii) if a petition shall be filed against the Mortgagor or a Guarantor seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the federal bankruptcy laws or any other applicable law and such petition shall remain undismissed for thirty (30) days, or (iii) if, under the provisions of any other law for the relief or aid of debtors, any court of competent jurisdiction shall assume custody or control of the Mortgagor or a Guarantor or of the whole or any substantial part of its property or assets, and such custody or control shall remain unterminated or unstayed for thirty (30) days; or (n) if judgment for One Hundred Thousand ($100,000) Dollars or more shall be rendered against the Mortgagor or a Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from the entry thereof; or (o) if any representation, warranty or statement contained herein or in any writing delivered to the Mortgagee simultaneously with the execution and delivery hereof, shall prove to be incorrect in any material respect; or (p) if, without the prior written consent of the Mortgagee, (i) the Premises or any portion thereof or interest therein shall be sold or otherwise transferred by the Mortgagor, or (ii) if the Mortgagor or a Guarantor shall be a corporation, a controlling amount of voting stock of the Mortgagor or such Guarantor shall be sold or otherwise transferred or pledged, hypothecated or otherwise transferred as security for debt, or (iii) if the Mortgagor or a Guarantor shall be a partnership, joint venture, limited liability company, syndicate or other group, all or any portion of the interest of any general partner or member of the Mortgagor or such Guarantor shall be sold or otherwise transferred or pledged, hypothecated or otherwise transferred as security for debt, or (iv) any mortgage lien other than the lien of this Mortgage or any other mortgage in favor of the Mortgagee shall be placed on the Premises; or (q) if the Mortgagor shall fail to pay, within any applicable grace or cure period, any other sum now or hereafter owing by the Mortgagor to the Mortgagee; or (r) if the Mortgagor shall fail to comply with any term, covenant or condition contained in any other mortgage encumbering the Premises now or hereafter held by the Mortgagee or

contained in the note secured thereby; or (s) if, in the opinion of the Mortgagee, a material adverse change shall occur in the financial condition of the Mortgagor or of any Guarantor; or (t) if a default shall occur under any guaranty executed by a Guarantor with respect to the indebtedness of the Mortgagor to the Mortgagee; or (u) if the Mortgagor or any Guarantor shall fail to comply with any term, covenant or condition contained in that certain Environmental Indemnity, dated November 21, 2012, executed and delivered by Mortgagor and Guarantor to the Mortgagee.

19.     That the Mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement and will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

20.     That any payment made in accordance with the terms of this Mortgage by any person at any time liable for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage, or by any subsequent owner of the Premises, or by any other person whose interest in the Premises might be prejudiced in the event of a failure to make such payment, or by any stockholder, member, officer or director of a corporation and/or limited liability company which at any time may be liable for such payment or may own or have such an interest in the Premises, shall be deemed, as between the Mortgagee and all persons who at any time may be liable as aforesaid or may own the Premises, to have been made on behalf of all such persons.

21.     That any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagor; that neither the Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of the Mortgagee to comply with any request of the Mortgagor, or of any other person so obligated, to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or any obligations secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Premises and the Mortgagee extending the time of payment or modifying the terms of the Note or this Mortgage without first having obtained the consent of the Mortgagor or such other person, and in the latter event, the Mortgagor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Mortgagee; that, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate lien on the Premises, the Mortgagee may release the obligation of anyone at any time liable for any of the indebtedness secured by this Mortgage or any part of the security held for the indebtedness without, as to the security or the remainder thereof, in anywise impairing or affecting the lien hereof or the priority thereof over any subordinate encumbrance; and that the Mortgagee may resort for the payment of the indebtedness secured hereby to any other security therefor held by the Mortgagee in such order and manner as the Mortgagee may elect.

22.     (a)     That if at any time the United States of America, any state thereof or any governmental subdivision of such state, having jurisdiction, shall require internal revenue stamps to be affixed to the Note, or other tax paid on or in connection therewith, the Mortgagor will pay the same with any interest or penalties imposed in connection therewith.

        (b)     (i)     That if, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage falls within the ambit of Section 256 of the Tax Law of the State of New York, then the Mortgagee reserves the right, in its sole and absolute discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the mortgage indebtedness secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at

454571;5                                  −15−

the rate(s) provided in the Note, plus any disbursements made to protect the security of this Mortgage, with interest on such disbursements at the rate provided in Article 4 of this Mortgage, plus any such other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax.  Any election by the Mortgagee to so reduce the mortgage indebtedness secured hereby shall in no event be deemed a release, waiver or discharge by the Mortgagee of the Mortgagor's obligation to pay or reimburse the Mortgagee for such sums and such obligation shall continue unimpaired and shall be recourse obligations of the Mortgagor and any Guarantor, regardless of any other pro-visions set forth herein, in the Note or in any guaranty of the indebtedness secured hereby that may limit recourse against the Mortgagor or anyone else.

(ii)  That it is further understood and agreed that any sums, including, without limitation, any prepayment penalties, late charges or liquidated damages, that may become due and payable pursuant to the terms of the Note and/or this Mortgage and that are in the nature of interest shall, for the purpose of determining the amount of mortgage recording tax due and payable on this Mortgage, be considered as additional interest, whether or not so denominated, and such sums shall be secured by the lien of this Mortgage to the fullest extent possible without causing this Mortgage to be covered by Section 256 of the Tax Law, shall not be deemed principal and shall not accrue any interest thereon.

