UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
JACOB SCHONBERG, BINYOMIN SCHONBERG,      :
BINYOMIN HALPERN AND RAPHAEL BAROUCH      :
ELKAIM, et al.,                          :
                                          :   No. 17-cv-2161 (CBA)(RML)
                          Plaintiffs,     :
                                          :
              - against -                 :
                                          :
YECHEZKEL STRULOVICH a/k/a CHASKIEL       :
STRULOVICH, YECHIEL OBERLANDER a/k/a MICI :
OBERLANDER a/k/a MIHAY OBERLANDER, et al., :
                                          :
                          Defendants.     :
--------------------------------------------------------------------x

**PLAINTIFFS' PRE-MOTION BRIEF IN SUPPORT OF LEAVE TO AMEND**

Plaintiffs respectfully submit this pre-motion brief in support of leave to amend the Complaint.[1]

## PRELIMINARY STATEMENT

In a November 2, 2017 Memorandum and Order (the "Order"), the Court granted defendants' motion to compel arbitration for a number of the claims in the Second Amended Complaint, dismissed the securities fraud claim of some Plaintiffs, and declined to exercise supplemental jurisdiction over the remaining claims.  Yet the Order itself indicated how the basic factual allegations in the Second Amended Complaint would support viable and non-arbitrable claims, if pleaded properly.  Pursuant to the liberal standards for amending a pleading, Plaintiffs should be given the opportunity to assert these claims in an amended complaint.

As defendants concede, Plaintiffs have engaged in several efforts to reach an agreement with defendants on an arbitrator and arbitration rules to determine all of the claims between the parties, including claims not referred to arbitration.  Now, after those efforts failed, Plaintiffs seek to litigate their non-arbitrable claims in court.  An amendment would not cause defendants undue prejudice, nor would it give Plaintiffs a unique tactical advantage, because this stayed action has not even proceeded to discovery.  In addition, leave to amend would offer Plaintiffs their first opportunity to replead after the Court's decision.

The proposed amendment would plead viable causes of action.  Whereas the Court found that the Individual Plaintiffs[2] could not interpose securities fraud claims for securities that they did not purchase – that is, the membership interests in the holding company entities – the proposed amendment would assert a securities fraud claim for the membership interests in the

---

[1] Bronstein, Gewirtz & Grossman LLC ("BG&G") represents all of the plaintiffs in this action except five: Shimon Asulin, Clara Grossman, Irving Grossman, David Schonfeld, and Pnina Schonfeld.  This brief is filed on behalf of the plaintiffs represented by BG&G, referred to herein as "Plaintiffs."  It is unclear whether the other plaintiffs will support leave to amend.  If they do not, the formal motion for leave to amend will also seek to sever their action.
[2] All undefined capitalized terms shall have the meanings ascribed to them in the Order.

LLC Plaintiffs, which the Individual Plaintiffs directly purchased.  Notwithstanding defendants'

contention to the contrary, the Court never preemptively denied leave to amend the securities

claim.  An order dismissing a claim in an ongoing (albeit stayed) action does not automatically

deny leave to amend.

The proposed amended complaint would also assert a claim by the LLC Plaintiffs for

breach of fiduciary duty by the Individual Defendants *as managers of the LLC Plaintiffs*.  This

claim is not arbitrable, for two reasons.  First, the Individual Defendants were not parties to the

arbitration agreements and this claim is not based upon their roles in the other signatories to the

arbitration agreements.  Second, to the extent the arbitration agreements purported to govern the

relationship between the LLC Plaintiffs and their managers, the agreements were unauthorized

and ineffective.  The Court held that the Individual Defendants, as managers, had the authority to

bind the LLC Plaintiffs to contracts *with third parties*.  But the managers could not revise the

internal relationship between themselves and the LLC Plaintiffs.  Likewise, even if the

arbitration agreements are construed as *external* agreements between the LLC Plaintiffs and the

Individual Defendants, New York law renders voidable any agreement between a limited

liability company and its manager that was entered into solely by dint of the manager's authority.

