UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JACOB SCHONBERG, BINYOMIN SCHONBERG, BINYOMIN HALPERN AND RAPHAEL BAROUCH ELKAIM, et al, | Case No: 17-cv-2161 (CBA)(RML) |

        *Plaintiffs*,

  -against-

YECHEZKEL STRULOVICH a/k/a CHASKIEL STRULOVITCH, YECHIEL OBERLANDER a/k/a MICI OBERLANDER a/k/a MIHAY OBERLANDER, et al

        *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
<u>PRE-MOTION BRIEF FOR LEAVE TO AMEND</u>**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

    1.      The Investments In The Schedule A Properties ............................................................3

    2.      The Holding Company Agreements. ............................................................................3

    3.      By The Order, The Court Compelled Some Claims To Arbitration, Dismissed The Federal Securities Fraud Claim, And Declined To Exercise Supplemental Jurisdiction . ......................................................................................................................................4

    4.      Arbitration Is Blocked By The Cunning Efforts Of Certain Individual Plaintiffs ..........5

    5.      Plaintiffs File The "Pre-Motion," Without Including A Proposed Amended Complaint . ......................................................................................................................................7

ARGUMENT ..................................................................................................................................7

    1.      Plaintiffs Come Before This Court With Unclean Hands, And Should Not Be Allowed To Sneak In The Back Door To Federal Court. ............................................................7

    2.      Plaintiffs' Failure To Attach A Proposed Amended Pleading Is Fatal To Its Efforts To File A Third Pre-Answer Amended Complaint. ............................................................9

    3.      The Securities Fraud Claim Was Dismissed With Prejudice, And Cannot Be Amended . ......................................................................................................................................9

    4.      The Amended Claims Remain Arbitrable ...................................................................10

          a.      The Amended Securities Fraud Claim Must Be Referred To Arbitration ........10

          b.      The Amended Common Law Claims Must Also Be Referred To Arbitration .11

    5.      The Proposed Amendment To The Securities Fraud Claim Is Futile............................13

CONCLUSION .............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
  98 N.Y.2d 144, 773 N.E.2d 496 (2002) .................................................................................7

*Arutyunyan v. Fields*,
  No. 17-CV-5009 (AMD), 2018 WL 3966239 (E.D.N.Y. Aug. 17, 2018) ...............................9

*Berns v. EMI Pub., Inc.*,
  No. 95 Civ. 8130(KTD), 1999 WL 1029711 (S.D.N.Y. Nov. 12, 1999)...............................10

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  850 F.3d 58 (2d Cir. 2017) .....................................................................................................8

*Church of Scientology of California v. Siegelman*,
  94 F.R.D. 735 (S.D.N.Y.1982)..............................................................................................10

*Church of Scientology Int'l v. Time Warner, Inc.*,
  No. 92 Civ. 3024(PKL), 1998 WL 575194 (S.D.N.Y. Sept. 9, 1998), *aff'd sub
  nom., Church of Scientology Int'l v. Beha*r, 238 F.3d. 168 (2d Cir. 2001) ............................10

*Clearview Apartment Assocs., LP v. Ocasio*,
  4 Misc. 3d 1028(A), 798 N.Y.S.2d 343 (Civ. Ct. Queens Cty. 2004), *aff'd*, 17
  Misc. 3d 23, 844 N.Y.S.2d 558 (N.Y. App. Term 2007) ........................................................8

*Hirschfeld Prods., Inc. v. Mirvish*,
  88 N.Y.2d 1054, 673 N.E.2d 1232 (1996) ............................................................................11

*Keith v. Black Diamond Advisors, Inc.*,
  48 F. Supp. 2d 326, 333 (S.D.N.Y. 1999) .............................................................................14

*La Barbera v. Ferran Enterprises, Inc.*,
  No. 05-cv-2678, 2009 WL 367611 (E.D.N.Y. Feb. 10, 2009).................................................9

*Nabatkhorian v. County of Nassau*,
  No. 12-CV-1118(JS)(GRB), 2012 WL 13113646 (E.D.N.Y. Aug. 9, 2012)...........................9

*Nelson v. Stahl*,
  173 F. Supp. 2d 153 (S.D.N.Y. 2001) ............................................................................13, 14

*Roby v. Corporation of Lloyds,*
  996 F.2d 1353 (2d Cir. 1993) ................................................................................................11

*Sanders v. Thrall Car Mfg. Co.*,
  582 F. Supp. 945, 953 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir.1984) ............................ 10