23.    (a)    That this Mortgage shall be deemed a Security Agreement as defined in the Uniform Commercial Code of the State of New York  and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be (i) as prescribed herein, (ii) by general law, or (iii) as to such part of the security which is also reflected in a financing statement filed by the Mortgagee, by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Mortgagee's sole election.  The filing of such a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this declaration and hereby stated intention of the parties hereto, that all items of Building Equipment and other property used in connection with the production of income from the Premises (furniture only excepted) or adapted for use therein and/or which is described or reflected in this Mortgage are, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be, regarded as part of the real estate irrespective of whether or not (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain equipment items capable of being thus identified in a recital contained herein or in any list filed with the Mortgagee or (iii) any such item is referred to or reflected in any such financing statement so filed at any time.  Similarly, the mention in any such financing statement of (1) the rights in or the proceeds of any fire and/or hazard insurance policy,

(2) any award in eminent domain proceedings for a taking or for loss of value or (3) the debtor's interest as lessor in any present or future lease or rights to income growing out of the use or occupancy of the Premises, whether pursuant to a lease or otherwise, shall never be construed as in any way altering any of the rights of the Mortgagee as determined by this instrument or impugning the priority of the Mortgagee's lien granted hereby or by any other recorded document, but such mention in the financing statement is declared to be for the protection of the Mortgagee in the event any court or judge shall at any time hold with respect to (1), (2) or (3) that notice of the Mortgagee's priority of interest, to be effective against a particular class of persons, including but not limited to the Federal government and any subdivisions or entity of the Federal government, must be filed in the Uniform Commercial Code records.

(b)     That the Mortgagor hereby authorizes the Mortgagee, without the signature of the Mortgagor, to execute and file financing statements in order to perfect its security interest in any fixtures, chattels or articles of personal property covered by this Mortgage, and shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation, execution and filing of such statements and any continuation statements that may be filed by the Mortgagee.

24.     That the Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Premises or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Premises, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof  and the Mortgagor hereby expressly waives all benefit or advantage of any such law or laws and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted.  The Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Premises marshaled upon any foreclosure hereof.

25.     That if the Mortgagor consists of more than one party, such parties shall be jointly and severally liable under any and all obligations, covenants and agreements of the Mortgagor contained herein.

454571;5                                                         –17–

26.     That the clauses and covenants contained herein which are construed by Section 254 of the Real Property Law shall be construed as provided in that section, except as otherwise provided in Article 2 hereof; that the additional clauses and covenants contained herein shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by such Section 254 and shall not impair, modify, alter or defeat such rights notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254; that the rights of the Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others; that no act of the Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.

27.     That the Mortgagor shall keep this Mortgage a valid first lien upon the Premises; shall not at any time create or allow accruing or existing any other lien or encumbrance upon the Premises or any part thereof; and shall not cause or permit the lien of this Mortgage to be diminished or impaired in any way.

28.     That wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "lease" shall mean "tenancy, subtenancy, lease or sublease", the word "Mortgagor" shall mean "Mortgagor and any subsequent owner or owners of the Premises", the word "Mortgagee" shall mean "Mortgagee or any subsequent holder or holders of this Mortgage", the word "person" shall mean "an individual, corporation, limited liability company, partnership or unincorporated association" and the word "Premises" shall include the real estate hereinbefore described, together with all Building Equipment, condemnation awards and any other rights or property interests at any time made subject to the lien of this Mortgage by the terms hereof.

29.     That the execution of this Mortgage has been duly authorized by the unanimous consent of the members of the Mortgagor.

30.     That, notwithstanding the grace period set forth in Article 18(a) hereof, the Mortgagee may collect a late charge, not to exceed five cents for each dollar of each installment of principal and/or interest payable under the Note more than five (5) days in arrears from its due date, in order to cover the extra expense involved in handling delinquent payments, which late charge shall be due and payable with the next payment of interest due under the Note.

31.     That the Mortgagor shall pay all fees and charges incurred in the procuring and making of the loan evidenced by the Note and secured by this Mortgage, including without limitation, the reasonable fees and disbursements of the Mortgagee's attorneys, charges for appraisals, fees and expenses relating to examination of title, title insurance premiums, surveys and mortgage recording, documents, transfer or other similar taxes and revenue stamps.

32.     That if following the occurrence of any default under this Mortgage and an exercise by the Mortgagee of its option to declare the whole of said principal evidenced by the Note due and payable the Mortgagor shall tender payment of an amount sufficient to satisfy the entire indebtedness secured hereby at any time prior to a foreclosure sale of the Premises, such tender by the Mortgagor shall be deemed to be a voluntary prepayment of the said principal balance of the Note, and the Mortgagor shall, in addition to the said entire principal, also pay to the Mortgagee the applicable prepayment premium, if any, specified in the Note.  All such payments shall also be accompanied by payment of all accrued interest under the Note.

33.     [Omitted].

34.     That the Mortgagor recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement which could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage, the Mortgagor acknowledges that this Mortgage, the Note, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee and that none of the rights or benefits of the Mortgagee can be waived permanently except in a written document executed by the Mortgagee.  The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the Mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Mortgagee.

35.     (a)     That the Mortgagor hereby represents and warrants that the Premises is not currently used nor, to the best of the Mortgagor's knowledge after diligent investigation, had it been used in the past, by the Mortgagor, prior owners, tenants, operators, or any other persons or organizations, in a manner that violates any applicable federal, state, or

454571;5                                    −19−

local law, statute, ordinance or regulation, or any court or administrative order or decree of any governmental or quasi-governmental authority or agency or any private agreement pertaining to environmental matters or hazardous substances (hereinafter collectively called "Environmental Requirements"), and, to the best of its knowledge, information and belief, there are no conditions existing at, or materials currently located on, the Premises that would violate any Environmental Requirements or give rise to liability for hazardous substances (including, without limitation, solid wastes, toxic materials, radon, asbestos and oil) or any substances that would require special handling in collection, storage, treatment or disposal (hereinafter collectively called "Hazardous Substances"). The Mortgagor will not place or permit to be placed on the Premises any Hazardous Substances or use or permit the use of the Premises in a manner that would violate any applicable Environmental Requirements or give rise to any liability for Hazardous Substances. The Mortgagor further covenants and agrees that it will not use or permit the use or operation of the Premises in a manner that, in the sole determination of the Mortgagee, would constitute a dangerous, unhealthy or noxious use thereof, nor will the Mortgagor permit conditions to exist with respect to the Premises which, in the determination of the Mortgagee, would create a dangerous, unhealthy or noxious condition thereon. Further, if at any time it is determined that the operation or use of the Premises violates any applicable Environmental Requirements or that there are Hazardous Substances located on the Premises or any other materials that would create a dangerous, unhealthy or noxious condition on the Premises, then the Mortgagor shall, within thirty (30) days after written notice thereof from the Mortgagee, take or cause to be taken, at its sole expense, such actions as may be necessary to comply with all Environmental Requirements and/or cure such dangerous, unhealthy or noxious condition. The Mortgagor will not permit any federal, state or local environmental or hazardous waste lien to be levied against the Premises, regardless of whether such lien is subordinate to the lien of this Mortgage. Failure of the Mortgagor to comply with all Environmental Requirements shall be a default under this Mortgage.