The proposed amended complaint would also assert a claim for conversion of the LLC

Plaintiffs' funds.  The conversion took place before the transfer of funds to the Holding

Company Defendants.  Because the claim does not originate from the Individual Defendants'

roles in other arbitration agreement signatories, the claim is not arbitrable.  In addition, the

Individual Defendants' conversion of these funds does not fall within the scope of the arbitration

agreements.  Finally, the proposed amendment would assert a fiduciary duty claim derivatively

on behalf of the holding company entities against the Individual Defendants.  Since the

2

Individual Defendants were not parties to the arbitration agreements, the holding company

entities can assert a breach of fiduciary duty claim against its own managers.

## BACKGROUND

Defendants Yechezkel Strulovich ("Strulovich") and Yechiel Oberlander ("Oberlander")

(collectively, the "Individual Defendants") persuaded investors to collectively invest over $20

million in twenty-two parcels of real property (the "Schedule A Properties"). (Order at 4.) The

Individual Plaintiffs transferred their money based upon false representations that the Individual

Defendants made in prospectuses, including with respect to the properties' purchase price. (*Id.*

at 4, 7-8.) In return for their funds, the Individual Plaintiffs were given interests in the twenty-

two LLC Plaintiffs. (*Id.* at 5.) The LLC Plaintiffs, in turn, were given 45 percent interests in one

of the twenty-two limited liability companies (the "Holding Company Defendants") that each

held the title to one of the investment properties. (*Id.*) CSRE LLC ("CSRE"), an entity wholly

owned by Oberlander and Strulovich, owns the remaining 55 percent in each Holding Company

Defendant. (*Id.*) Strulovich and Oberlander are the managers of the LLC Plaintiffs and Holding

Company Defendants. (*Id.*)

Rather than using the funds invested by plaintiffs to develop the Schedule A Properties,

the Individual Defendants diverted the funds to support their own lifestyles, to purchase and

acquire properties held for their benefit, and to purchase and develop the "Schedule B

Properties," in which Plaintiffs held no interest. (Order at 8.) Some of the funds were diverted

before they even reached LLC Plaintiffs' accounts, let alone the Holding Company Defendants'

accounts. (Halpern Decl. ¶ 18.) Plaintiffs' equity was used to make the Schedule B Properties

profitable, while a majority of Schedule A Properties remained in various states of disrepair or

were put in foreclosure. (Order at 8.) Additionally, the Individual Defendants used the

3

investment properties as collateral to secure loans for their own personal use and for the Schedule B Properties.  (*Id.*)

In the Second Amended Complaint, the Individual Plaintiffs and LLC Plaintiffs asserted federal securities claims against the Individual Defendants based upon the membership interests in Holding Company Defendants.  (Order at 9, 38 n.14.)  Plaintiffs also asserted claims for breaches of fiduciary duty by the Individual Defendants and CSRE in their roles as majority members and managers of the Holding Company Defendants.  (Order at 9, 47; Second Am. Compl. ¶¶ 168-81.)  The LLC Plaintiffs asserted claims for constructive trust against the corporate entities that own the Schedule B Properties, and claims for accounting against all defendants.  (Order at 9.)  Finally, Plaintiffs asserted claims for cancellation of certain sales contracts, common law fraud, unjust enrichment, and constructive trust.  (*Id.*)

Defendants moved to compel arbitration based upon twenty-two operating agreements (the "Holding Company Agreements") between the LLC Plaintiffs, some members of the LLC Plaintiffs, CSRE, and the Holding Company Defendants, each of which contained an arbitration clause.  (Order at 13.)  The Court held that "the LLC Plaintiffs and the Individual Plaintiffs who executed a Holding Company Agreement must arbitrate their claims against the Individual Defendants and the Holding Company Defendants for each agreement signed," though claims against other defendants were not arbitrable.  (*Id.* at 30, 34.)  However, the Individual Plaintiffs who did not sign Holding Company Agreements could not be compelled to arbitrate their claims. (*Id.* at 33.)  The Court, though, dismissed the non-signatory Individual Plaintiffs' securities claim because they did not "allege they purchased the securities that were manipulated," that is, the Individual Plaintiffs never purchased membership interests in the Holding Company Defendants. (*Id.* at 36-38.)  Finally, because the Court either dismissed or referred to arbitration Plaintiffs'

federal securities claim – their sole federal cause of action – the Court declined to retain supplemental jurisdiction over Plaintiffs' remaining state law claims.  (*Id.* at 40.)