*State of N.Y. v. Cedar Park Concrete Corp.*,
  741 F. Supp. 494 (S.D.N.Y. 1990) ................................................................................. 8

*Tatintsian v. Vorotyntsev*,
  No. 1:16-CV-7203-GHW, 2018 WL 2324998 (S.D.N.Y. May 22, 2018) .............................. 12

*VanBrocklen v. Dep't of Homeland Sec.*,
  No. 1:12–CV–003, 2012 WL 2873373 (N.D.N.Y. July 12, 2012) ........................................ 9

*Winters v. Alza Corp.*,
  690 F. Supp. 2d 350 (S.D.N.Y. 2010) ............................................................................ 9

*Wrenn v. New York City Health & Hosps. Corp.*,
  104 F.R.D. 553 (S.D.N.Y. 1985) ................................................................................. 10

*Zhu v. First Atl. Bank*,
  No. 05 Civ. 96(NRB), 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) .................................... 15

**Statutes**

Fed. R. Civ. P. 9(b) ............................................................................................................ 15

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 2, 4, 9

N.Y. Ltd. Liab. Co. Law § 401 ........................................................................................... 13

N.Y. Ltd. Liab. Co. Law § 401(a) ....................................................................................... 13

N.Y. Ltd. Liab. Co. Law § 401(b) ....................................................................................... 14

Defendants Yechezkel Strulovich, CSRE LLC, CS Construction Group LLC, Good Living Management LLC, 908 Bergen Street LLC, 901 Bushwick Avenue LLC, 106 Kingston LLC, 1213 Jefferson LLC, Gates Equity Holdings LLC, 1078 Dekalb LLC, 618 Lafayette LLC, 74 Van Buren LLC, 762 Willoughby LLC, 454 Central Avenue LLC, 855 Dekalb Avenue LLC, 720 Livonia Development LLC, 853 Lexington LLC, 657-665 5th Avenue LLC, Willoughby Estates LLC, 73 Empire Development LLC, 980 Atlantic Holdings LLC, 325 Franklin LLC, 945 Park Pl LLC, 1301 Putnam LLC, 348 St. Nicholas LLC, CSY Holdings LLC, APC Holding 1 LLC, 53 Stanhope LLC, The Howard Day House LLC, 55 Stanhope LLC, 599-601 Willoughby LLC, 1217 Bedford LLC, 1266 Pacific LLC, 167 Hart LLC, 741 Lexington LLC, and 296 Cooper LLC respectfully submit this memorandum of law in opposition to Plaintiffs' Pre-Motion Brief in Support of Leave to File a Third Pre-Answer Amended Complaint (the "Pre-Motion").

## **PRELIMINARY STATEMENT**

By its Pre-Motion to file a third pre-answer amended Complaint, Plaintiffs attempt to sneak in the back door to Federal Court fourteen months after this Court issued an Order: (i) compelling arbitration with respect to certain of the Plaintiffs' claims; (ii) dismissing the securities fraud claim of the Individual Plaintiffs who did not sign arbitration agreements pursuant to FRCP 12(b)(6); and (iii) dismissing the non-arbitrable common law claims, without prejudice to refiling in State Court. The Pre-Motion fails for several obvious reasons.

Despite Defendants' best efforts to move the ball forward with respect to arbitration, as compelled by this Court, Plaintiffs intentionally made that impossible by: (i) ignoring communications from the arbitrator who was appointed in connection with the arbitration agreement; (ii) attempting to force non-litigants in this action to participate in arbitration; and (iii) attempting to require a rabbinical panel to enforce the Federal Rules of Civil Procedure, in

violation of Jewish law. In so doing, Plaintiffs violated the covenant of good faith and fair dealing implied into the arbitration agreements, and deliberately violated the Order. Therefore, the Plaintiffs come before this Court with unclean hands.

Even if the Court entertains the bad faith Pre-Motion, the motion must be denied. While Plaintiffs couch their motion as a "Pre-Motion," the Scheduling Order makes clear that this was Plaintiffs' opportunity to seek leave to amend. Because Plaintiffs failed to attach a proposed amended pleading, the Court must deny the motion. Not only that, the proposed amended claims are fully arbitrable, and, as a result, any Individual Plaintiff who signed an arbitration agreement must still be compelled to arbitrate.