(b)     That to enforce the Mortgagor's obligations under this Article 35 and confirm its compliance with the same, the Mortgagee may, at its option, from time to time as it deems necessary if it has reasonable cause to believe that a violation of any Environmental Requirements has occurred, conduct or cause to be conducted an environmental audit (which may include, without limitation, test borings of the ground and chemical analyses of air, water and waste discharges) of the Premises or portions thereof, for which audits the Mortgagor shall be charged the actual costs thereof. The Mortgagor shall pay such costs on demand and upon failure to pay same, such costs shall bear interest at the rate set forth in Article 4 hereof from the date the same become due and payable until the date paid and shall be secured by the lien of this Mortgage.

454571;5                                         −20−

(c)     That the Mortgagor further represents and warrants that it has received no notices from any governmental or quasi-governmental authorities or agencies with respect to Environmental Requirements or environmental issues affecting the Premises, and has no knowledge of any such notices sent to any of the prior owners, tenants, or operators of the Premises or any other persons or organizations.  The Mortgagor shall send to the Mortgagee copies of all notices, letters or other communications respecting the Premises that are either received by the Mortgagor from any governmental or quasi-governmental authority or agency concerning Environmental Requirements or environmental issues affecting the Premises or sent by the Mortgagor to any such authority or agency regarding the same, within five (5) days after such receipt or transmittal by the Mortgagor.

(d)     That if the Mortgagee in its sole discretion believes that the Premises are being used or operated in a manner, or that a condition exists on the Premises, which would (i) violate any Environmental Requirements, (ii) constitute a dangerous, unhealthy or noxious use thereof or condition thereon, or (iii) give rise to potential liability for Hazardous Substances, the Mortgagee may, but shall not be obligated to, perform or cause to be performed any remedial action, including, but not limited to, removal and clean-up, which the Mortgagee in its sole discretion believes necessary or prudent under the circumstances and the Mortgagee may make advances or payments towards performance or satisfaction of such Environmental Requirements, but shall be under no obligation to do so.  The Mortgagor shall execute and deliver, promptly after request, such instruments as the Mortgagee may deem useful or required to permit the Mortgagee to take any such action.  All sums so advanced or paid and all expenses incurred by the Mortgagee, including, without limitation, attorneys' fees, fines or other penalty payments and all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, shall immediately, upon demand, be due from the Mortgagor and shall bear interest at the rate set forth in Article 4 hereof from the date the same shall become due and payable until the date paid, and all sums so advanced or paid and expenses, incurred, with interest as aforesaid, shall be secured by the lien of this Mortgage.  The Mortgagor shall reimburse the Mortgagee for all such sums so advanced or paid and expenses incurred regardless of whether the Mortgagor would have ultimately been responsible for such costs under applicable law.  The Mortgagee by the payment of any such fees, fines or other penalty payments, may, if it sees fit, be thereby subrogated to the rights of the federal, state or local governmental entity or agency otherwise entitled to such rights under the applicable Environmental Requirements; but no such advance by the Mortgagee shall be deemed to relieve the Mortgagor from any default hereunder or impair any right or remedy consequent thereon.

(e)     That the Mortgagor hereby agrees to indemnify, hold harmless, reimburse, and, upon request of the Mortgagee, defend the Mortgagee from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind

454571;5                                    −21−

whatsoever (including, without limitation, attorneys' fees) which at any time may be paid, incurred or suffered by, or asserted against, the Mortgagee by reason of or any way (directly or indirectly) related to (i) the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Premises into or upon any land, the atmosphere, or any watercourse, body of water or wetland, of any Hazardous Substances, (ii) the operation or use of the Premises or any portion thereof by the Mortgagor or any prior owner, operator, or tenant thereof or any other persons or organizations, or (iii) the Premises or any portion thereof not complying fully with all Environmental Requirements.

(f)     That the Mortgagor and each Guarantor shall be and remain jointly and severally liable under this Article 35 regardless of any other provisions that may limit recourse against the Mortgagor or anyone else which may be set forth herein, in the Note or in any guaranty of the indebtedness secured hereby.  Furthermore, the provisions of this Article 35 shall survive the payment of the indebtedness secured hereby and the satisfaction, release, assignment or foreclosure of this Mortgage and/or any such guaranty.

36.     (a)     That upon default by the Mortgagor in the performance of any of the terms, covenants or conditions of this Mortgage, or of the Note secured hereby, the Mortgagee shall have the right to sell the Premises, or any portion thereof, as provided in Article 14 of the New York Real Property Actions and Proceedings Law.

(b)     That nothing in the foregoing shall be deemed to limit or impair the rights of the Mortgagee to commence a foreclosure action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law or to pursue any other remedy against the Mortgagor, or any Guarantor, upon the occurrence of a default under this Mortgage or the Note.

37.     (a)     That as used in this Article 37, the following terms shall have the following meanings;

(i)     "Executive Order" shall mean Executive Order No. 13224 of September 23, 2001, 66 Fed. Reg. 49079, and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFC") and in any enabling legislation or other executive orders in respect thereof.

(ii)     "Patriot Act" shall mean the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and the regulations issued passed pursuant thereto.

(iii)        "Restricted List" shall mean any list of persons promulgated under or pursuant to the Executive Order.

(b)     That the Mortgagor represents and warrants to the Mortgagee that the Mortgagor, each Guarantor and each shareholder, partner, member, or affiliate thereof, as the case may be, and the beneficial owners, directly or indirectly, of such parties, (i) is in compliance with the Executive Order and the Patriot Act, (ii) has taken reasonable steps consistent with industry practice for comparable organizations, and in any event in accordance with law, to insure that such party is, and shall be, in compliance with the Executive Order and the Patriot Act, (iii) is not listed on the Restricted List, and (iv) is not under investigation by any governmental authority for, charged with, convicted of, been assessed civil penalties under, or had any funds seized or forfeited under the Executive Order, the Patriot Act or any other applicable anti-money laundering law.