In a letter dated November 9, 2017, the defendants represented by Herrick, Feinstein LLP gave notice to Plaintiffs, pursuant to the arbitration provisions in the Holding Company Agreements, identifying Zalmen Grauz ("Grauz") as their chosen arbitrator the claims referred to arbitration by the Court.  (Halpern Decl., Ex. 1.)  These defendants further gave notice that, in accordance with the arbitration provisions, if the parties did not reach agreement within forty-five days as to who is to serve as arbitrator, then Avrohom Baruch Rosenberg ("Rosenberg") was to choose the arbitrator for the parties.  (*Id.*)

The parties agreed to several extensions, until April 23, 3018, for Plaintiffs' response to the defendants' choice of arbitrator.  (Halpern Decl. ¶ 3.)  During that time, the parties negotiated over the selection of an arbitrator and arbitration rules for a determination of all claims, including those not subject to the arbitration provisions.  (*Id.*)  At one point, it appeared that the parties would agree to the selection of the Honorable David Schmidt, a former Kings County Supreme Court Justice, as arbitrator.  (*Id.* ¶ 4.)  However, Justice Schmidt became ill and subsequently passed away.  (*Id.*)  Therefore, Plaintiffs gave notice to the defendants that they did not accept the selection of Grauz as arbitrator.  (*Id.*)

On April 26, 2018, the defendants sent a letter to Rosenberg requesting that he appoint an arbitrator, pursuant to the Holding Company Agreements' arbitration provisions.  (Halpern Decl., Ex. 2.)  After receiving no response from Rosenberg, the defendants' counsel emailed him on May 11, 2018, stating: "I am writing to follow up on the below email and letter as we have not yet heard from you.  For the record, if our adversaries would agree to it, we would agree to you serving as the arbitrator."  (*Id.*, Ex. 3.)  Rosenberg never appointed any arbitrator to

determine the claims referred to arbitration by the Court.  (Halpern Decl. ¶ 7.)  To Plaintiffs'
knowledge, Rosenberg never stated that he would appoint himself if Plaintiffs confirmed his
appointment.  (*Id.* ¶ 8.)  Thus, contrary to defendants' recent claim in their pre-motion letter, it is
not true that Plaintiffs initially considered the appointment of Rosenberg.  (*Id.*)

In July and August 2018, Binyomin Halpern ("Halpern"), one of the plaintiffs, reached
out to defendants through an intermediary in another attempt to reach an agreement on an
arbitrator to determine all claims between the parties.  (Halpern Decl. ¶ 9.)  Halpern suggested a
panel of three particular rabbinical arbitrators and stated that the parties would need to sign
arbitration rules similar to those discussed by the parties in connection with the hoped-for
arbitration by Justice Schmidt (the "Schmidt Arbitration Agreement").  (*Id.* ¶ 10.)  However,
Halpern was subsequently informed by the parties' intermediary that Strulovich had signed an
arbitration agreement that referred to the Schmidt Arbitration Agreement but did not incorporate
its terms.  (*Id.* ¶ 11.)  Halpern inquired as to why Strulovich did not sign an agreement
incorporating the terms of the Schmidt Arbitration Agreement and was informed, through the
intermediary, that defendants believed the Schmidt Arbitration Agreement did not fit with the
rabbinical form of arbitration.  (*Id.* ¶ 12.)  In late August 2018, Halpern also spoke about the
proposal with Mendy Brach, a representative of defendants.  (*Id.* ¶ 13.)  Accordingly, in
September 2018, Halpern provided two proposed versions of arbitration agreements more
befitting a rabbinical arbitration panel, yet still ensuring the ability of the arbitrators to complete
a comprehensive and fair adjudication of the parties' claims.  (*Id.* ¶ 14.)  Even in late September
2018, the intermediary indicated that defendants might sign one of the proposed versions.  (*Id.*
¶ 15.)  However, in the end, defendants declined to sign such an agreement.  (*Id.* ¶ 16.)

Since the parties once again could not agree on an arbitrator and arbitration rules to

determine all claims, Plaintiffs filed a letter for a pre-motion conference for leave to amend their

complaint, in order to proceed with the litigation of their viable, non-arbitrable claims.