Moreover, the proposed amended claims are futile and will inevitably be dismissed on a FRCP 12(b)(6) motion. Indeed, the Individual Plaintiffs' amended § 10(b) claim is "for the purchase of a direct interest in the membership interests of the LLC Plaintiffs." A membership interest in the LLC Plaintiffs, in which the Individual Plaintiffs have managerial authority (in addition to Strulovitch), is not a security, and thus a § 10(b) claim fails. Further, for each of the reasons set forth in Defendants' motion to dismiss the Second Amended Complaint – the only document available for Defendants to rely on to support this opposition – the securities fraud claim fails. Moreover, Plaintiffs fail to plead a RICO claim with any particularity whatsoever. Thus, because there is no federal question jurisdiction, the Court should continue to decline to exercise supplemental jurisdiction with respect to the amended common law claims and should also fully dismiss this action. Thus, the Pre-Motion should be denied in its entirety.

## BACKGROUND

The relevant background is drawn from the Second Pre-Answer Amended Complaint, dated July 14, 2017 ("SAC"), the Court's Memorandum and Order, dated November 1, 2017

("Order"), the Declaration of Binyomin Halpern, dated February 6, 2019 ("Halpern Decl."), the Declaration of Mendel Brach, dated February 20, 2019 ("Brach Decl."), and the Declaration of Rabbi Ahron Bentzion Mandel, dated February 20, 2019 ("Mandel Decl.").

**1. The Investments In The Schedule A Properties**

The Individual Defendants, Strulovitch and Oberlander, allegedly persuaded 180 investors to invest in twenty-two separate propertiies (the "Schedule A Properties"). Order at 4[1]. The Schedule A Properties are owned by the Holding Company Defendants. *Id.* at 3. To arrive at their interests in the Holding Company Defendants, the Individual Plaintiffs first received interests in the twenty-two LLC Plaintiffs, which then received a 45% percent interest in one of the Holding Company Defendants, through the Holding Company Agreements. *Id.* at 5. Defendant CSRE owns 55% percent of each Holding Company Defendant. *Id.* at 5. Strulovitch is the manager of the LLC Plaintiffs, CSRE, and Holding Company Defendants. *Id.* at 5.

The Individual Plaintiffs allegedly made their investments based on prospectuses provided to them between February 2012 and September 2014. Order at 7. The Individual Defendants allegedly diverted the investment funds to purchase and develop the Schedule B Properties. Order at 8. Plaintiffs now contend that "[s]ome of the funds were diverted before they even reached LLC Plaintiffs' accounts…." Pre-Motion at 3 (citing Halpern Decl. ¶ 18).

**2. The Holding Company Agreements.**

The Holding Company Agreements are signed by Strulovitch on behalf of CSRE, the LLC Plaintiffs, and the Holding Company Defendants. Order at 5. Certain of the Individual Plaintiffs also signed the Holding Company Agreements. Order at 5-6.

The Holding Company Agreements contain arbitration provisions that state:

---

[1] The Individual Plaintiffs now comprise 42/180 investors (it was 47 in the SAC). Pre-Motion at 1 n. 1.

> In case of any doubt, question or other disagreement among the parties to this agreement about anything pertaining to this Agreement, all of the parties to the disagreement shall choose a third party that is acceptable to all of them as Arbitrator (the "Arbitrator") and ask for his ruling on point, and his ruling shall be accepted by all the parties to the disagreement.  If, however, the parties do not reach agreement within forty-five (45) days as to who is to be the Arbitrator, then HaRav Avrohom Baruch Rosenberg of Monsey, New York shall choose the arbitrator for the parties and that Arbitrator's ruling shall be binding on all the parties.  In any case, however, all the parties to this agreement agree not to bring any matter relating to this Agreement to a secular court for resolution unless instructed to do so by the Arbitrator or to enforce the Arbitrator's ruling. Order at 6; *see also e.g.* D.E. 198-19, § 13.d.

## 3. By The Order, The Court Compelled The LLC Plaintiffs And Signatory Individual Plaintiffs To Arbitration, Dismissed The Non-Signatory Individual Plaintiffs' Federal Securities Fraud Claim, And Declined To Exercise Supplemental Jurisdiction.

In the SAC, all Plaintiffs asserted federal securities fraud claims against the Individual Defendants. Order at 9, 38 n.14.  Plaintiffs also asserted claims for breach of fiduciary duty against the Individual Defendants and CSRE, amongst other common law claims. Order at 9.

With respect to the motion to compel arbitration, the Court held as follows:

> the LLC Plaintiffs and the Individual Plaintiffs who signed a Holding Company Agreement must arbitrate their claims with respect to the Holding Company Agreement they signed. Having found that the Individual Plaintiffs who did not sign the Holding Company Agreements are not bound to litigate their claims before the arbitrator, and that plaintiffs need not arbitrate against the Schedule B Defendants and the other Strulovich-controlled entities, this Court will consider defendants' grounds for dismissal only as to the remaining claims not referred to arbitration. Order at 36.