(c)     That the Mortgagor shall adopt and maintain adequate policies, procedures, and controls to insure that it is in compliance with the Patriot Act (and all regulations issued thereunder that apply to the Mortgagor), the Executive Order and related government guidance and shall cause all of its shareholders, partners, members, and affiliates, as the case may be, or other parties having a direct or indirect interest in the Mortgagor to have equivalent policies in place.  Copies of all such policies, procedures, and controls will be made available for the Mortgagee's review upon demand and the Mortgagee may audit the Mortgagor's compliance herewith.

(d)     That the Mortgagor shall not knowingly (i) transfer or permit the transfer of any interest in the Mortgagor or in any shareholder, partner, member or affiliate of the Mortgagor, as the case may be, to any person who is, or whose direct or indirect beneficial owners are, listed on the Restricted List, or (ii) lease space at the Premises to any person who is, or whose direct or indirect beneficial owners are, listed on the Restricted List.

454571;5

(e)     If the Mortgagor obtains knowledge that the Mortgagor or any of its shareholders, partners, members or affiliates, as the case may be, or its or their direct or indirect beneficial owners, becomes listed on the Restricted List or is indicted on charges involving money laundering (or predicate offenses), the Mortgagor shall immediately notify Mortgagee and no disbursements of the proceeds of the Note, escrow or reserve disbursements, or other disbursements under the Note, this Mortgage, or any other document executed in connection therewith shall be made and all of such funds shall be paid in accordance with the direction of a court of competent jurisdiction.  If a tenant of the Premises is listed on the Restricted List or is convicted of or pleads *nolo contendere* to activity prohibited in the Executive Order, then the proceeds from the rents of such tenant shall not be used to pay any sums due under the Note, this Mortgage, or any other document executed in connection therewith and the Mortgagor shall provide the Mortgagee such representations and verifications as the Mortgagee shall reasonably request that such rents are not being so used.

38.     (Intentionally Omitted)

39.     That the Mortgagor agrees to indemnify, save, defend and hold harmless the Mortgagee and each of its officers, directors, shareholders and representatives, from and against any and all damages, liabilities, losses, obligations, actions, suits, disbursements, claims, deficiencies, penalties, interest, expenses, fines, assessments, charges and costs (including, without limitation, reasonable attorneys' fees, cost of investigations and court costs) of every kind, imposed on, incurred by or asserted against the Mortgagee or any of its officers, directors, shareholders or representatives in any way arising from or relating to the loan evidenced by the Note and secured by this Mortgage or a breach, deficiency, inaccuracy or inadequacy of or in any statement, representation or warranty of the Mortgagor contained in this Mortgage, or in any agreement, schedule, certificate, attachment, exhibit, addendum or other document delivered pursuant hereto or as part of the transaction contemplated hereby.

40.     That Mortgagor will execute, acknowledge where appropriate, and deliver, or cause to be executed, acknowledged where appropriate, and delivered, from time to time, at the request of Mortgagee all such instruments or documents as in the opinion of Mortgagee are necessary or advisable to carry out the intent or purpose of this Mortgage or the documents delivered pursuant hereto or as part of the transaction contemplated hereby.

41.     THAT THE MORTGAGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE MORTGAGEE BY ITS ACCEPTANCE OF THE NOTE AND THIS MORTGAGE IRREVOCABLY AND NCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT

454571;5

# *Infinity Land Services LLC*

**as agent for Fidelity National Title Insurance Company**

Title No: IL5794

## SCHEDULE A

## LEGAL DESCRIPTION

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

**BEGINNING** at a point on the southerly side of Van Buren Street distant 57 feet 9 inches westerly from the corner formed by the intersection of the southerly side of Van Buren Street with the westerly side of Throop Avenue;

**RUNNING THENCE** southerly parallel with Throop Avenue, 100 feet;

**THENCE** westerly parallel with Van Buren Street, 18 feet;

**THENCE** northerly again parallel with Throop Avenue, 100 feet to the southerly side of Van Buren Street, and

**THENCE** easterly along the southerly side of Van Buren Street, 18 feet to the point or place of **BEGINNING.**

FOR INFORMATIONAL PURPOSES ONLY: 74 Van Buren Street, Brooklyn, NY a/k/a Block 1795 Lot 41 on the KINGS County Tax Map.

**For conveyancing only:**
**TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.**

Infinity Land Services, LLC

OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR THERWISE RELATING TO THE NOTE, THIS MORTGAGE OR ANY OTHER DOCUMENT OR AGREEMENT RELATED TO THE LOAN SECURED BY THIS MORTGAGE.

42.     That upon payment to the Mortgagee of all sums due under the Note and this Mortgage, the Mortgagee shall assign this Mortgage and the Note, without recourse, to an assignee designated by the Mortgagor provided (a) such assignment is permitted pursuant to applicable law, (b) simultaneously therewith, or prior thereto, any and all other mortgages encumbering the Premise held by the Mortgagee have either been satisfied of record or assigned to another entity, and (c) the Mortgagor shall the reasonable attorneys' fees incurred by the Mortgagee in connection with such assignment.

43.     This Mortgage may not be changed or terminated orally, the covenants contained in this Mortgage shall run with the land and bind the Mortgagor, the heirs, personal representatives, successors and assigns of the Mortgagor and all subsequent encumbrancers, tenants and subtenants of the Premises; and shall enure to the benefit of the Mortgagee, the successors and assigns of the Mortgagee.  The word "Mortgagor" shall be construed as if it read "Mortgagors" whenever the sense of this Mortgage so requires.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor.