**ARGUMENT**

**I.      LEAVE TO AMEND SHOULD BE GRANTED BECAUSE PLAINTIFFS
HAVE ENGAGED IN NO UNDUE DELAY OR BAD FAITH AND THE
<u>AMENDMENT WOULD CAUSE NO PREJUDICE TO DEFENDANTS</u>**

The liberal standards for amending a pleading strongly favor leave for Plaintiffs to amend

their complaint.  Plaintiffs seek to assert viable causes of action, they have engaged in no undue

delay or bad faith, and the proposed amendment would cause no prejudice to defendants.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a pleading

should be freely given by the Court "when justice so requires."  FED. R. CIV. P. 15(a)(2).

"Amendments are generally favored as they tend to facilitate a determination on the merits."

*Zucker v. Porteck Glob. Servs.*, No. 13-CV-2674(JS)(AKT), 2015 U.S. Dist. LEXIS 144132, at

*10 (E.D.N.Y. Oct. 23, 2015).  "Leave to amend should be denied only because of undue delay,

bad faith, futility or prejudice to the non-moving party[.]" *Mendez v. U.S.  Nonwovens Corp.*, 2

F. Supp. 3d 442, 451 (E.D.N.Y. 2014).  "'[M]ere delay . . . absent a showing of bad faith or

undue prejudice, does not provide a basis for the district court to deny the right to amend.'"

*Portelos v. City of N.Y.*, No. 12-CV-3141, 2015 U.S. Dist. LEXIS 123261, at *4-5 (E.D.N.Y.

Sept. 15, 2015) (alteration in original) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825

F.2d 647, 653 n.6 (2d Cir. 1987)).  However, "the longer the period of an unexplained delay, the

less will be required of the nonmoving party in terms of a showing of prejudice."  *State Farm*

*Ins. Cos. v. Kop-Coat, Inc.*, 183 F. App'x 36, 38 (2d Cir. 2006).  "The party opposing such

amendment has the burden of establishing that leave to amend would be prejudicial or futile."

*Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998).

These standards for leave to amend are met here.  As explained in the sections below, the

proposed amendment is not futile; rather, the new causes of action are both viable and non-arbitrable.  Nor did Plaintiffs engage in undue delay.  As defendants concede, Plaintiffs engaged in several efforts to reach an agreement with defendants on an arbitrator and arbitration rules to determine all of the claims between the parties.  Defendants now suggest that Plaintiffs knew their recent arbitration proposal would be unacceptable, but this notion makes little sense.  There was no reason for Plaintiffs to spend time negotiating with defendants if they knew the latter would reject the proposal.  Instead, after the Court's referral of claims to arbitration, Plaintiffs hoped to resolve the parties' whole dispute without further litigation in court, but needed to ensure that the arbitrators would have the ability to reach a fair and thorough determination of the claims.  Unfortunately, the parties could not agree on such arbitration rules.  Because these negotiations failed, Plaintiffs wish to amend the Complaint and litigate their non-arbitrable claims in court.

Even if the delay had been unexplained, defendants would still need to establish undue prejudice from the proposed amendment, yet they would suffer none.  After the Court's referral of some claims to arbitration and dismissal of other claims, this action has been stayed.  Because this action has not even proceeded to discovery, the amended pleading will not require defendants to expend significant additional resources to repeat discovery or to prepare for an approaching trial.  *See, e.g., Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454-55 (S.D.N.Y. 2016) (granting leave to amend when "the plaintiff filed her motion before the close of discovery"); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (granting leave to amend where trial date had not been set and discovery had not been completed).  As such, defendants will suffer no prejudice, let alone undue prejudice, from the proposed amendment.

8

Nor is the proposed amendment made in bad faith.  "When the non-moving party asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment, such as seeking to derive some unique tactical advantage through their amendment."  *Usov v. Lazar*, 2014 U.S. Dist. LEXIS 122735, at *19 (S.D.N.Y. Aug. 22, 2014) (quotation marks omitted).  Here, Plaintiffs do not gain any unique tactical advantage from the proposed amendment.  To be sure, the proposed amendment adds viable, non-arbitrable claims, but that fact – reflective of almost all amendments – does not suggest bad faith.  *See Kraus USA, Inc. v. Magarik*, 2018 U.S. Dist. LEXIS 168164, at *28 (S.D.N.Y. Sep. 28, 2018) ("But the mere fact that the amendment will add issues to a case – something almost all amendments do to some extent – is not grounds to infer bad faith.").