With respect to the motion to dismiss, the Court recognized that the LLC Plaintiffs, not the Individual Plaintiffs, were the "actual purchaser of the securities at issue" (Order at 40 n.16), and, as a result, the non-signatory Individual Plaintiffs securities fraud claim was dismissed pursuant to FRCP 12(b)(6) (without specifying whether dismissal was with or without prejudice).  Order at 36-40.  The Court declined to exercise supplemental jurisdiction over the remaining state law

claims filed by the non-signatory Individual Plaintiffs and dismissed them "without prejudice for refiling in state court." Order at 42. No Plaintiff filed any related claims in State Court. Brach Decl. ¶ 6.

### 4. **Arbitration Is Blocked By The Cunning Efforts Of Certain Individual Plaintiffs**

In accordance with the Order and Holding Company Agreements, on November 9, 2017, Defendants sent a letter to Darren Oved, former counsel for Plaintiffs, giving notice that pursuant to the Holding Company Agreements, Defendants identified Rabbi Zalmen Grauz as their chosen arbitrator for the claims referred to arbitration. Defendants further advised that if they cannot reach agreement on an arbitrator within 45 days "then HaRav Avrohom Baruch Rosenberg of Monsey, New York shall choose the arbitrator for the parties." Brach Decl. ¶ 8, Ex. 3.

Thereafter, the parties began negotiating selection of an arbitrator and arbitration rules "for a determination of all claims, including those not subject to the arbitration provisions." *See* Halpern Decl. ¶ 3 (i.e., a *global* arbitration). Thus, during the period of negotiation, Defendants gave Plaintiffs multiple extensions to respond to the November 9 letter. Brach Decl. ¶ 9. In December 2017, Plaintiffs and Defendants were able to agree on the appointment of the Honorable David Schmidt as arbitrator for a global arbitration, but the terms for such arbitration were not yet agreed upon. Brach Decl. ¶ 10. However, shortly thereafter, the parties learned that Judge Schmidt was ill and would not be able to preside. Brach Decl. ¶ 10.

After nearly six months of negotiating, and multiple extensions given to respond to the November 9, 2017 letter, and with the parties at an impasse with respect to terms for a *global* arbitration, on April 23, 2018, Plaintiffs' counsel sent a "formal response to [Herrick, Feinstein's] November 9, 2017 Letter to our firm (to the extent a formal response is necessary). As we have stated many times, Rabbi Zalmen Grauz, the individual your clients proposed in your Letter, is not

acceptable to our clients as an arbitrator of the claims enumerated in Judge Amon's Order." Brach Decl. ¶ 11, Ex. 4.

Thus, on April 26, 2018, Defendants wrote to Rabbi Rosenberg "request[ing] that pursuant to the [Holding Company Agreements], you appoint an Arbitrator to hear the dispute between the parties identified on pages 3-4 of this letter." Brach Decl. ¶ 12, Ex. 5. Thereafter, Defendants' Toen, Rabbi Ahron Bentzion Mandel spoke directly to Rabbi Rosenberg, who stated that he would appoint himself as Arbitrator if Plaintiffs and Defendants would agree to it. Mandel Decl. ¶ 2. Rabbi Rosenberg also informed Rabbi Mandel that he had informed Plaintiffs' counsel, Darren Oved, of the same. Mandel Decl. ¶ 3.

Thus, on May 11, 2018, Defendants followed up by email with Rabbi Rosenberg, informing him that "if our adversaries would agree to it, we would agree to you serving as the arbitrator." Brach Decl., Ex. 6. Plaintiffs did not respond to Rabbi Rosenberg, leading Defendants to reasonably conclude that Plaintiffs had abandoned their claims. Brach. Decl. ¶ 15.

In late August 2018, Defendants received a call from Mr. Halpern, the apparent "lead" plaintiff. Brach. Decl. ¶ 16. Mr. Halpern proposed that a Beth Din of three rabbinical arbitrators – the identity of whom Plaintiffs and Defendants agreed – conduct a *global* arbitration. Brach. Decl. ¶ 16. Defendants signed an arbitration agreement prepared by the Rabbinical panel (after certain revisions to the form agreement were agreed upon). Brach Decl. ¶¶ 16-19. Ex. 9.