74 VAN BUREN LLC

By:

Name: CHASKIEL STRULOVITCH
Title:   Sole Member

STATE OF NEW YORK          )
                                         SS.:
COUNTY OF NEW YORK )

On the 27th day of November in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared CHASKIEL STRULOVITCH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MORDCHE FUCHS
Notary Public, State of New York
No. 01FU6090431
Qualified in Kings County
Commission Expires April 14, 2015

SEAL

454571;5



**2014031100293004001ED053**

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 11 |
|---|---|

| Document ID: **2014031100293004** | Document Date: 02-19-2014 | Preparation Date: 03-11-2014 |
|---|---|---|

Document Type:  ASSIGNMENT OF LEASES AND RENTS
Document Page Count: 10

| PRESENTER: | RETURN TO: |
|---|---|
| RIVERSIDE ABSTRACT LLC<br>HOLD FOR PICK-UP<br>3839 FLATLANDS AVE #208 - RANY-15205<br>BROOKLYN, NY 11234<br>718-252-4200<br>REC@RSABSTRACT.COM | RIVERSIDE ABSTRACT LLC<br>HOLD FOR PICK-UP<br>3839 FLATLANDS AVE #208 - RANY-15205<br>BROOKLYN, NY 11234<br>718-252-4200<br>REC@RSABSTRACT.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1795 | 41 | Entire Lot | 74 VAN BUREN STREET |

Property Type:  COMMERCIAL REAL ESTATE

### CROSS REFERENCE DATA

Document ID:     2014031100293003

### PARTIES

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| 74 VAN BUREN LLC<br>116 NOSTRAND AVENUE<br>BROOKLYN, NY 11205 | STERLING NATIONAL BANK<br>400 RELLA BOULEVARD<br>MONTEBELLO, NY 10901 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 800,000.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed          03-25-2014 09:07 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 87.00 | **2014000101976** | |
| Affidavit Fee: | $ | 8.00 | | |

*City Register Official Signature*

This Document Prepared by
and after Recording Return to:

Donovan LLP
152 Madison Avenue
New York, New York 10016
Attn: Alan C. Polacek, Esq.

*This space reserved for Recorder's use only.*

## ASSIGNMENT OF RENTS AND LEASES

**THIS ASSIGNMENT OF RENTS AND LEASES** ("Assignment") is made and delivered as of the /9.°day of February, 2014 by **74 VAN BUREN LLC**, a New York Limited Liability Company with offices at 116 Nostrand Avenue, Brooklyn, New York 11205 ("Assignor"), to and for the benefit of **STERLING NATIONAL BANK**, a national banking association organized and existing under the laws of the United States of America, with offices at 400 Rella Boulevard, P.O. Box 600, Montebello, NY 11901 ("Assignee").

## R E C I T A L S:

A.    Assignee has agreed to loan to Assignor the principal amount of EIGHT HUNDRED THOUSAND and 00/100 Dollars ($800,000.00) ("Loan"). Assignor is executing a certain Promissory Note of even date herewith (as the same may be amended, modified, replaced or restated from time to time, "Note") payable to the order of Assignee to evidence the Loan.

B.    A condition precedent to Assignee's making of the Loan to Assignor is the execution and delivery by Assignor of this Assignment.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually agree as follows:

1.    **Definitions**.  All capitalized terms which are not defined herein shall have the meanings ascribed thereto in that certain Mortgage of even date herewith from Assignor for the benefit of Assignee (as amended, modified, replaced or restated from time to time, "Mortgage") given as security for the Loan.

2.    **Grant of Security Interest**.  Assignor hereby grants, transfers, sets over and assigns to Assignee, all of the right, title and interest of Assignor in and to (i) all of the rents, revenues, issues, profits, proceeds, receipts, income, accounts and other receivables arising out of or from the land legally described in Exhibit A attached hereto and made a part hereof and all

buildings and other improvements located thereon (said land and improvements being hereinafter referred to collectively as the "Premises"), including, without limitation, lease termination fees, purchase option fees and other fees and expenses payable under any lease; (ii) all leases and subleases (collectively, "Leases"), now or hereafter existing, of all or any part of the Premises together with all guaranties of any of such Leases and all security deposits delivered by tenants thereunder, whether in cash or letter of credit; (iii) all rights and claims for damage against tenants arising out of defaults under the Leases, including rights to termination fees and compensation with respect to rejected Leases pursuant to Section 365(a) of the Federal Bankruptcy Code or any replacement Section thereof; and (iv) all tenant improvements and fixtures located on the Premises.  This Assignment is an absolute transfer and assignment of the foregoing interests to Assignee given to secure:

        (a)    Payment by Assignor when due of (i) the indebtedness evidenced by the Note and any and all renewals, extensions, replacements, amendments, modifications and refinancings thereof; (ii) any and all other indebtedness and obligations that may be due and owing to Assignee by Assignor under or with respect to the Loan Documents (as defined in the Note); and (iii) all costs and expenses paid or incurred by Assignee in enforcing its rights hereunder, including without limitation, court costs and reasonable attorneys' fees; and

        (b)    Observance and performance by Assignor of the covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Assignor or any other obligor to or benefiting Assignee which are evidenced or secured by or otherwise provided in the Note, this Assignment or any of the other Loan Documents, together with all amendments and modifications thereof.

    3.    **Representations and Warranties of Assignor**.    Assignor represents and warrants to Assignee that:

        (a)    this Assignment, as executed by Assignor, constitutes the legal and binding obligation of Assignor enforceable in accordance with its terms and provisions;

        (b)    Assignor is the lessor under all Leases;

        (c)    there is no other existing assignment of Assignor's entire or any part of its interest in or to any of the Leases, or any of the rents, issues, income or profits assigned hereunder, nor has either Assignor entered into any agreement to subordinate any of the Leases or such Assignor's right to receive any of the rents, issues, income or profits assigned hereunder;

        (d)    Assignor has not executed any instrument or performed any act which may prevent Assignee from operating under any of the terms and provisions hereof or which would limit Assignee in such operation; and

        (e)    there are no defaults by the landlord and, to Assignee's knowledge, there are no material defaults by tenants under any Leases.