The proposed amendment would offer Plaintiffs their first opportunity to replead after the Court's decision about the viability and arbitrability of the claims in the prior pleading.  In fact, this amendment would be the first opportunity to address the pleading defect in the securities fraud claim only identified by defendants in their reply brief, after Plaintiffs had already filed the Second Amended Complaint.  (*See* Order at 37-38; D.E. # 192, 197.)

As defendants cannot establish bad faith or undue prejudice – because there is none – Plaintiffs should be granted leave to amend the Complaint.  *See Usov*, 2014 U.S. Dist. LEXIS 122735 at *19 ("Unless the non-moving party demonstrates prejudice or bad faith, courts generally allow a party to amend its complaint.") (citing *City of N.Y. v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011)).

## II.   PLAINTIFFS' PROPOSED AMENDED COMPLAINT ASSERTS VIABLE AND NON-ARBITRABLE CAUSES OF ACTION

The basic factual allegations in the proposed amended Complaint would not differ much from the prior pleading's factual allegations, which were summarized in the Court's Order.

9

However, as explained below, these factual allegations support viable claims for securities fraud, breach of fiduciary duty, and conversion that are not subject to any arbitration agreement.

### A.   The Proposed Amended Complaint Will Assert a Viable Claim for Securities Fraud Based Upon the Individual Plaintiffs' Purchase of Membership Interests in the LLC Plaintiffs

Plaintiffs' prior pleading set forth at length the false representations made by the Individual Defendants to induce the Individual Plaintiffs to invest indirectly in the Schedule A Properties.  In an abundance of caution, the proposed amendment would also include additional specific details concerning the false representations, to address defendants' previous argument that the securities fraud claim was not pled with sufficient particularity.[3]  The proposed amended complaint would plead a claim for securities fraud based upon the Individual Plaintiffs' purchase of membership interests in the LLC Plaintiffs, rather than membership interests in the Holding Company Defendants, as previously pleaded.  Thus, the securities fraud claim would be based upon the manipulation of securities actually purchased by the Individual Plaintiffs.

Previously, Plaintiffs asserted a cause of action for securities fraud by the Individual Defendants under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78, based upon the manipulation of the membership interests in the Holding Company Defendants.  The Court, however, dismissed the securities fraud claim of the non-signatory Individual Plaintiffs because they did "not allege they purchased the securities that were manipulated" (Order at 36-37); only the LLC Plaintiffs purchased the membership interests in the Holding Company Defendants.  (*Id.* at 39.)  "[B]ecause the Individual Plaintiffs concede[d] they never purchased a direct interest in the securities that the Individual Defendants allegedly manipulated," they lacked standing since they did not allege that they were either a purchaser or seller of securities.  (*Id.*)

---

[3] As part of a motion for leave to amend, Plaintiffs would file a proposed amended complaint that includes these additional factual details concerning the securities fraud for the membership interests in the twenty-two LLC Plaintiffs.

As the Second Amended Complaint made clear, the Individual Plaintiffs' indirectly invested in the Schedule A Properties through the purchase of membership interests in the twenty-two LLC Plaintiffs.  (Order at 5.)  The Individual Plaintiffs purchased the membership interests in reliance upon the false representations that the Individual Defendants made in prospectuses, including with respect to the properties' purchase price.  (*See id.* at 4-8.)  Thus, the Individual Plaintiffs possess a viable, straightforward § 10(b) claim for the purchase of a direct interest in the membership interests of the LLC Plaintiffs.

Defendants now suggest that the Individual Plaintiffs got exactly what was promised when investing in the LLC Plaintiffs: an interest therein and an indirect interest in the Holding Company Defendants.  This is nonsensical.  The question is simply whether the Individual Defendants' false representations were material, and they clearly were.  "To be material[,] the information need not be such that a reasonable investor would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available."  *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 439 (S.D.N.Y. 2009) (internal quotation marks omitted).  "At the pleading stage, a plaintiff satisfies the materiality requirement . . . by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161-62 (2d Cir. 2000) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).  A complaint cannot be "on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Id.* at 162.

This standard for materiality is clearly met here.  The sole purpose of the LLC Plaintiffs was to invest in the Schedule A Properties, albeit indirectly.  The false representations about the

properties to be purchased by the Holding Company Defendants were obviously important to reasonable investors in the LLC Plaintiffs.  In addition, as the proposed amendment will allege, the Individual Defendants misrepresented their intention to divert some of the money before it even reached LLC Plaintiffs' accounts, let alone the Holding Company Defendants' accounts.