However, on September 5, 2018, Mr. Halpern sent Defendants' representative an email giving him "2 attachments [that] are 2 options" for a *global* arbitration. Brach Decl. ¶ 21, Ex. 10. The proposals circulated by Plaintiffs name individuals who were not even parties in the subject litigation and for whom Defendants cannot even speak, and also violate Jewish law. Brach Decl. ¶ 22. Naturally, Defendants were forced to reject the "proposals." Brach Decl. ¶ 23.

5. **Plaintiffs File The "Pre-Motion," Without Including A Proposed Amended Complaint.**

Plaintiffs assert that "[s]ince the parties once again could not agree on an arbitrator and arbitration rules to determine all claims, Plaintiffs filed a letter for a pre-motion conference for leave to amend their complaint to proceed with the litigation of their viable, non-arbitrable claims." Pre-Motion at 6-7. On January 22, 2019, the Court issued a scheduling order:

> The Court does not see a need to have a pre-motion conference at this time. In November 2017, the Court granted defendants' motion to compel arbitration for the majority of plaintiffs' claims and dismissed the claims not referred to arbitration. Plaintiffs are directed to provide the Court with briefing, not to exceed 15 pages, as to why they should be granted permission to amend the Second Amended Complaint

Plaintiffs then bizarrely filed a "pre-motion brief" in support of their motion for leave to amend the SAC, without attaching a proposed amended pleading.

## ARGUMENT

1. **Plaintiffs Come Before This Court With Unclean Hands, And Should Not Be Allowed To Sneak In The Back Door To Federal Court.**

Plaintiffs are solely responsible for arbitration not happening. In May 2018, after the parties could not come to agreement on the chosen Arbitrator, in accordance with the Holding Company Agreements, Rabbi Rosenberg appointed himself as arbitrator, subject to receiving approval from both Plaintiffs and Defendants. Mandel Decl. ¶ 2. Defendants agreed. Brach Decl. Ex. 6. Plaintiffs did not respond. Brach Decl. ¶ 15. By failing to respond to Rabbi Rosenberg, arbitration could not go forward, thereby depriving Defendants of the fruits of the Holding Company Agreements, in violation of the covenant of good faith and fair dealing. *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500 (2002) ("This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"). Given

Plaintiffs' unclean hands, they should not be rewarded with the ability to litigate before this Court. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017); *Clearview Apartment Assocs., LP v. Ocasio*, 4 Misc. 3d 1028(A), 798 N.Y.S.2d 343 (Civ. Ct. Queens Cty. 2004), *aff'd*, 17 Misc. 3d 23, 844 N.Y.S.2d 558 (N.Y. App. Term 2007).

Plaintiffs reliance on the late summer 2018 arbitration negotiations is equally frivolous. Plaintiffs and Defendants agreed on a three-person rabbinical panel, who circulated arbitration agreements in accordance with Jewish law (with agreed-upon revisions approved by the panel). Brach Decl. ¶¶ 16-20. Defendants signed and returned it to the panel. Brach Decl. ¶ 19, Ex. 9. Plaintiffs instead circulated "2 attachments [that] are 2 options" for a global arbitration. Brach Decl. Ex. 10. Plaintiffs contend that these "two proposed version of arbitration agreements [were] more befitting [of a] rabbinical arbitration panel." Pre-Motion Brief at 6. **Plaintiffs fail to explain how complex English-language arbitration agreements prepared by Plaintiffs, which incorporate the Federal Rules of Civil Procedure and broad discovery devices, is more befitting of a rabbinical arbitration panel than Hebrew arbitration agreements prepared by the agreed-upon rabbinical panel**. *Compare* Brach Decl. ¶¶ 21-23, Exs. 7-9.

Defendants remain ready, willing, and able to arbitrate in accordance with the Holding Company Agreements and the Order. But it takes two to tango. Through the above machinations – which is further evidenced by the fact that not a single non-signatory Individual Plaintiff filed an action against Defendants in State Court – Plaintiffs are attempting to sneak through the back door of Federal Court fourteen months after the Court issued the Order. Because there has been undue delay in seeking leave to amend, the Plaintiffs' Pre-Motion should be rejected. *See, e.g., State of N.Y. v. Cedar Park Concrete Corp.*, 741 F. Supp. 494, 497 (S.D.N.Y. 1990) (denying

motion to amend damage claim "on behalf of state subdivisions a full two years after this Court dismissed the damages claim asserted by plaintiffs….").

### 2. Plaintiffs' Failure To Attach A Proposed Amended Pleading Is Fatal To Its Efforts To File A Third Pre-Answer Amended Complaint.