4.    **Covenants of Assignor**.  Assignor covenants and agrees that so long as this Assignment shall be in effect:

(a)    Assignor shall not lease any portion of the Premises unless Assignor obtains Assignee's prior written  consent to all aspects of such lease; provided, however, that Assignee's prior written consent shall not be required if and only if (A) at the time Assignor enters into such Lease, no Event of Default shall have occurred hereunder and be continuing, (B) such Lease is for a residential apartment AND substantially conforms with a form of lease previously approved by Assignee, (C) the term of such Lease, the rental rate per square foot of net rentable space thereunder and all of the other economic terms and provisions thereunder are in accordance with leasing guidelines approved from time to time by Assignee in writing and then in effect and (D) after giving effect to the economic terms of such Lease, Assignor shall remain in compliance with the Debt Service Coverage ratio described in Paragraph 13 of the Note, but further provided that Assignor promptly shall furnish to Assignee notice of the execution of any such Lease and a true, complete and correct copy thereof;

(b)    Assignor shall observe and perform all of the covenants, terms, conditions and agreements contained in the Leases to be observed or performed by the lessor thereunder, and Assignor shall not do or suffer to be done anything to impair the security thereof.  Assignor shall not (i) release the liability of any tenant under any Lease, (ii) consent to any tenant's withholding of rent or making monetary advances and off-setting the same against future rentals, (iii) consent to any tenant's claim of a total or partial eviction, (iv) consent to a tenant termination or cancellation of any Lease, except as specifically provided therein, or (v) enter into any oral leases with respect to all or any portion of the Premises;

(c)    Assignor shall not collect any of the rents, issues, income or profits assigned hereunder more than thirty days in advance of the time when the same shall become due, except for security or similar deposits;

(d)    Assignor shall not make any other assignment of its entire or any part of its interest in or to any or all Leases, or any or all rents, issues, income or profits assigned hereunder, except as specifically permitted by the Loan Documents;

(e)    Assignor shall not modify the terms and provisions of any Lease, nor shall Assignor give any consent (including, but not limited to, any consent to any assignment of, or subletting under, any Lease, except as expressly permitted thereby) or approval, required or permitted by such terms and provisions or cancel or terminate any Lease, without Assignee's prior written consent; provided,  however, that Assignor may cancel or terminate any Lease as a result of a material default by the tenant thereunder and failure of such tenant to cure the default within the applicable time periods set forth in the Lease;

(f)    Assignor shall not accept a surrender of any Lease or convey or transfer, or suffer or permit a conveyance or transfer, of the premises demised under any Lease or

3

of any interest in any Lease so as to effect, directly or indirectly, proximately or remotely, a merger of the estates and rights of, or a termination or diminution of the obligations of, any tenant thereunder; any termination fees payable under a Lease for the early termination or surrender thereof shall be paid jointly to Assignor and Assignee;

(g)     Assignor shall not alter, modify or change the terms of any guaranty of any Lease, or cancel or terminate any such guaranty or do or permit to be done anything which would terminate any such guaranty as a matter of law;

(h)     Assignor shall not waive or excuse the obligation to pay rent under any Lease;

(i)     Assignor shall, at its sole cost and expense, appear in and defend any and all actions and proceedings arising under, relating to or in any manner connected with any Lease or the obligations, duties or liabilities of the lessor or any tenant or guarantor thereunder, and shall pay all costs and expenses of Assignee, including court costs and reasonable attorneys' fees, in any such action or proceeding in which Assignee may appear;

(j)     Assignor shall give prompt notice to Assignee of any notice of any default by the lessor under any Lease received from any tenant or guarantor thereunder;

(k)     Assignor shall enforce the observance and performance of each covenant, term, condition and agreement contained in each Lease to be observed and performed by the tenants and guarantors thereunder and shall immediately notify Assignee of any material breach by the tenant or guarantor under any such Lease;

(l)     Assignor shall not permit any of the Leases to become subordinate to any lien or liens other than liens securing the indebtedness secured hereby or liens for general real estate taxes not delinquent;

(m)     Assignor shall not execute hereafter any Lease unless there shall be included therein a provision providing that the tenant thereunder acknowledges that such Lease has been assigned pursuant to this Assignment and agrees not to look to Assignee as mortgagee, mortgagee in possession or successor in title to the Premises for accountability for any security deposit required by lessor under such Lease unless such sums have actually been received in cash by Assignee as security for tenant's performance under such Lease;

(n)     If any tenant under any Lease is or becomes the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state or local statute which provides for the possible termination or rejection of the Leases assigned hereby, Assignor covenants and agrees that if any such Lease is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, and any check in payment of damages for termination or rejection of any such Lease will be made payable both to Assignor and Assignee. Assignor hereby assigns any

4

such payment to Assignee and further covenants and agrees that upon the request of Assignee, it will duly endorse to the order of Assignee any such check, the proceeds of which shall be applied in accordance with the provisions of Paragraph 8 below; and

(o)    Not later than thirty (30) days after the end of each calendar quarter, Assignor shall deliver to Assignee a certified rent roll for the Premises as of the last day of such period in a form reasonably satisfactory to Assignee.

(p)    In pursuance of rights given Assignee under Real Property Law Section 291-f, Assignor will not alter, modify or change the terms of any such leases, surrender or cancel the same without the Assignee's consent and the Assignor hereby further covenants that the Assignor will not institute any proceedings for the dispossess or eviction of the tenant and/or tenants under any such assigned leases (except for default) without the consent in writing of Assignor which shall not be unreasonably delayed or withheld and further, Assignor will not request a tenant to pay, nor will it accept, more than one month's rent in advance of the dates upon which such rent becomes due and payable under the terms of any such leases, and the rent shall be paid as provided in such leases and not otherwise, except for sums representing security deposits.

5.    **Rights Prior to Default**.  Unless or until an Event of Default (as defined in Paragraph 6) shall occur, Assignor shall have the right to collect, at the time (but in no event more than thirty days in advance) provided for the payment thereof, all rents, issues, income and profits assigned hereunder, and to retain, use and enjoy the same.  Upon the occurrence of an Event of Default, Assignor's right to collect such rents, issues, income and profits shall immediately terminate without further notice thereof to Assignor.  Assignee shall have the right to notify the tenants under the Leases of the existence of this Assignment at any time.

6.    **Events of Default**.  An "Event of Default" shall occur under this Assignment upon the occurrence of (a) a breach by Assignor of any of the covenants, agreements, representations, warranties or other provisions hereof which is not cured or waived within the applicable grace or cure period, if any, set forth in the Mortgage or (b) any other Event of Default described in the Note, Mortgage or the other Loan Documents.