This new securities claim is not within the scope of the parties' arbitration agreement, as it does not "relat[e] to this [Holding Company] Agreement."  In inducing the purchase of membership interests in the LLC Plaintiffs, the Individual Defendants' misrepresentations did not touch upon the Holding Company Agreements.  Among other things, they misrepresented their intention to divert some of the money before it even reached LLC Plaintiffs' accounts, which does not relate to the Holding Company Agreements.  In addition, the Individual Plaintiffs "allege they invested long before those [Holding Company Agreements] were circulated pursuant to a separate understanding."  (Order at 32.)

In any event, even if the arbitration provisions of the Holding Company Agreements cover the new securities claim, the non-signatory Individual Plaintiffs are not bound by the arbitration provision and can inarguably litigate this claim in court.  Accordingly, the proposed amended complaint would assert a viable and non-arbitrable claim for securities fraud.[4]

## B.   The Court's Prior Order Did Not Preemptively Deny Leave to Amend the Securities Fraud Claim

In its Order, the Court nowhere stated that it dismissed the securities claim with prejudice

---

[4] "[S]ection 107 of the PSLRA bars civil RICO [Racketeer Influenced and Corrupt Organizations Act] claims alleging predicate acts of securities fraud[.]"  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011).  But for this limitation, the facts alleged in the Second Amended Complaint concerning the Individual Defendants' wide-ranging fraud scheme, including the use of mail and wires, would support a RICO claim. Plaintiffs believe that the allegations and evidence would support a securities fraud claim, which precludes a RICO claim.  However, defendants conceivably might argue that no securities fraud took place because, at the time the Individual Plaintiffs transferred their money, no operating agreement was presented to them (see Order at 31-32) and they never purchased any membership interests whatsoever.  If defendants were to succeed in arguing or establishing that their fraud scheme did not involve manipulated securities at all, then a RICO claim would be appropriate.  As such, the amended complaint would assert the RICO claim in the alternative.

12

or that it denied leave to amend the securities claim.  Yet defendants now argue that the Order
should be read as preemptively denying leave to amend.  Defendants' erroneous interpretation
confuses the Order with a judgment dismissing an entire action.  In a judgment, a dismissal of an
entire action based upon Rule 12(b)(6) is presumed to be on the merits and, thus, with prejudice
for purposes of res judicata.  *See, e.g., McLean v. U.S.*, 566 F.3d 391, 396 (4th Cir. 2009)
("[U]nless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is
presumed to be both a judgment on the merits and to be rendered with prejudice.").  But
defendants have cited no authority for the proposition that an order dismissing one claim in an
active (albeit stayed) action willy-nilly denies leave to amend.[5]  To be sure, the Court stated that
its dismissal of certain state law claims was without prejudice for refiling in state court.  The
explicit reference to dismissal without prejudice for those claims was necessary for the eventual
incorporation of the order in the judgment.  But by no means does a court order dismissing a
claim under Rule 12(b)(6) automatically deny leave to amend.[6]

### C. The Proposed Amended Complaint Will Plead a Non-Arbitrable Claim for Breach of Fiduciary Duty by the Individual Defendants as Managers of the LLC Plaintiffs

The proposed amended complaint would also assert a claim by the LLC Plaintiffs for
breach of fiduciary duty by Strulovich and Oberlander *as managers of the LLC Plaintiffs*.  This
claim is not arbitrable, for two reasons.  *First*, because the Individual Defendants were not

---

[5] Defendants' argument suffers from another defect.  The securities fraud claim of the signatory Individual Plaintiffs was never dismissed at all; it was merely referred to arbitration.