While Plaintiffs bizarrely file a "Pre-Motion Brief," the Scheduling Order makes clear that this was Plaintiffs' opportunity to make a motion for leave to amend the SAC. By failing to attach an amended pleading, Plaintiffs' motion is fatally defective and must be denied. *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118(JS)(GRB), 2012 WL 13113646 (E.D.N.Y. Aug. 9, 2012); *La Barbera v. Ferran Enterprises, Inc.*, No. 05-cv-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009).

### 3. The Securities Fraud Claim Was Dismissed Pursuant to FRCP 12(b)(6), And Cannot Be Amended.

By the Order, the Court dismissed the common law claims "without prejudice to refile in state court" but the securities fraud claim was dismissed pursuant to FRCP 12(b)(6), and thus **with prejudice**. *See VanBrocklen v. Dep't of Homeland Sec.*, No. 1:12–CV–003 (GTS/ATB), 2012 WL 2873373, at *3 (N.D.N.Y. July 12, 2012); *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 357 (S.D.N.Y. 2010) ("A dismissal pursuant to Rule 12(b)(6) is, of course, a dismissal with prejudice."). As such, the "plaintiff will not be able to file another amended complaint." *Arutyunyan v. Fields*, No. 17-CV-5009 (AMD), 2018 WL 3966239, at *4 (E.D.N.Y. Aug. 17, 2018).

Plaintiffs cannot counter this argument. They simply argue that "defendants have cited no authority for the proposition that an order dismissing one claim in an active (albeit stayed) action willy-nilly denies leave to amend." Pre-Motion at 13. The burden is on Plaintiffs, and they have

- 9 -

not cited a single case that stands for the proposition that a claim dismissed with prejudice can be amended if the entire action was not dismissed.

Fourteen months after the securities fraud claim was dismissed, Plaintiffs are changing their legal theories based on old facts. Indeed, they admit as much. Pre-Motion at 9-10. This is not a basis to grant leave to amend. *See Wrenn v. New York City Health & Hosps. Corp.*, 104 F.R.D. 553, 559 (S.D.N.Y. 1985) (denying leave to amend where proposed amendment "asserts new theories only and was not offered because any new facts came to plaintiff's attention").[2]

### 4. The Amended Claims Remain Arbitrable

#### a. *The Amended Securities Fraud Claim Must Be Referred To Arbitration.*

The amended securities fraud claim is arbitrable. As stated by Plaintiffs, "[t]he proposed amended complaint would plead a claim for securities fraud based upon the Individual Plaintiffs' purchase of membership interests in the LLC Plaintiffs, rather than membership interests in the Holding Company Defendants as previously pleaded." "The sole purpose of the LLC Plaintiffs was to invest in the Schedule A Properties, albeit indirectly." Pre-Motion at 11. However, Plaintiffs contend that this "new securities fraud claim is not within the scope of the parties' arbitration agreement as it does not 'relat[e] to this [Holding Company] Agreement.'" Pre-Motion at 12. The "albeit indirectly" in the penultimate sentence can be replaced with "through the Holding Company Agreements." That is how the LLC Plaintiffs and Individual Plaintiffs

---

[2] *See also Church of Scientology of California v. Siegelman*, 94 F.R.D. 735, 739 (S.D.N.Y.1982) (denying motion to amend where only justification for three-year delay was counsel's overlooking legal theory); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 953 (S.D.N.Y.1983) (noting that "the liberality with which a court grants leave to amend does not impart to litigants the privilege of reshaping their legal theories endlessly, even where there is no evidence of improper motive or dilatory objectives."), *aff'd*, 730 F.2d 910 (2d Cir.1984); *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 Civ. 3024(PKL), 1998 WL 575194, at *2 (S.D.N.Y. Sept. 9, 1998) (denying Plaintiff's request to amend the Complaint after a new attorney identified a new legal theory), *aff'd sub nom., Church of Scientology Int'l v. Beha*r, 238 F.3d 168 (2d Cir. 2001); *Berns v. EMI Pub., Inc.*, No. 95 Civ. 8130(KTD), 1999 WL 1029711, at *5 (S.D.N.Y. Nov. 12, 1999) ("Moreover, a change in counsel, or the dissatisfaction with the manner in which previous counsel pleaded claims, as Plaintiffs suggest is the reason for their delay, cannot excuse undue delay in moving to amend.").

indirectly invested in the Schedule A Properties.  The signatory Individual Plaintiffs' investment in the LLC Plaintiffs clearly "pertains" to the Holding Company Agreements, and therefore any securities fraud claim arising from an investment in the LLC Plaintiffs is arbitrable.