7.    **Rights and Remedies Upon Default**.  At any time upon or following the occurrence of any Event of Default, Assignee, at its option, may exercise any one or more of the following rights and remedies without any obligation to do so, without in any way waiving such Event of Default, without further notice or demand on Assignor, without regard to the adequacy of the security for the obligations secured hereby, without releasing Assignor or any guarantor of the Note from any obligation, and with or without bringing any action or proceeding to foreclose the Mortgage or any other lien or security interest granted by the Loan Documents:

(a)    Declare the unpaid balance of the principal sum of the Note, together with all accrued and unpaid interest thereon, immediately due and payable;

(b)    Enter upon and take possession of the Premises, either in person or by agent or by a receiver appointed by a court, and have, hold, manage, lease and operate the

5

same on such terms and for such period of time as Assignee may deem necessary or proper, with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee, to make, enforce, modify and accept the surrender of Leases, to obtain and evict tenants, to fix or modify rents, and to do any other act which Assignee deems necessary or proper;

(c) Either with or without taking possession of the Premises, demand, sue for, settle, compromise, collect, and give acquittances for all rents, issues, income and profits of and from the Premises and pursue all remedies for enforcement of the Leases and all the lessor's rights therein and thereunder. This Assignment shall constitute an authorization and direction to the tenants under the Leases to pay all rents and other amounts payable under the Leases to Assignee, without proof of default hereunder, upon receipt from Assignee of written notice to thereafter pay all such rents and other amounts to Assignee and to comply with any notice or demand by Assignee for observance or performance of any of the covenants, terms, conditions and agreements contained in the Leases to be observed or performed by the tenants thereunder, and Assignor shall facilitate in all reasonable ways Assignee's collection of such rents, issues, income and profits, and upon request will execute written notices to the tenants under the Leases to thereafter pay all such rents and other amounts to Assignee; and

(d) Make any payment or do any act required herein of Assignor in such manner and to such extent as Assignee may deem necessary, and any amount so paid by Assignee shall become immediately due and payable by Assignor with interest thereon until paid at the Default Rate and shall be secured by this Assignment.

8. **Application of Proceeds**. All sums collected and received by Assignee out of the rents, issues, income and profits of the Premises following the occurrence of any one or more Events of Default shall be applied in accordance with the provisions of the Mortgage and, unless otherwise specified therein, in such order as Assignee shall elect in its sole and absolute discretion.

9. **Limitation of Assignee's Liability**. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Premises or from any other act or omission of Assignee in managing, operating or maintaining the Premises following the occurrence of an Event of Default. Assignee shall not be obligated to observe, perform or discharge, nor does Assignee hereby undertake to observe, perform or discharge any covenant, term, condition or agreement contained in any Lease to be observed or performed by the lessor thereunder, or any obligation, duty or liability of Assignor under or by reason of this Assignment. Assignor shall and does hereby agree to indemnify, defend (using counsel satisfactory to Assignee) and hold Assignee harmless from and against any and all liability, loss or damage which Assignee may incur under any Lease or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking on its part to observe or perform any of the covenants, terms, conditions and agreements contained in any Lease; provided, however, in no event shall Assignor be liable for any liability, loss or damage which Assignor incurs as a result of Assignee's gross negligence or willful misconduct. Should Assignee incur any such

6

liability, loss or damage under any Lease or under or by reason of this Assignment, or in the defense of any such claim or demand, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall become immediately due and payable by Assignor with interest thereon at the Default Rate and shall be secured by this Assignment.  This Assignment shall not operate to place responsibility upon Assignee for the care, control, management or repair of the Premises or for the carrying out of any of the covenants, terms, conditions and agreements contained in any Lease, nor shall it operate to make Assignee responsible or liable for any waste committed upon the Premises by any tenant, occupant or other party, or for any dangerous or defective condition of the Premises, or for any negligence in the management, upkeep, repair or control of the Premises resulting in loss or injury or death to any tenant, occupant, licensee, employee or stranger.  Nothing set forth herein or in the Mortgage, and no exercise by Assignee of any of the rights set forth herein or in the Mortgage shall constitute or be construed as constituting Assignee a "mortgagee in possession" of the Premises, in the absence of the taking of actual possession of the Premises by Assignee pursuant to the provisions hereof or of the Mortgage.

10.   **No Waiver**.  Nothing contained in this Assignment and no act done or omitted to be done by Assignee pursuant to the rights and powers granted to it hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under any of the Loan Documents.  This Assignment is made and accepted without prejudice to any of the rights and remedies of Assignee under the terms and provisions of such instruments, and Assignee may exercise any of its rights and remedies under the terms and provisions of such instruments either prior to, simultaneously with, or subsequent to any action taken by it hereunder.  Assignee may take or release any other security for the performance of the obligations secured hereby, may release any party primarily or secondarily liable therefor, and may apply any other security held by it for the satisfaction of the obligations secured hereby without prejudice to any of its rights and powers hereunder.

11.   **Further Assurances**.  Assignor shall execute or cause to be executed such additional instruments (including, but not limited to, general or specific assignments of such Leases as Assignee may designate) and shall do or cause to be done such further acts, as Assignee may request, in order to permit Assignee to perfect, protect, preserve and maintain the assignment made to Assignee by this Assignment.

12.   **Security Deposits**.  Assignor acknowledges that Assignee has not received for its own account any security deposited by any tenant pursuant to the terms of the Leases and that Assignee assumes no responsibility or liability for any security so deposited.

13.   **Severability**.  If any provision of this Assignment is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Assignee and Assignor shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Assignment and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

~CHGO2:20086092.v1 |10/28/02

14.     **Successors and Assigns**.  This Assignment is binding upon Assignor and its legal representatives, successors and assigns, and the rights, powers and remedies of Assignee under this Assignment shall inure to the benefit of Assignee and its successors and assigns.

15.     **Written Modifications**.  This Assignment shall not be amended, modified or supplemented without the written agreement of Assignor and Assignee at the time of such amendment, modification or supplement.

16.     **Duration**.  This Assignment shall become null and void at such time as Assignor shall have paid the principal sum of the Note, together with all interest thereon, and shall have fully paid and performed all of the other obligations secured hereby and by the other Loan Documents.