[6] In their pre-motion letter, defendants also imply that Plaintiffs' failure to appeal the Order is significant, though defendants do not explain how or why.  Regardless of what exactly defendants hope to imply, the lack of an appeal is unsurprising and signifies nothing other than that Plaintiffs have no right to appeal the Order.  In accordance with *Katz v. Cellco P'ship*. 794 F.3d 341 (2d Cir. 2015), the Court stayed the action while the arbitrable claims are litigated in arbitration.  (*See* Order at 34 n.12, 42.)  Because the Court properly stayed, rather than dismissed, the arbitrable claims, Plaintiffs had no right to appeal.  *See Katz*, 794 F.3d at 346.  ("[T]he [Federal Arbitration Act] explicitly denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings. . . . The dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable interlocutory stay order into an appealable final dismissal order.").

parties to the arbitration agreement, they are covered only to the extent a claim originates from

their roles within the other signatories, *i.e.*, the Holding Company Defendants or CSRE.  *See*

*Clarke v. Alltran Fin.*, No. 17-CV-3330 (JFB) (AYS), 2018 U.S. Dist. LEXIS 29011, at *15

(E.D.N.Y. Feb. 22, 2018) ("[A]gents of a signatory can compel the other signatory to arbitrate so

long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as

agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to

the contract containing the arbitration clause (consistent with the language of the arbitration

clause).").  This claim, though, is based on the Individual Defendants' role as managers of the

LLC Plaintiffs.

> *Second*, to the extent the Holding Company Agreements covered the internal relationship

between the LLC Plaintiffs and their managers, they were unauthorized and ineffective.  The

Court held that the Holding Company Agreements bound the LLC Plaintiffs because Strulovich

"had the authority to bind corporations he managed to contracts *with third parties* under New

York law." (Order at 16 (emphasis added).) Therefore, the LLC Plaintiffs' claim for breach of

fiduciary duty by the Individual Defendants *as managers of the Holding Companies* was

arbitrable.  The Court, though, only held that Strulovich had "the authority to bind the LLC

Plaintiffs to the *external* agreement with the Holding Company Defendants[.]"  (*Id.* at 18

(emphasis in original).)  It was "unnecessary for the Court to resolve" whether "the specific

terms of the Holding Company Agreements governing the internal management of the LLC are

effective."  (*Id.* at 17.)  But to the extent the agreements purport to govern the internal

relationship between the LLC Plaintiffs and their managers, they include articles of operation for

the LLC Plaintiffs.  And "[i]t is correct, as plaintiffs contend, that [New York LLC Law] §

402(c)(3) requires a majority vote 'to adopt, amend, restate or revoke the articles of organization

or operating agreement....'"  (Order at 17.)  Thus, those provisions of the Holding Company

Agreements are ineffective vis-à-vis the Individual Defendants' actions and duties as managers

of the LLC Plaintiffs.  Likewise, any attempt by defendants to construe the arbitration provisions

as some sort of *external* agreement between the LLC Plaintiffs and the Individual Defendants

would be unavailing.  New York LLC Law § 411(b) renders voidable any agreement between a

limited liability company and its manager that was entered into solely by dint of the manager's

authority.  Accordingly, the proposed claim for breach of fiduciary duty is not arbitrable.

### D.       The Proposed Amended Complaint Will Plead a Non-Arbitrable Claim for Conversion of the LLC Plaintiffs' Funds

The proposed amended complaint will assert a claim for conversion of the LLC

Plaintiffs' funds.  The conversion took place before the transfer of funds to the Holding

Company Defendants.  As the Individual Defendants are not parties to the arbitration agreement

and the claim does not originate from the Individual Defendants' roles in the Holding Company

Defendants or CSRE, the claim is not arbitrable.  Likewise, the claim is not arbitrable because

the conversion in no way related to the Holding Company Agreements.

### E.       The Proposed Amended Complaint Will Plead a Non-Arbitrable Derivative Claim on Behalf of the Holding Company Defendants for Breach of Fiduciary Duty

The proposed pleading will assert a fiduciary duty claim derivatively on behalf of the

Holding Company Defendants.  The Individual Defendants were not parties to the Holding

Company Agreements, nor were they appointed managers by the agreements themselves.  As

such, nothing precludes the Holding Company Defendants from asserting a claim against the

Individual Defendants for a breach of their fiduciary duty as managers.  This claim does not

originate from the Individual Defendants' roles in the other signatories to the agreements.

**CONCLUSION**

For the reasons set forth in this pre-motion brief, Plaintiffs should be granted leave to

amend the complaint.

Dated: February 6, 2019

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC


By:     /s/ Yitzchak Eliezer Soloveichik
        Yitzchak Eliezer Soloveichik (YS9703)
        60 East 42nd Street, Suite 4600
        New York, New York 10165
        (212) 697-6484
        soloveichik@bgandg.com