### b. *The Amended Common Law Claims Must Also Be Referred To Arbitration.*

The proposed amended claim by the LLC Plaintiffs for breach of fiduciary duty by Strulovitch as manager of the LLC Plaintiffs must also be referred to arbitration and is therefore futile.  Since "[t]he sole purpose of the LLC Plaintiffs was to invest in the Schedule A Properties" (Pre-Motion at 11), any alleged mismanagement by Strulovitch would have been with respect to the LLC Plaintiffs investment in the Schedule A Properties, through the Holding Company Agreements.  Strulovitch signed the Holding Company Agreements on behalf of each of the LLC Plaintiffs, CSRE, and the Holding Company Defendants.  As such, he has every right to compel arbitration with respect to this claim.  *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056, 673 N.E.2d 1232, 1233 (1996) ("The Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.") (citing *Roby v. Corporation of Lloyds*, 996 F.2d 1353, 1360 (2d Cir. 1993)).

Plaintiffs make the nuanced argument that the breach of fiduciary duty claim by the LLC Plaintiffs against the Individual Defendants is an internal matter than cannot be governed by the Holding Company Agreement.  This Court has already found otherwise.  In its eighth cause of action of the SAC, the LLC Plaintiffs sought an accounting from the Individual Defendants because the "Individual Defendants are the managers, and are in possession, of the books and records of the LLC Plaintiffs."  Order at 17 n. 8.  The Court held that "[t]he LLC Plaintiffs' claim for accounting against the Individual Defendants … is also referred to arbitration."  Order at 47.  Likewise, the

Court referred the LLC Plaintiffs' claim for fraud and unjust enrichment against Strulovitch to arbitration. Order at 47. Thus, Plaintiffs' argument fails.

The same goes for the conversion claim by the LLC Plaintiffs against the Individual Defendants. The alleged conversion took place "before the transfer of funds to the Holding Company Defendants." Pre-Motion at 15. Even if the Court were to accept this new allegation as true, the claim is arbitrable as it is a "doubt, question or other disagreement … pertaining to [the Holding Company] Agreement." When the purported illegal transfer happened does not render the arbitration agreement inapplicable. What matters is that the alleged conversion is "anything pertaining" to the arbitration agreement.

Plaintiffs also intend to assert a derivative claim on behalf of the Holding Company Defendants for breach of fiduciary duty against Strulovitch. Plaintiffs state that "[t]his claim does not originate from the Individual Defendants' roles in the other signatories to the agreements." Pre-Motion at 15. There is no way to determine what this cause of action is based on as an amended pleading is not attached. Besides the fact that Plaintiffs are hopelessly conflicted in asserting such a claim,[3] based on the allegations of the SAC, these claims are "anything pertaining" to the Holding Company Agreements, and are therefore arbitrable.

---

[3] *See Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2018 WL 2324998, at *3 (S.D.N.Y. May 22, 2018) ("An actual conflict may exist where 'substantial recovery on the [direct] claim may reduce the potential recovery on behalf of the corporation on the derivative claim.'"). If Plaintiffs were to prevail on their claims against the Holding Company Defendants directly, and against the Individual Defendants derivatively on behalf of the Holding Company Defendants, recovery on the derivative claim would be reduced by potential recovery on the direct claims against the Holding Company Defendants.

### 5. The Proposed Amendment To The Securities Fraud Claim Is Futile

To the extent the amended securities fraud claim can be deciphered, it is futile.[4] The Individual Plaintiffs' § 10(b) claim is "for the purchase of a direct interest in the membership interests of the LLC Plaintiffs." Pre-Motion at 11. An interest in an entity will constitute a security "if it represents: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others." *Nelson v. Stahl*, 173 F. Supp. 2d 153, 164 (S.D.N.Y. 2001) (the "*Howey* Test"). Because the LLC Plaintiffs do not have an operating agreement, the LLC Plaintiffs are member-managed, precluding satisfaction of the third element of the *Howey Test*. *See* Order at 4-5; LLC Law § 401.[5]

While it is true that Plaintiffs have pled that Strulovitch is the manager of LLC Plaintiffs (Order at 4-5), "[t]he delegation of rights and duties standing alone does not give rise to the sort of dependence on others which underlies the third prong of the Howey Test." *Nelson v. Stahl*, 173 F. Supp. 2d 153, 165 (S.D.N.Y. 2001) (citations omitted). Further, "the mere choice by a [member] to remain passive is not sufficient to create a security interest." *Id.* (citations omitted). "The delegation of membership responsibilities, or the failure to exercise membership powers does not 'diminish the investor's legal right to a voice in partnership matters.'" *Id.* (citations omitted). In fact, the Individual Plaintiffs' management authority was recognized by the Court as it held that "plaintiffs have submitted evidence that the members of the LLC Plaintiffs have authorized them to bring this suit…" Order at 40, n. 16; *see also* Halpern Declaration dated August 10, 2017, Ex. 1 (D.E. 221:1-5) (attaching resolutions, purportedly from the majority of the investors in the LLC

---

[4] If the Court permits Plaintiffs to file its Third Amended Complaint, Defendants reserve the right to augment this section on any further motion to dismiss.