17.     **Governing Law**.  This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

18.     **Notices**.  All notices, demands, requests and other correspondence which are required or permitted to be given hereunder shall be deemed sufficiently given when delivered or mailed in the manner and to the addresses of Assignor and Assignee, as the case may be, as specified in the Mortgage.

19.     **Waiver of Trial by Jury**.  **ASSIGNOR AND ASSIGNEE (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS ASSIGNMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS ASSIGNMENT OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS ASSIGNMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. ASSIGNOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST ASSIGNEE OR ANY OTHER PERSON INDEMNIFIED UNDER THIS ASSIGNMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.**

{signature page follows}

8

~CHGO2:20086092.v1 |10/28/02

**IN WITNESS WHEREOF**, Assignor has executed and delivered this Assignment as of the day and year first above written.

74 VAN BUREN LLC

By: _____

Chaskiel Strulovitch, Member

STATE OF NEW YORK,   )
                           : ss:
COUNTY OF NEW YORK. )

On the _19th_ day of February in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared Chaskiel Strulovitch, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

STEVEN WEINREB
Notary Public State of New York
No. 02WE6076238
Qualified in Kings County
Commission Expires 06/24/2014

~CHGO2:20086092.v1  |10/28/02

## EXHIBIT A

All THAT CERTAIN PLOT, PIECE OR PARL OF LAND, SITUATE, LYING AND BEING IN THE Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Van Buren Street distant 57 feet 9 inches westerly from the corner formed by the intersection of the southerly side of Van Buren Street with the westerly side of Throop Avenue;

RUNNING THENCE southerly parallel with Throop Avenue, 100 feet;

THENCE westerly parallel with Van Buren Street, 18 feet;

THENCE northerly again parallel with Throop Avenue, 100 feet to the southerly side of Van Buren Street, and

THENCE easterly along the southerly side of Van Buren Street, 18 feet to the point or place of BEGINNING.

A-1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2014031100293004001S1ED2

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2014031100293004**    Document Date: 02-19-2014    Preparation Date: 03-11-2014
Document Type: ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                     4

# AFFIDAVIT

Affidavit Pursuant to Section 255 of
the Tax Law of the State of New York

STATE OF NEW YORK   )
                         ss.:
COUNTY OF NEW YORK  )

Chaskiel Strulovitch duly sworn, deposes and says:

1.     I am the member of 74 Van Buren LLC (the "Borrower").

2.     Borrower is the mortgagor named in a certain Restated Mortgage in the amount of $800,000.00 ("Mortgage"), dated as of February _19_, 2014 made by Borrower to STERLING NATIONAL BANK ("Bank"), and intended to be recorded in the Office of the Register of the City of New York, Kings County ("Register's Office"). All recording taxes required to be paid under the Tax Law have been paid or will be paid with respect to the Mortgage. _Mortgage tax paid $9,840.00_

3.     The maximum principal indebtedness which under any contingency may be secured by the Mortgage is $800,000.00.

4.     Being offered for recording in the Register's Office contemporaneously with the Mortgage is a certain Assignment of Rents and Leases, dated as of February _19_, 2014 ("Assignment"), given by Borrower, as Assignor, to Bank, as Assignee, which Assignment does not create or secure any new or further indebtedness, other than the indebtedness secured by, or which under any contingency may be secured by, the Mortgage.

5.     In view of the fact that all recording taxes required to be paid under the Tax Law have been or will be paid with respect of the Mortgage, I make this Affidavit in support of, and this Affidavit shall constitute, an application under Section 255 of the Tax Law for exemption from any requirement to pay additional recording taxes under said Section 255 in connection with the filing and recording of the Assignment.

{signature page follows}

255AFFAMS

WHEREFORE, I respectfully request that the Assignment be accepted for recording without the payment of any mortgage recording tax.

Chaskiel Strulovitch

Sworn to before me this
19ᵗʰ day of February, 2014

Notary Public

STEVEN WEINREB
Notary Public State of New York
No. 02WE6076238
Qualified in Kings County
Commission Expires 06/24/2014

255AFFAMS

# AFFIDAVIT

### Affidavit Pursuant to Section 255 of
### the Tax Law of the State of New York

STATE OF NEW YORK   )
                            ss.:
COUNTY OF NEW YORK  )

        Chaskiel Strulovitch duly sworn, deposes and says:

       1.     I am the member of 74 Van Buren LLC (the "Borrower").

       2.     Borrower is the mortgagor named in a certain Restated Mortgage  in the amount of $800,000.00 ("Mortgage"), dated as of February *19*, 2014 made by Borrower to STERLING NATIONAL BANK ("Bank"), and intended to be recorded in the Office of the Register of the City of New York, Kings County ("Register's Office").  All recording taxes required to be paid under the Tax Law have been paid or will be paid with respect to the Mortgage.  *Mortgage tax paid $ 9 840. 00*

       3.     The maximum principal indebtedness which under any contingency may be secured by the Mortgage is $800,000.00.

       4.     Being offered for recording in the Register's Office contemporaneously with the Mortgage is a certain Assignment of Rents and Leases, dated as of February *19*, 2014 ("Assignment"), given by Borrower, as Assignor, to Bank, as Assignee, which Assignment does not create or secure any new or further indebtedness, other than the indebtedness secured by, or which under any contingency may be secured by, the Mortgage.

       5.     In view of the fact that all recording taxes required to be paid under the Tax Law have been or will be paid with respect of the Mortgage, I make this Affidavit in support of, and this Affidavit shall constitute, an application under Section 255 of the Tax Law for exemption from any requirement to pay additional recording taxes under said Section 255 in connection with the filing and recording of the Assignment.

{signature page follows}

255AFFAMS

WHEREFORE, I respectfully request that the Assignment be accepted for recording without the payment of any mortgage recording tax.

Chaskiel Strulovitch

Sworn to before me this
19th day of February, 2014

Notary Public

STEVEN WEINREB
Notary Public State of New York
No. 02WE6076238
Qualified in Kings County
Commission Expires 06/24/2014

255AFFAMS

-2-