[5] Where there is not an operating agreement for an LLC, "management of the limited liability company shall be vested in its members who shall manage the limited liability company.…" LLC Law § 401(a). As such, "any such member exercising such management powers or responsibilities shall be deemed a manager … and such member shall have and be subject to all of the duties and liabilities of a manager provided in this chapter." LLC Law § 401(b).

Plaintiffs, "hereby consent[ing] to, and adopt[ing], the followed resolutions pursuant to the Limited Liability Act of the State of New York and declare them to be in full force and effect as if they had been adopted at a duly convened meeting of the members of the Company"). As a result, the Individual Plaintiffs' investment in the LLC Plaintiffs was not a security, and therefore the 10(b) claim fails. *See Nelson,* 173 F. Supp. 2d 153; *see also Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 333 (S.D.N.Y. 1999) ("Under the Agreement and N.Y. LLC Law, [members of a member-managed LLC pursuant to an operating agreement and LLC Law § 401] are endowed with a broad range of rights and powers.… This level of control is antiethical to the notion of member passivity required under the fourth prong of [the *Howey* Test].").

Further, the arguments raised in the motion to dismiss the securities fraud claim in the SAC are still applicable and render the proposed amended pleading futile. Although Plaintiffs state that the "proposed amended Complaint would not differ much from the prior pleading's factual allegations" (Pre-Motion at 9), Plaintiffs claim they will fix the pleading defects in the securities fraud claim as the "proposed amendment would also include specific details concerning the false representations, to address defendants' previous argument that these securities fraud claim was not pled with sufficient particularity." Pre-Motion at 10. Plaintiffs fail to attach a proposed amended pleading, leaving Defendants unable to respond to these supposed curative amendments. Defendants refer the Court to their reply in support of the motion to dismiss ("Reply MOL"), which explains why the securities fraud claim fails. *See* D.E. 203.

- The Individual Plaintiffs' claims are barred by the applicable statutes of limitation and repose. Reply MOL at 10-13.[6]

- There were no allegations of misrepresentations with respect to 10/22 at-issue investments. Reply MOL at 13.

---

[6] This defense is boosted by Plaintiffs' acknowledgement that the Individual Plaintiffs "allege they invested long before [those Holding Company Agreements] were circulated…" Pre-Motion at 12 (citing Order at 32).

- The Individual Plaintiffs failed to plead the nature and amount of securities purchased, and when they were purchased. Reply MOL at 13-16.

- The SAC makes dismissible group pleading allegations. Reply MOL at 16-17

- Certain of the alleged misrepresentations were true statements. Reply MOL at 17-18.

- The Individual Plaintiffs who signed the Holding Company Agreements disclaimed reliance on any alleged misrepresentations. Reply MOL at 18-22.

Thus, the proposed amended pleading, not attached to the Pre-Motion, is futile, and the Pre-Motion should be denied.[7]

## CONCLUSION

For all of the reasons stated above, it is respectfully requested that the Court issue an Order denying the Pre-Motion and/or leave to amend the SAC, dismiss this action in its entirety, with prejudice, and grant such other and further relief as this Court deems appropriate.

Dated: New York, New York
February 20, 2019

HERRICK, FEINSTEIN LLP

By: /s/ Avery S. Mehlman
Avery S. Mehlman
Scott C. Ross
2 Park Avenue
New York, NY 10016
212.592.1400
sross@herrick.com
amehlman@herrick.com
*Attorneys for Defendants*

---

[7] As a last-ditch effort to remain in Federal Court, Plaintiffs claim they will plead, in their fourth Complaint, with no new facts, an alternative RICO claim based on "Defendants' wide-ranging fraud scheme." Pre-Motion at 12 n. 4. This bare-bones, conclusory allegation, certainly fails to live up to the particularity requirement of FRCP 9(b). *See Zhu v. First Atl. Bank*, No. 05 Civ. 96(NRB), 2005 WL 2757536, at *8 (S.D.N.Y. Oct. 25, 2005) ("Because 'the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'").